# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN DOE,**<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>**MITCHELL GARABEDIAN, ESQUIRE,**<br>**MITCHELL GARABEDIAN, ESQUIRE,**<br>doing business as "LAW OFFICES OF<br>MITCHELL GARABEDIAN," and<br>**KURTIS N. POULOS,**<br>　　　　　　Defendants. | **CIVIL ACTION**<br><br><br><br>**NO. 19-1539** |

**DuBois, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**October 2, 2019**

## <u>M E M O R A N D U M</u>

### I.　　INTRODUCTION

　　　This is an action for defamation and intentional infliction of emotional distress, arising out of allegations that plaintiff, John Doe, sexually abused defendant Kurtis Poulos, when he was plaintiff's student twenty-five years ago. Defendants Mitchell Garabedian, Esq., and Law Offices of Mitchell Garabedian ("Garabedian defendants"), who represented Poulos at the time, sent two settlement demands to Poulos's former boarding school, describing Poulos's allegations of sexual abuse by plaintiff and demanding $1 million to settle the claim. Plaintiff denies the allegations. Presently before the Court is the Garabedian defendants' motion to dismiss plaintiff's Second Amended Complaint. The motion to dismiss is granted on the ground that the Second Amended Complaint (Doc. No. 28, filed on June 20, 2019) fails to state a claim for defamation or intentional infliction of emotional distress.

### II.　　BACKGROUND

　　　The facts below are drawn from plaintiff's Second Amended Complaint. The Court construes that complaint in the light most favorable to the plaintiff, as it must in ruling on a

motion to dismiss. The facts set forth in the Second Amended Complaint may be summarized as follows:

"Plaintiff has been an educator, coach, dorm parent, and administrator" at a boarding school in Montgomery Country, Pennsylvania for over 25 years. Second Am. Compl. ¶ 12. On April 11, 2018, the Garabedian defendants sent a settlement demand letter to the headmaster at plaintiff's employer, Poulos's former boarding school, stating that "Kurtis Nicholas Poulos . . . was repeatedly sexually molested by [plaintiff] from approximately 1993 . . . until approximately 1995." Second Am. Compl. Ex. A. The letter further stated, that during the relevant times, plaintiff was "assigned to or affiliated" with the boarding school. *Id.* Finally, the letter described the harm suffered by Poulos and demanded $1 million to settle the claims. *Id.* In response to the April 2018 letter, the school hired a law firm to investigate the claims. Second Am. Compl. ¶ 21. The school's law firm responded to the Garabedian defendants, seeking additional information about the claims; the Garabedian defendants did not reply until December 2018. *Id.* ¶ 22.

On December 26, 2018, the Garabedian defendants sent a second letter to the school's attorney, providing the attorney with more details of Poulos's claim. Second Am. Compl. Ex. B. The second letter stated, among other things, that "[d]uring the course of Mr. Poulos's sophomore year, [plaintiff] sexually abused Mr. Poulos in [plaintiff]'s geometry classroom between approximately 10 and 15 times." *Id.* Poulos did not read either letter before the Garabedian defendants sent them. Second Am. Compl. ¶ 26. After the Garabedian defendants sent the second letter, they sought to obtain Poulos's school records. *Id.* ¶ 25. In response, both the school and the law firm it retained attempted to contact the Garabedian defendants, to no avail. *Id.* ¶ 27-28. Finally, the school sent the Garabedian defendants a final notice, warning

them that if they did not contact the school or the law firm it retained by March 1, 2019, the school would assume that the Garabedian defendants did not intend to pursue Poulos's claim. *Id.* ¶ 29. The Garabedian defendants never responded. *Id.* ¶ 30.

Over one month later on April 10, 2019, plaintiff filed the initial Complaint. On June 20, 2019, plaintiff filed the Second Amended Complaint asserting that the Garabedian defendants and Poulos defamed him in the demand letter (Counts I & III) and that the Garabedian defendants and Poulos's intentional acts caused him emotional distress (Counts II & IV). The Second Amended Complaint also states that plaintiff is a "citizen of, and domiciled in, Ohio," Poulos is a citizen of, and domiciled in, Wisconsin, Mitchell Garabedian is a citizen of, and domiciled in, Massachusetts, and the Law Offices of Mitchell Garabedian is a sole proprietorship domiciled in Massachusetts with its principal place of business in Massachusetts. Second Am. Compl. ¶¶ 1-7. The Second Amended Complaint further states that "[t]he amount in controversy substantially exceeds the requirement for Federal Diversity Jurisdiction." *Id.* ¶ 9.

*Pro se* defendant Poulos filed an Answer to the Second Amended Complaint on July 3, 2019. Poulos's Answer contained counterclaims based on statements made in the Second Amended Complaint. Plaintiff filed a motion to dismiss Poulos's counterclaims on July 24, 2019. The Court dismissed Poulos's counterclaims with prejudice on the grounds that statements made in the Second Amended Complaint were subject to the judicial immunity privilege (Doc. No. 35, filed August 16, 2019).

The Garabedian defendants filed a Motion to Dismiss the Second Amended Complaint on July 5, 2019. The Garabedian defendants allege that: (1) this Court lacks subject matter jurisdiction; (2) plaintiff's Second Amended Complaint fails to state a claim for defamation and intentional infliction of emotional distress; and (3) punitive damages cannot be awarded.

Plaintiff filed a response on August 2, 2019 (Doc. No. 34). The Garabedian defendants, filed a motion for leave to reply with the reply attached, which was granted (Doc. No. 36) on August 19, 2019. The Motion is thus ripe for decision.

**III. LEGAL STANDARD**

The Garabedian defendants argue that plaintiff's Second Amended Complaint lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and that plaintiff's Second Amended Complaint fails to state a claim for defamation and intentional infliction of emotional distress upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction**

In evaluating a Rule 12(b)(1) motion, the Court must first determine whether the motion "presents a 'facial' attack or a 'factual' attack." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Id.* When ruling on a facial attack, the Court "considers only the complaint, viewing it in the light most favorable to the plaintiff." *Id.* By contrast, a factual attack is an argument that challenges the "factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). When ruling on a factual attack, the Court weighs the evidence and must satisfy itself as to the existence of its power to hear the case. Plaintiff has the burden of proving subject matter jurisdiction. *Dolison v. SavaSeniorCare Admin. Servs., LLC*, No. CV 15-3135, 2019 WL 588699, at *4 (E.D. Pa. Feb. 13, 2019) (internal quotation marks omitted).

### B. Rule 12(b)(6): Failure to State a Claim

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint. *Liou v. Le Reve Rittenhouse Spa, LLC*, No. CV 18-5279, 2019 WL 1405846, at *2 (E.D. Pa. Mar. 28, 2019). To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of a plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. Id. at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### IV. DISCUSSION

#### A. Subject Matter Jurisdiction

The Garabedian defendants argue under Rule 12(b)(1) that this Court lacks subject matter jurisdiction because plaintiff failed to "plead facts related to his domicile or citizenship," negating the complete diversity requirement. Defs.' Mot. Dismiss at 7-9. Further, the Garabedian defendants argue that "[t]he face of the pleadings also does not support the amount in controversy requirement. Plaintiff does not plead a source of economic loss." Defs.' Mot.

Dismiss at 9-10. The Garabedian defendants' arguments are misplaced.

As discussed *supra*, when confronted with a Rule 12(b)(1) motion, the Court must first determine whether the motion "presents a 'facial' attack or a 'factual' attack." *Long*, 903 F.3d at 320. The defendants did not answer the Second Amended Complaint. Instead, they presented a facial attack. *See Davis*, 824 F.3d at 346. As such, the Court is required to consider the allegations made in the complaint as true. *Id.* Assuming the facts in the complaint are true, plaintiff is a citizen of Ohio. Second Am. Compl. at 2. None of the defendants (the Garabedian defendants or Poulos) are citizens of Ohio. *Id.* There is complete diversity of citizenship.

Next, the Garabedian defendants also claim that the pleadings do not support a finding that the amount in controversy requirement has been satisfied. The Garabedian defendants are incorrect. In order to dismiss a complaint for failing to plead damages in excess of the jurisdictional amount, "'[i]t must appear to a legal certainty that the claim is really for less that the jurisdictional amount.'" *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). In determining whether the claim is less than the jurisdictional amount, the Court must conduct a choice of law analysis to determine which state's substantive law (including any limitations on damages) applies because jurisdiction in the case is based on diversity between the parties. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

In conducting a choice of law analysis, the Court is "required to apply the law of the forum state, including its choice of law provisions." *Woessner v. Air Liquide Inc.*, 242 F.3d 469, 472 (3d Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Pennsylvania has a two-step framework for addressing choice of law questions. First, the "Court determines whether a real conflict exists between the respective laws" of the states with an

interest in the case and second, the Court determines "which state 'has the greater interest in the application of its law.'" *Woods Servs., Inc. v. Disability Advocates, Inc.*, No. CV 18-296, 2018 WL 2134016, at *4 (E.D. Pa. May 9, 2018) (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230-31 (3d Cir. 2007)). There are two causes of action in this case. The court conducts a choice of law analysis as to each cause of action.

### i. Choice of Law Analysis: Defamation

The Court applies Pennsylvania law to the defamation claim. As discussed *supra*, the Court utilizes Pennsylvania's two-step framework for choice of law questions. *Woods Servs.*, 2018 WL 2134016, at *4. Under step one of the Pennsylvania conflict of laws analysis, there are four states with a possible interest in this case—Pennsylvania, Ohio, Wisconsin, and Massachusetts. There is a conflict between the four states because defamation in Wisconsin does not require economic loss or special harm and the three other states require economic loss or special harm.[1] *In re Storms v. Action Wisconsin Inc.*, 750 N.W.2d 739, 748 (Wis. Ct. App. 2008). So, the Court proceeds to step two.

At step two, when publication in a defamation action only occurred in one state, the state where the publication occurred is the state whose law should generally apply. Restatement (Second) Conflict of Laws § 149 cmt. c (1971). However, courts in this district have stated that, generally, the state of plaintiff's domicile has the greatest interest in vindicating a plaintiff in a defamation action. *Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F. Supp. 2d 425, 432 (E.D. Pa. 2003). But, the state where one's professional reputation and business contacts are

---

[1] The elements of a defamation action in Pennsylvania, Ohio, and Massachusetts are substantively the same. *See* 42 Pa. Cons. Stat. Ann. § 8343(a) (1978) (listing elements of defamation); *Savoy v. Univ. of Akron*, 15 N.E.3d 430, 435 (Ohio Ct. App. 2014) (same); *Flagg v. AliMed, Inc.*, 992 N.E.2d 354, 365 (Mass. 2013) (same).

based also has an interest. *Id.*

Ultimately, the state with the greatest interest in the application of its law to the defamation claim in this case is Pennsylvania because (1) it is the place where the publication occurred, (2) it is the place where plaintiff has had his professional and business contacts as a teacher for over 25 years and the alleged defamatory letters related to plaintiff's professional reputation as a teacher, and (3) plaintiff was working in Pennsylvania when the alleged defamatory letters were sent.

### ii. *Choice of Law Analysis: Intentional Infliction of Emotional Distress*

The Court applies Pennsylvania law to the intentional infliction of emotional distress ("IIED") claim. As discussed *supra*, the Court utilizes Pennsylvania's two-step framework for choice of law questions. *Woods Servs.*, 2018 WL 2134016, at *4. At step one, there is a conflict between the four states with a possible interest because Pennsylvania requires physical injury for IIED claims and the three other states do not. *See Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994) (noting that plaintiff must allege physical injury to prevail on an IIED claim under Pennsylvania law).[2] Thus, the Court proceeds to step two.

At step two, the Court concludes that Pennsylvania has the greatest interest in the application of its law to plaintiff's IIED claim. Pennsylvania has the greatest interest because Pennsylvania has the most significant relationship to the occurrence and the parties. *See* Restatement (Second) of Conflict of Laws § 145 (1971). Plaintiff is currently employed as a teacher in Pennsylvania and has been a teacher in Pennsylvania for over 25 years, both letters

---

[2] *Retuerto v. Berea Moving Storage & Logistics*, 38 N.E.3d 392, 405 (Ohio Ct. App. 2015) (listing elements of IIED); 1) *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318-19 (Mass. 1976) (same); *Rabideau v. City of Racine*, 627 N.W.2d 795, 802-03 (Wis. 2001) (same).

were sent to persons in Pennsylvania, and the underlying conduct addressed in the letters was alleged to have taken place in Pennsylvania. Thus, the Court applies Pennsylvania law to the IIED claim.

>   iii.   *Conclusion: Subject Matter Jurisdiction*

Applying Pennsylvania law, it does not appear to a legal certainty that plaintiff's claims are for less than the jurisdictional amount. There have been several cases for defamation in Pennsylvania with awards over a million dollars. *See, e.g.*, *Sprague v. Walter*, 656 A.2d 890, 914 (Pa. Super. Ct. 1995). Additionally, there is no statutory cap on recovery in a defamation case in Pennsylvania. 42 Pa. Cons. Stat. Ann. § 8343, *et seq*. There have also been cases for IIED in Pennsylvania with awards over a million dollars. *See, e.g.*, *Romani-Ruby v. Romani*, No. 114 WDA 2015, 2016 WL 81773, at *1 (Pa. Super. Ct. Jan. 6, 2016) (affirming judgment where the jury returned a "monetary damages verdict for [IIED] in an aggregate amount of $2,475,000.00"). Accordingly, the amount in controversy requirement has been satisfied. This Court concludes that it has subject matter jurisdiction over the defamation and IIED claims.

**B. The Defamatory Nature of the Statement**

The Garabedian defendants argue under Rule 12(b)(6) that plaintiff failed to sufficiently state a claim for defamation. The Court agrees. Under Pennsylvania law, to recover for defamation, a plaintiff must prove: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. Ann. § 8343(a) (1978).

"Whether a communication is capable of defamatory meaning is a 'threshold issue' to be

determined by the court." *Burton v. Teleflex Inc.*, 707 F.3d 417, 434 (3d Cir. 2013) (quoting *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. Ct. 2010)). "A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Rann Pharmacy, Inc. v. Shree Navdurga LLC*, No. CV 16-4908, 2016 WL 6876350, at *10 (E.D. Pa. Nov. 22, 2016). If the statement seems to "blacken a person's reputation or expose him to public hatred, contempt . . . or to injure him in his business or profession," the statement is defamatory. *Id.*

In this case, when viewing the well-pleaded facts in the light most favorable to the plaintiff, on April 11, 2018, the Garabedian defendants sent a letter to the headmaster of the school where plaintiff was employed and stated that Poulos "was repeatedly sexually molested by [plaintiff] from approximately 1993 . . . until approximately 1995" while plaintiff was "assigned to or affiliated" with the school. Second Am. Compl. Ex. A. Later, on December 26, 2018, defendants sent a letter to the school's attorney. Second Am. Compl. Ex. B. In this letter, the Garabedian defendants provided more details of the alleged sexual abuse including the statement that "[plaintiff] sexually abused Mr. Poulus in [the schools]'s geometry classroom between approximately 10 and approximately 15 times." Second Am. Compl. Ex. B. Stating that a teacher "sexually molested" and "sexually abused" a student "approximately 10 and approximately 15 times" is plainly defamatory.[3]

---

[3] The Garabedian defendants' arguments that the statements contained within the letters were opinions based on disclosed facts and that there was no publication are unavailing and may be disposed of quickly. Defs.' Mot. Dismiss at 26-31. First, statements that a teacher "sexually molested" and "sexually abused" a student in the "geometry classroom between approximately 10 and approximately 15 times" are statements of fact, not opinions based on disclosed facts. *See* Restatement (Second) of Torts § 566 cmt. b (1977). Additionally, the Second Amended Complaint adequately pleads that the letters were published. *See* Second Am. Compl. Ex. A; Second Am. Compl. Ex. B. *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 463 (Pa. Super. Ct. 1984) ("Publication of defamatory matter is its communication intentionally or by a negligent act

### C. The Absolute Privilege of Judicial Immunity

The Garabedian defendants also claim that the statements made in the letters are subject to the judicial immunity privilege and are therefore cannot form the basis of plaintiff's defamation claim. The Court agrees. "The judicial privilege is a defense raised by the defendant." *Schanne v. Addis*, 121 A.3d 942, 951 (Pa. 2015). The determination of whether a statement "is absolutely privileged is a question of law for the court." *Richmond v. McHale*, 35 A.3d 779, 785 (Pa. Super. Ct. 2012). In this circuit, if it appears from the face of the complaint that an affirmative defense applies, it may be properly raised on a motion to dismiss and the claim may be subsequently dismissed. *Cf. West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010) (explaining that a defendant may raise an affirmative defense in the context of Rule 12(b)(6) if the defense is apparent from the face of the complaint); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277 (3d ed. 2017) ("When the facts are completely disclosed on the face of the pleadings, and realistically nothing further can be developed by pretrial discovery or a trial on the issue raised by the defense . . . the matter may be disposed of by a motion to dismiss under Rule 12(b)."). "[W]hen it appears from a complaint that absolute privilege exists, the defense of failure to state a claim properly may be asserted to accomplish a dismissal on motion under rule 12(b)." *Garcia v. Hilton Hotels Int'l*, 97 F. Supp. 5, 9 (D.P.R. 1951) (dismissing a defamation case because an absolute privilege applied).

"It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation."

---

to one other than the person defamed.").

*Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991). The judicial privilege provides "immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought." *Schanne*, 121 A.3d at 947. Notably, the judicial privilege also applies to "'communications made prior to the institution of proceedings' if such communications were 'pertinent and material' and 'had been issued in the regular course of preparing for contemplated proceedings.'" *Greenberg v. McGraw*, 161 A.3d 976, 982 (Pa. Super. Ct. 2017) (quoting *Post v. Mendel*, 507 A.2d 351, 356 (Pa. 1986)). "[A]ll doubt as to whether the alleged defamatory communication was indeed pertinent and material to the relief or redress sought is to be resolved in favor of pertinency and materiality." *Richmond v. McHale*, 35 A.3d 779, 785 (Pa. Super. Ct. 2012). "[T]he [judicial] privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." *Id.* at 947. Importantly, the judicial privilege cannot be destroyed by abuse. *See Id.* at 947 n.3; *see also Greenberg*, 161 A.3d at 981 ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."); *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991) ("The [judicial] privilege is absolute and cannot be destroyed by abuse."). Notwithstanding this strong language, the absolute privilege of judicial privilege may be lost though over-publication. *Pawlowski*, 588 A.2d at 41 n.3 ("In the case of the judicial privilege, over-publication may be found where a statement initially privileged because [it was] made in the regular course of judicial proceedings is later republished to another audience outside of the proceedings.").

*Schanne v. Addis*, 121 A.3d 942 (Pa. 2015) is instructive. There, the court held "that the judicial privilege does not apply to an allegation made by an adult before commencement of any quasi-judicial proceeding and without an intent that it lead to a quasi-judicial proceeding." *Id.* at

12

952. The court distinguished the case before it, where the publisher did not intend that the statement be used in a later filed quasi-judicial proceeding, from several other cases where the communications also occurred prior to judicial proceedings but the judicial privilege was nonetheless upheld. *Id.* at 950. The court reasoned that the cases were different because the communications at issue in the cases where the privilege was upheld were "made in a directed effort to initiate proceedings or otherwise obtain relief from school officials for harm stemming from a school employee's alleged misconduct." *Id.* Where the communications were made in an effort to "obtain relief from school officials for harm stemming from a school employee's alleged misconduct," there was "a colorable nexus between immunity and the privilege's underlying policy pertaining to the unencumbered resolution of claims in a judicial (or quasi-judicial) setting." *Id.* at 950-51. The "judicial privilege operates by incentivizing individuals . . . to speak freely in *seeking to initiate* judicial or quasi-judicial proceedings." *Id.* at 949 (emphasis in original).

Viewing the well-pleaded facts in the light most favorable to the plaintiff, the statements at issue are subject to the judicial immunity privilege and are therefore absolutely privileged.[4] The allegedly defamatory statements were sent in two letters by the defendants, acting in their capacity as lawyers for Poulos. Although the Garabedian defendants sent both letters before judicial proceedings commenced, the Garabedian defendants sent the letters in an effort to "obtain relief from school officials for harm stemming from a school employee's alleged

---

[4] The Garabedian defendants' argument that plaintiff's claims are improper on the grounds that they are brought against a lawyer by a non-client do not merit discussion. The cases relied upon by the Garabedian defendants are in the context of lawyers being sued by non-clients who were harmed by the lawyer's negligent or incorrect advice. *See e.g.*, *Smith v. Griffiths*, 476 A.2d 22 (Pa. Super. Ct. 1984). In this case, plaintiff did not file suit against the Garabedian defendants because of the legal advice they gave a client, but rather for the Garabedian defendants' own actions.

13

misconduct." *See Schanne*, 121 A.3d at 949. The first letter was addressed to the school's headmaster and made a settlement demand of $1 million. Second Am. Compl. Ex. A. The second letter was addressed to the school's attorney responding to that lawyer's request for additional information regarding Poulos's claim. Second Am. Compl. Ex. B. Both communications were pertinent and material to the contemplated proceeding—a suit against the school for plaintiff's alleged misconduct—and both communications were sent in the regular course of preparing for a contemplated legal proceeding. *Post v. Mendel*, 507 A.2d 351, 356 (Pa. 1986). The Court thus finds that the absolute privilege of judicial immunity applies to the Garabedian defendants' statements made in the two letters.[5] Accordingly, the Court grants that part of the Garabedian defendants' motion seeking dismissal of plaintiff's defamation claim in Count I of the Second Amended Complaint. This dismissal is without prejudice.

### D. Intentional Infliction of Emotional Distress

The Garabedian defendants argue that the Second Amended Complaint fails to state a claim for intentional infliction of emotional distress. The Garabedian defendants are correct. To state a claim for IIED under Pennsylvania law, plaintiff "must plead four elements: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Eck v. Oley Valley Sch. Dist.*, No. CV 19-1873, 2019 WL 3842399, at *8 (E.D. Pa. Aug. 15, 2019). Additionally,

---

[5] Based on the present state of the record, the Garabedian defendants did not over-publish the defamatory statements. *Pawlowski*, 588 A.2d at 41 n.3. The Second Amended Complaint alleges that "[the Garabedian defendants] fully anticipated, knew, or should have known that the contents of the letter would foreseeably be distributed to other individuals" and "[the Garabedian defendants] knew or should have known that the contents of the letter would be distributed to the School's governing bodies." Second Am. Compl. ¶¶ 49-50. First, the Court need not credit these "naked assertion[s]." *Twombly*, 550 U.S. at 557. Second, there are no allegations that the Garabedian defendants published the statements to other individuals or to the school's governing bodies or otherwise over-published the defamatory statements. *Pawlowski*, 588 A.2d at 41 n.3.

plaintiff must allege physical injury. *Id.* To satisfy the first element, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583 (3d Cir. 2016) (citing *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). The question of whether the conduct is sufficiently extreme and outrageous is for the Court. *Eck*, 2019 WL 3842399, at *8.

Pennsylvania courts have found "extreme and outrageous conduct" forming the basis of an IIED claim, "only in the most egregious of situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children." *Cheney*, 654 F. App'x at 583-84. Further, Pennsylvania courts have held that statements made by an attorney, within the confines of a judicial proceeding, are absolutely privileged under the judicial immunity privilege and therefore may not form the basis for an IIED claim. *Thompson v. Sikov*, 490 A.2d 472, 474 (Pa. Super. Ct. 1985). Additionally, a court in this circuit recently noted that "no Pennsylvania case law exists upholding an IIED claim which has been predicated upon defamatory language." *Hill v. Cosby*, No. 15CV1658, 2016 WL 491728, at *9 (W.D. Pa. Feb. 9, 2016), *aff'd*, 665 F. App'x 169 (3d Cir. 2016).

The Court finds that the statements at issue, while reprehensible, are not so extreme or outrageous as to go beyond all possible bounds of human decency. Accordingly, the Court grants that part of the Garabedian defendants' motion seeking to dismiss the IIED claim in Count II of the Second Amended Complaint. The dismissal is with prejudice as amendment would be futile.

### E. Punitive Damages

The Court need not reach the issue of whether punitive damages are available because, as

15

discussed *supra*, the Court grants the Garabedian defendants' motion to dismiss plaintiff's claims of defamation and IIED.

## V.     FUTILITY OF AMENDMENT

Count II is dismissed with prejudice. Although Federal Rule of Civil Procedure 15(a) provides that courts "should freely give leave [to amend] when justice so requires," the Court may deny leave for good reason, including futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted," the same legal standard that applies under Federal Rule of Civil Procedure 12(b)(6) for assessing a motion to dismiss. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). The Court concludes that amendment of plaintiff's IIED claim (Count II) would be futile. Thus, that claim is dismissed with prejudice.

Count I is dismissed without prejudice. Plaintiff is granted leave to file a third amended complaint if warranted by the facts and applicable law as set forth in this memorandum. Any such complaint must be filed within twenty days.

## VI.     CONCLUSION

For the foregoing reasons, the Court grants the Motion by Defendants Mitchell Garabedian, Esquire and Mitchell Garabedian, Esquire D/B/A Law Offices of Mitchell Garabedian's to Dismiss Plaintiff's Second Amended Complaint. The dismissal of plaintiff's defamation claim (Count I) is without prejudice. The dismissal of plaintiff's IIED claim (Count II) is with prejudice.

An appropriate order follows.