**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MATTHEW RALSTON, | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION |
| MITCHELL GARABEDIAN, ESQUIRE, et al, | : | |
| | : | |
| Defendants. | : | |
| | : | NO. 2:19-cv-01539 |

**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS, MITCHELL GARABEDIAN AND MITCHELL GARABEDIAN, ESQUIRE D/B/A LAW OFFICES OF MITCHELL GARABEDIAN**

**A. Parties**

1.      Plaintiff's claims against defendants, Mitchell Garabedian and Mitchell Garabedian, Esquire d/b/a Law Offices of Mitchell Garabedian (collectively "Garabedian"), are based solely on the April 11, 2018 and December 26, 2018 letters attached to the second amended complaint.  1615a at 176:22-177:2 (deposition of Matthew Ralston (9/20/2021), attached as Exhibit "III").

2.      Plaintiff is a citizen of Ohio.  *See* 1810a at ¶ 1 (second amended complaint [Doc. 28] ("SAC")); 0002a-0003a at 5:24-6:16 (Matthew Ralston deposition (7/1/2021), attached as Exhibit "A").

3.      Plaintiff has lived and worked in Ohio since July 2016.  0003a at 6:2-12, 23:19 (M. Ralston 7/1/2021); 1634a at 250:25-251:2 (M. Ralston 9/20/2021).

4.      Plaintiff has an Ohio driver's license and votes in Ohio.  0003a at 6:13-16 (M. Ralston 7/1/2021).

1

5.  Prior to living in Ohio, plaintiff lived in Michigan from 2009 to 2016.  0003a at 7:17-8:13 (M. Ralston 7/1/2021).

6.  Plaintiff still has a home in Lake Ann, Michigan. 0061 at 238:21-239:3 (M. Ralston 7/1/2021).

7.  Plaintiff has not lived in Pennsylvania since 2009.  0003a at 7:17-8:13 (M. Ralston 7/1/2021).

8.  Garabedian is described as "nationally recognized advocates for victims of child abuse."  *See* 1818a (SAC ¶ 57).

9.  Mitchell Garabedian is a citizen of and licensed to practice law in Massachusetts.  *See* 1810a (SAC ¶ 2).

10.  Mitchell Garabedian, Esquire d/b/a Law Offices of Mitchell Garabedian is "a sole proprietorship, domiciled in Massachusetts with a principal place of business" in Massachusetts.  1810a (SAC ¶ 3).

11.  Kurtis Poulos is a citizen of, and domiciled in, Wisconsin.  1810a (SAC ¶ 7).

12.  Poulos was a citizen of Connecticut when he retained Garabedian in December 2017 but moved to Wisconsin in 2018.  0514a-0515a at 11:20-12:1(Kurtis Poulos deposition testimony (11/19/2020), attached as Exhibit "H"); 1271a (March 23, 2018 email re address change, attached as Exhibit "II").

**B.  Historical Allegations of Sexual Abuse at The Hill School**

**1.  The Hill School's Retention of Outside Counsel**

13.  On April 22, 2016, The Hill School retained Leslie Gomez, Esquire and Gina Smith, Esquire, to provide legal services to The Hill School in connection with investigating historical allegations of misconduct.  0130a-0132a at 38:10-40:10, 0134a at 42:10-18 (deposition

of Leslie Gomez, Esquire (10/7/2021), attached as Exhibit "C"); 1382a at 25:8-22 (deposition of

Thomas Rees, Esquire (10/11/2021), attached as Exhibit "VV").

14.     Gomez confirmed she has an attorney-client relationship with The Hill School,

owes her allegiance to The Hill School, and considers her communications with The Hill School

to be protected by the attorney-client privilege.  0152a-0153a at 60:24-61:4, 0154a at 62:17-21,

0158a at 66:10-13.

15.     Gomez acknowledged in her testimony that she was not an "independent

investigator" because she was retained to provide legal services to The Hill School and has since

stopped using the term "independent" to describe herself.  0154a-0156a at 62:23-63:22, 64:18-24

(Gomez).

16.     The Hill School had already received at least one report of sexual misconduct by a

faculty member directed to a student that Gomez was retained to investigate.  0138a at 46:14-18

(Gomez).

### 2.  First Letter from The Hill School Regarding Investigation Into Sexual Abuse

17.     On April 23, 2016, Zachary G. Lehman, the Headmaster of The Hill School,

wrote a "Message from the Headmaster" letter to "Hill School Alumni and Parents".  0288a-

0289a (April 23, 2016 letter (D-2) from The Hill School, attached as Exhibit "D"); 1120a at

74:6-16 (Deposition of Zachary Lehman (9/30/2021), attached as Exhibit "Y").

18.     Lehman wrote "that several prominent boarding schools recently have been

confronted with very troubling accusations or proven examples of sexual abuse of their students

by employees."  0288a (4/23/16 Hill School Letter).

19.     Lehman went on to express that The Hill School "does not tolerate conduct that violates the high ethical and behavioral standards" for its community.  0288a (4/23/16 Hill School Letter).

20.     Lehman claimed The Hill School had a "rigorous protocol" in place to ensure the safety of students and "are guided by respect for the privacy of our students and, especially, victims of unacceptable misconduct."  0288a (4/23/16 Hill School Letter).

21.     Lehman assured that The Hill School "take[s] our responsibility very seriously" and "I welcome your comments and suggestions."  0288a (4/23/16 Hill School Letter).

**3.  Poulos Received, Read and Deleted the "Propaganda" Letter**

22.     Poulos received the April 23, 2016 letter from The Hill School via email.  0300a-0301a at 246:1-247:15 (Kurtis Poulos Testimony (11/20/2020), attached as Exhibit "E").

23.     At the time he received the April 23, 2016 email, Poulos had decided "I was going to move past the situation."  0302a at 248:4-6 (Poulos 11/20/2020).

24.     Poulos deleted the message after reading it and

felt at the time that it was -- in the only terms I can say -- some sort of propaganda where they already knew what was going on, but they offered no actual support to the alumnists.

0303a at 249:6-16 (Poulos 11/20/2020).

**4.  Second Letter from The Hill School Soliciting Reports of Sexual Abuse**

25.     On November 20, 2017, Lehman sent another email to The Hill School Alumni with the subject line "Historical Allegations of Sexual Abuse at The Hill."  0497a-500a (November 20, 2017 email chain (D-1) including email from The Hill School, attached as Exhibit "F"); 0501a-0503a (also marked as D-33 in letter form, attached as Exhibit "G"); 1128a at 82:12-18 (Lehman).

26.     Lehman reported that, at the time of his prior letter in April 2016, he "initiated a review of historical allegations of abuse at The Hill and the School's responses to those allegations."  0501a (11/20/2017 Hill letter).

27.     Lehman further claimed:  "This was a proactive review by the School, not initiated by any complaint."  0501a (11/20/2017 Hill letter).

28.     Lehman claimed The Hill School had engaged "child-protection experts":

> The Board and I also felt it was imperative that the review be external, objective, and informed by the appropriate expertise. Accordingly, we engaged Leslie Gomez and Gina Smith of Cozen O'Connor, child-protection experts nationally recognized for their experience in this area, their objectivity, and their candor.

0501a (11/20/2017 Hill letter).

29.     Throughout the balance of his letter, Lehman repeatedly referred to Gomez and Smith as "child-protection experts" and did not identify Gomez or Smith as lawyers or lawyers for The Hill School.  0501a-502a (11/20/2017 Hill letter).

30.     Lehman revealed that the investigation exposed "several troubling incidents" that "involved conduct from several decades ago":

> Through the review, we learned of several troubling incidents in The Hill School's history. Those incidents involved conduct several decades ago by a small number of faculty members, none of whom have been associated with The Hill for many years and one of whom is deceased.

> The abuses uncovered were troubling, not only because of their nature and their impact on the students involved, but also because, in some instances, the School did not respond in a manner consistent with our institutional values, which prioritize student welfare. While some actions were taken in response, and may have been in accordance with the standards at the time, those actions would not be sufficient today.

0501a (11/20/2017 Hill letter).

31.     Lehman expressed he had the opportunity to speak to a number of former students and offer "my apologies on behalf of The Hill."  0501a (11/20/2017 Hill letter).

32.     He expressed gratitude to all community members who participated in the review. 0502a (11/20/2017 Hill letter).

33.     Lehman not only acknowledged "there may be more alumnae/i who have similar experiences" but identified an example of "sexual and gender-based harassment and violence" that occurred "in the late 1990s" that was reviewed.  0502a (11/20/2017 Hill letter).

34.     Lehman then explicitly invited people to come forward with claims of abuse:

I extend an invitation to any Hill School community member who wishes to share his or her experiences with the School, or, if appropriate, with law enforcement. I also encourage any students, parents, alumni, or staff to reach out directly to the School to share your observations and feedback. You may contact me directly at **zlehman@thehill.org** or 610-705-1280. You may also directly contact our child-protection experts, Leslie Gomez (**lgomez@cozen.com**) and Gina Smith (**gmsmith@cozen.com**), at 215-665-2000, or provide information anonymously online at **https://www.research.net/r/TheHillSchoolReview**. I have asked Leslie and Gina to expand their review to encompass any additional concerns that come forward.

0502a (11/20/2017 Hill letter).

**5.     Poulos Believed The Hill School Was Asking for Reports of Abuse**

35.     Poulos read the November 20, 2017 email from Lehman close in time to when he received it on November 20, 2017.  0697a at 194:2-18 (Poulos 11/19/2020); 0497a-500a (11/20/2017 email chain).

36.     Poulos was a student at The Hill School during the late 1990s and recognized the "several troubling incidents" from several decades ago referenced by Lehman in his email. 0700a-0701a at 197:9-198:20 (Poulos 11/19/2020).

37.     Poulos considered Lehman's November 20, 2017 letter an invitation to report the abuse he experienced while a student at The Hill School:

Q     Did you consider the November 20th, 2017, letter that you received via email that's now been marked as part of D-1 an invitation to report the abuse that you experienced during your time at The Hill School?
. . . .

6

A       100 percent.

0702a at 199:11-16 (Poulos 11/19/2020).

Q       Sure. I just want to know if there's a particular part or parts of the November 20th, 2017, letter that you received via email which has now been marked as part of D-1 that led you to believe the school was soliciting you to report your experience of sexual abuse with Mr. Ralston -- or by Mr. Ralston?
. . . .

A       Again, I don't believe they were asking for specific names through the email. I think they were more asking for you to come forward and let them know what had happened. Whether or not they were going to ask for specific names, I don't know. I mean, I would assume eventually we would get there. But, again, I looked at it as more of a protective, you know, type of maybe we can get you some counseling, maybe we can help you get through this so you can live a normal, productive life. Not we're going to probably take this and shove it in a drawer somewhere and make you sign an NDA or something.

0703a-0704a at 200:17-201:10 (Poulos 11/19/2020); *see also* 0317a-0318a at 263:18-264:3 (Poulos 11/20/2020).

38.       After reading the entire email, Poulos called his mother about the email.  0697a at 194:2-18 (Poulos 11/19/2020); (11/20/2017 email chain).

39.       Poulos commented to his mother that The Hill School "had hired people to help the students, and asked for her advice if she thought I should contact them."  0698a at 195:4-10 (Poulos 11/19/2020).

40.       Poulos asked "do you think I should reach out not to Zachary Lehman, but to the protection experts, their child protection experts, Leslie Gomez and Gina Smith."  0632a-0633a at 129:19-130:7 (Poulos 11/19/2020).

41.       Poulos initially thought he should contact Smith or Gomez

Because I thought the school was going to take a modicum of responsibility, having known about these situations for so long, that those were people that were actually looking to help previous students.

0699a at 196:2-8 (Poulos 11/19/2020).

42.    Poulos did not initially realize the "child-protection experts" were actually lawyers for The Hill School: "In no way do they state that they are attorneys."  0633a at 130:6-7 (Poulos 11/19/2020).

43.    Poulos' mother told him to forward her the email and to let her "find out who those people really are."  0699a at 196:9-14 (Poulos 11/19/2020).

44.    Poulos forwarded the email to his mother who then called him right back and told Poulos "not to contact them or the school."  0699a at 196:15-24 , *see also* 0634a 131:7-8 ("Q I see. But your mom told you don't contact them? A She -- correct.") (Poulos 11/19/2020).

45.    Poulos did not contact Smith or Gomez because "my mother did some research, thankfully, and found out they were attorneys for The Hill School."  0633a at 130:10-14 (Poulos 11/19/2020).

46.    After speaking to his mother, Poulos decided to contact a lawyer because he believed The Hill School "was being deceitful" because "that letter comes off as we're going to help you get through . . . [a]nd it turned out to be more of we're going to try and do our best to cover this up[.]"  0701a-0702a at 198:22-199:10 (Poulos 11/19/2020).

47.    Poulos believed "the letter was sent under false pretenses."  0633a at 130:13-14 (Poulos 11/19/2020).

> I never asked to be sent these specific emails. I was never, like, were there improprieties, please let me know who I can contact. These were emails sent to me unsolicited by the school to get information from previous students. I was intending on reaching out to them and seeing if they could offer some sort of mental health aide. And that's when I was informed that they were not child protection adversaries or experts, I should say. They were instead attorneys representing the school; and to me and my mother, we believe under false pretenses they wanted us to call the school, tell them what happened. And I then was like, no, I'm not going to do that.

0634a-0635a at 131:17-132:4 (Poulos 11/19/2020); *see also* 0318a-0323a at 264:11-269:11 (Poulos 11/20/2020) (Poulos explaining at length how and why the letter outraged him).

8

### C. Poulos' Retention of Garabedian

### 1. Poulos' Objective Was to Stop Future Abuse, Hold the School Accountable and Monetary Compensation

48.     Poulos first learned about Garabedian from his mother who suggested Poulos "read about him and see if I thought he could help me" given Garabedian's background representing sexual abuse survivors with aged claims.  0693a-0694a at 190:18-191:2 (Poulos 11/19/2020).

49.     Poulos' understanding was that Garabedian "stands up for people who have been through situations like I have" and "somebody who helped people who had gone through similar situations in their past to move on with their life."  0692a-0693a at 189:16-190:8 (Poulos 11/19/2020) (referring to sexual abuse by Ralston); *see also* 0342a at 288:11-21 (Poulos 11/20/2020) ("Somebody who I felt would fight for the issue at hand, not just me.")

50.     Poulos retained Garabedian after reading reviews of Garabedian's success in litigation against the Catholic church and with claims for sexual abuse.  0692a-0693a at 189:5-190:8 (Poulos 11/19/2020); 0344a-0348a at 290:22-294:21 (Poulos 11/20/2020).

51.     Poulos retained Garabedian because he wanted the truth to come out and the behavior at The Hill School to stop. 0704a-0705a at 201:21-202:6 (Poulos 11/19/2020).

52.     Poulos wanted The Hill School to be held accountable for fostering an environment that permitted child abuse and for it to be stopped.  *See* 0973a-0974a at 125:25-126:7 (Kurtis Poulos testimony (5/27/2021), attached as Exhibit "L").

53.     Poulos' objective in retaining Garabedian also always included the recovery of money from The Hill School.  0708a-0710a at 205:18-207:21, 0714a at 211:5-21, 0715a at 212:1-6 (Poulos 11/19/2020).

54.     Poulos wanted to recover his cost of tuition and expenses associated with attending The Hill School (roughly estimated at $120,000) and for The Hill School to pay for mental health treatment from a "qualified therapist" for "six months to a year of sustained therapy where I could work through the issues in a constructive way rather than drown them out with liquor or drugs."  0708a-0710a at 205:18-207:21, 0714a at 211:5-21, 0715a at 212:1-6 (Poulos 11/19/2020) ("Q So you wanted The Hill School to pay you money to reimburse tuition, travel, cost of books, sporting equipment; you wanted The Hill School to pay for the cost of medical mental health treatment; is that right?  A  Correct."); 0908a at 60:15-18 (Poulos testimony 5/27/2021) ("Q  So was it your objective from 2017 when you retained Mr. Garabedian to pursue relief from the school? A Correct."); *see also* 0330a-0336a at 276:19-282:2 (Poulos 11/20/2020) (regarding wanting an attorney to help him hold The Hill School accountable), 0340a-0341a at 286:4-287:4 (wanting to make the report of sexual abuse in a "nonpublic way, by not going to the press").

55.     While Poulos did not want a "crazy" amount of money, if he "got a crazy amount of money", then he planned to donate it.  0705a at 202:18-22 (Poulos 11/19/2020).

56.     His idea was to donate money to start a program or fund an existing program to help people who had experienced what he had experienced. 0715a at 212:11-24 (Poulos 11/19/2020).

57.     Poulos wanted to "pursue some type of remedy for other students who had . . . experienced sexual abuse like [he] had" experienced.  0717a at 214:7-19 (Poulos 11/19/2020).

58.     Poulos discussed with Garabedian whether he could recover money even though the statute of limitations had passed.  0908a-0909a at 60:21-61:8 (Poulos 5/27/2021).

59.     Garabedian explained he would first contact The Hill School:

Q	What did you discuss with Mr. Garabedian about whether you could recover money from the school even though you could not file a lawsuit?

A	He stated that the first route would be to contact the school directly, and I would believe that he meant contact the school directly through their legal representation.

Q	What else did you discuss with Mr. Garabedian about recovering money from the school even though you could not then file a lawsuit against the school?

A	I believe there was a discussion about whether or not after -- say there was a judgment or whatever -- I would be willing to go public with the name of my abuser, and I said "Only after there was a conclusion."
. . . .
Q	Did Mr. Garabedian ever explain to you why he thought you could recover money from the school even though at that moment you couldn't file a lawsuit?

A	I don't remember the exact verbiage, but we did go over some options about reaching out to the school, addressing the fact that the school basically instigated this entire situation by sending out false representation letters asking for alumni to come forward, telling them to talk to their counselors.

0909a-0910a at 61:1-17-62:8 (Poulos 5/27/2021).

60.	Garabedian and Poulos discussed that The Hill School had a "moral obligation" to compensate Poulos for his injuries, even if a lawsuit could not, at that time, be filed against The Hill School.  0910a at 62:9-24 (Poulos 5/27/2021).

**2.  December 12-13, 2017 Telephone and Email Communications / Intake Interview**

61.	Poulos and his mother initially spoke to Garabedian on December 12 and 13, 2017, based on the emails and notes kept by the attorney-participants.  1023a (December 13, 2017 emails between Poulos and his mother (D-3), attached as Exhibit "O"); 1024a-1029a (December 13, 2017 emails between Poulos and Garabedian (D-11), attached as Exhibit "P"); 0913a at 65:17-20 (Poulos 5/27/2021); 1030a-1036a (December 12, 2017 notes (D-5), attached as Exhibit "Q"); 1037a (December 12, 2017 notes (D-9), attached as Exhibit "R"); 1268a-1269a (December 13, 2017 notes, attached as Exhibit "GG" (call with mother)); 1252a at 39:20-40:9 (deposition of Daniel Mahoney (7/8/2021), attached as Exhibit "FF").

62.     Garabedian and at least one other person from his office participated in the intake interview(s) and telephone discussions.  0913a-0914a at 65:21-66:8 (Poulos 5/27/2021).

63.     Poulos had the impression that Garabedian believed he was telling the truth about the abuse because Garabedian asked a lot of questions about the details of the sexual abuse, Poulos' background and did not just take Poulos' word for it:

> Q     Was it your impression that Mr. Garabedian believed that you were telling him the truth about the sexual abuse that you had sustained?
>
> A     Yes.
> . . . .
> Q     Did Mr. Garabedian say anything to you that led you to believe he believed you, that you had been sexually abused by Mr. Ralston?
>
> A     Yes. He asked for certain specifics if I could remember them and how it's affected my life throughout my relationships, my work habits, my alcohol and drug abuse and any other subsequent matters and how this has affected my basic overall well-being.
>
> Q     So Mr. Garabedian just didn't take your word for it that you had been sexually abused by Mr. Ralston, he asked you questions, right?
>
> A     Correct.
> . . . .
> [Poulos]: Correct. I believe we were on the phone for a couple of hours.

0914a-0915a at 66:9-67:5 (Poulos 5/27/2021); *see also* 1240a (April 16, 2019 notes, attached as Exhibit "EE") ("MG says truth is a defense & MG believes Kurt"); 1223a at 15:14-15, 1226a at 27:6-15 (deposition of Nathan Gaul (7/8/2021), attached as Exhibit "BB"); 1024a-1029a (12/13/2017 emails including email from Garabedian: "Be Proud!"); 1374a (May 16, 2019 email from Garabedian, attached as Exhibit "TT" "You are a brave and empowering vicitm[sic] leading the way for many to follow!").

64.     Poulos understood that Garabedian was performing "due diligence" to determine whether he would accept the representation and was likely to verify the information he provided. 0927a-0929a at 79:21-81:10 (Poulos 5/27/2021).

65.     During his deposition in this matter, Poulos was questioned extensively, over two days and by court order obtained by plaintiff, about the information he provided to Garabedian. *See* 1808a (Order [Doc. 119]).

66.     Poulos was questioned using the notes kept by the Garabedian attorneys that he had never seen before and was not provided to review or correct.  0919a at 71:6-14, 0926a-0927a at 78:25-79:6, 0932a at 84:8-16 ("I've never seen any handwritten documents from Mitchell's office."), 0985a at 137:8-14 (Poulos 5/27/2021).

67.     The lawyers did not have a recollection of the December 2017 communications independent from what they wrote in their notes. 1245a at 11:1-12, 1252a-1253a at 41:20-42:3, 1265a at 92:13-15 (Mahoney); 1687a at 35:6-37:10 (deposition of Mitchell Garabedian (6/24/2021), attached as Exhibit "UUU").

68.     Poulos was asked to confirm, line by line, that the information reflected in the notes was true and information he provided to Garabedian.  *See, e.g.,* 0919a-0931a at 71-83, 0935a-0945a at 87:2- 97:17, 0950a-0976a at 102:1-128:5 (regarding Exhibit "Q" a.k.a D-5), 0932a-0935a at 84:8-87:1, 0976a-0978a at 128:8-130:23 (regarding Exhibit "R" a.k.a D-9) (Poulos 5/27/2021); 1252a at 41:4-23 (Mahoney).

69.     In all instances, Poulos confirmed the information recorded in the lawyer's notes was information he provided to Garabedian.  *See, e.g.,* 0919a-0978a at 71-130 (Poulos 5/27/2021).

13

70.     Poulos confirmed the information was true, except for some of the criminal history, immaterial typographical errors likely by the listener and an error in the name of a teacher.  *See, e.g.,* 0925a-0926a at 77:24-78:9 (elementary school name written as "Lake Russell" rather than "Lake Bluff"), 0926a at 78:17-24 ("UWM" means "UW-Milwaukee" not "UW-Madison"), 0952a-0953a at 104:6-105:13 (told Garabedian "Lahey" but he misspoke and not Lahey) (Poulos 5/27/2021).

71.     As it related to the criminal history, Poulos repeatedly testified that the information he provided at the time was what he believed to be true.  *See, e.g.,* 0922a at 74:18-20, 0994a at 146:2-5 (Poulos 5/27/2021).

72.     Poulos explained that he did not realize, until the proceedings in this lawsuit, when his mother told him between depositions, that he actually had a felony.  0993a-0994a at 145:23-146:22 (Poulos 5/27/2021).

73.     Poulos explained that when he spoke to Garabedian:  "I did not at that moment believe I had a felony.  I thought it had been reduced to a misdemeanor."  0921a-0922a at 73:18-74:20, 0994a at 146:2-22 (Poulos 5/27/2021).

74.     Poulos believed he told Garbedian that he had done some "overnighters" in jail while waiting to post bail and did not know why "NONE" was written next to "JAIL:" on the attorneys' notes.  0995a-0996a at 147:18-148:16 (Poulos 5/27/2021); 1030a (12/12/2017 notes).

75.     Poulos provided the information about his criminal history as he understood it and was not trying to deceive Garabedian or hide information from Garabedian.  0921a-0922a at 73:18-74:20 (Poulos 5/27/2021).

76.     At the time, Poulos had the impression Garabedian was also going to search his criminal history records.  0916a-0918a at 68:23-70:4 (Poulos 5/27/2021).

77.     Poulos identified Matthew B. Ralston by name to Garabedian as the teacher who sexually abused him during his initial interview with Garabedian in December 2017.  0835a at 541:4-12 (Kurtis Poulos deposition testimony (11/24/2020), attached as Exhibit "I"); 0905a at 57:1-8 (Poulos 5/27/2021).

78.     Garabedian also asked if Poulos was aware of any other teachers who had engaged in abuse because Poulos was pursuing a claim against The Hill School.  0932a-0935a at 84:8-87:1 (Poulos 5/27/2021).

79.     Poulos identified Thomas Ruth as a teacher who had acted abusively but who did not sexually abuse Poulos.  0933a at 85:4-10, *see also* 0959a-0960a at 111:18-112:13 (Poulos 5/27/2021).

80.     Poulos provided extensive factual information about his academic history, his family history, the details of the sexual abuse, details of other bullying and inappropriate behavior by Ralston before and after the sexual abuse (during his freshman and senior years), the description of his abuser, information about The Hill School and plaintiff, his medical history and treatment, his mental health conditions, his struggles with alcohol, his instances of self-harm, the impact of the sexual abuse and his disclosures to his mother, girlfriend, treating physician and that he had previously connected a criminal attorney to Garabedian during the December 12 and 13, 2017 communications.  *See, e.g.,* 0919a-0978a at 71-130 (Poulos 5/27/2021); 1030a-1036a (12/12/2017 notes); *see generally* 1253a-1259a at 42:4-68:9 (questioning of Mahoney regarding notes reflected in Exhibit "Q").

15

### 3.  December 2017 Investigation by Garabedian

81.    Garabedian's file reflects printouts dated December 12 and 13, 2017 of materials obtained from the Internet relating to plaintiff and The Hill School.  1316a-1323a (December 2017 investigation materials, attached as Exhibit "OO").

82.    There is a printout from plaintiff's Linkedin page with the date "12/12/2017" at the top.  1320a-1321a (12/2017 investigation materials).

83.    The printout included a picture of plaintiff and that plaintiff was "Dean of Faculty, instructor of mathematics" at The Hill School from September 1992 to July 2009.  1320a-1321a (12/2017 investigation materials).

84.    There is a printout dated "12/12/2017" at the top left from The Hill School website that reflects one page of an article titled "Introducing the New Faculty and Staff Hires for 2016-2017."  1323a (12/2017 investigation materials).

85.    The page included a blurb about plaintiff rejoining The Hill School as a Capital Giving Officer.  1323a (12/2017 investigation materials).

86.    The blurb included a photograph of plaintiff and background information indicating that he was an instructor of mathematics at The Hill from 1992 until 2009, was the Dean of Faculty and received an award for Dormitory Parenting, which were underlined in blue pen.  1323a (12/2017 investigation materials).

87.    The Garabedian file materials also reflected a printout from the 1991 Hill School yearbook including a picture and description of Thomas Ruth.  1322a (12/2017 investigation materials).

88.    Next to the title on the page, there was a link to "View all yearbooks".  1322a (12/2017 investigation materials).

16

89.     Both Poulos and his mother forwarded the November 20, 2017 letter from Lehman to Garabedian.  1023a (12/13/2017 emails); 1024a-1029a (12/13/2017 emails); 0910a-0913 at 62:25-65:11 (Poulos 5/27/2021).

90.     Garabedian also requested yearbooks from Poulos.  1023a (12/13/2017 emails).

91.     Poulos gave permission for Garabedian to speak with his mother.  0897a at 49:5-18 (Poulos 5/27/2021).

92.     Poulos believed his mother could provide Garabedian her perspective and information about his claims.  0975a at 127:13-25 (Poulos 5/27/2021); 1493a-1494a at 34:19-35:4 (deposition of Kurtis Poulos (4/22/2021), attached as Exhibit "HHH") ("Possibly a view at my life and how it has been destroyed from the outside.")

93.     On December 13, 2017, Garbedian spoke to Poulos' mother who confirmed when she learned of the abuse from Poulos and commentary about certain well-known alumni of The Hill School, including Donald Trump's sons.  *See* 1259a at 68:17-69:15 (Mahoney); 1268a-1269a (12/13/2017 notes); *see also* 1023a (12/13/2017 emails).

94.     Garbedian's file materials reflect a printout from The Hill School website dated "12/13/2017" at the top left regarding "Reflections from the Headmaster on Historic Election for President of the United States", which confirmed that the Trumps are alumni of The Hill School.  1316a-1317a (12/2017 investigation materials).

95.     Similarly, there is a printout dated "12/13/2017" regarding the addition of Eric Trump as a trustee, with content confirming the Trumps as alumni highlighted in yellow.  1319a (12/2017 investigation materials).

96.     There is a printout also dated "12/13/2017" of search results for "R" in The Hill School Faculty and Staff Directory that returned only plaintiff.  1318a (12/2017 investigation materials).

**4.  Contingent Fee Agreement**

97.     Garabedian agreed to accept Poulos' case after the December 12 and 13, 2017 discussions and investigation.  1023a (12/13/2017 emails); 0929a at 81:3-10 (Poulos 5/27/2021).

98.     Poulos then retained Garabedian pursuant to a written retention agreement.  0692a at 189:3-4, 0694a at 191:15-19 (Poulos 11/19/2020); 1022a (Contingent Fee Agreement, attached as Exhibit "N").

99.     Garabedian provided the Contingent Fee Agreement as well as numerous "Releases for your relevant educational, employment, criminal and medical records for you to sign where indicated.", which Poulos signed and returned.  1278a-1279a (December 13, 2017 letter from Garabedian with blank CFA (Mahoney-5), attached as Exhibit "MM"); 1262a at 78:17-79:10 (Mahoney); 1280a-1315a (compilation of releases executed on December 15, 2017, attached as Exhibit "NN"); 1024a-1029a (12/13/2017 emails); 0915a-0916a at 67:7-68:21 (medical record releases), 0918a at 70:10-18 (academic record releases) (Poulos 5/27/2021).

100.    The Contingent Fee Agreement was executed on December 15, 2017 by Poulos and countersigned by Garabedian on December 18, 2017.  1022a (CFA); 0903a-0904a at 55:23-56:20 (Poulos 5/27/2021).

101.    When Poulos signed the Contingent Fee Agreement, Poulos understood that Garabedian was going to provide Poulos legal services.  0904a at 56:21-25 (Poulos 5/27/2021).

102.    The Contingent Fee Agreement provided the matter of representation was:

Injuries caused by Matthew Ralston, his agents, representatives, and supervisors; and The Hill School, and its agents, representatives, supervisors, officers, directors, and employees.

1022a (CFA).

103.    Garabedian agreed to advance all costs and would be compensated based on 33 1/3% of the gross recovery of monies collected and reimbursement of reasonable costs.  1022a (CFA).

104.    The Contingent Fee Agreement further provided:

(5) Client and Lawyer agree that a complaint or lawsuit will not be filed in this matter because the Statute of Limitations has run or expired.

1022a (CFA); 0905a at 57:9-14 (Poulos 5/27/2021).

### 5.   Poulos Intended to File a Lawsuit if the Statute of Limitations Was Changed

105.    Poulos and Garabedian discussed the statute of limitations and whether it had passed as to a claim against The Hill School or Ralston in December 2017.  0899a at 51:9-14 (Poulos 5/27/2021).

106.    Poulos was waiting to see if the Pennsylvania statute of limitations was changed, like it had been in other surrounding states, to make a decision about whether to commence a lawsuit.  0898a-0900a at 50:1-52:1 (Poulos 5/27/2021).

107.    At the time, Poulos' mother was actively tracking whether Pennsylvania was changing the statute of limitations and providing Poulos regular updates.  0900a-0901a at 52:2-53:3 (Poulos 5/27/2021).

108.    At the time he signed the Contingent Fee Agreement, Poulos understood that Garabedian was not going to file a lawsuit because the statute of limitations had passed.  0905a at 57:15-20 (Poulos 5/27/2021).

109.    Poulos retained counsel because he wanted to be prepared with a lawyer if the

statute of limitations was changed in Pennsylvania:

> Q       Why were you retaining Mr. Garabedian if you didn't -- if Mr. Garabedian
> wasn't going to file a lawsuit for you?
> . . . .
> [Poulos]: I retained legal counsel because if and when something changed out in
> Pennsylvania, it would be better to be prepared than not.
> . . . .
> Q       So is it correct that from December, 2017 you intended to file a lawsuit if
> the statute of limitations in Pennsylvania changed?
> . . . .
> [Poulos]: Yeah. My intention was to be prepared if that day were to come that I
> could and I knew what actions could be taken, and then I figured we would discuss how
> to go about it. As he stated multiple times, some of these cases can take five or six years.
> It's not going to be a five-month period.
> . . . .
> Q       The "he" is Mr. Garabedian?
>
> A       Correct. Sorry.
>
> Q       No problem. So Mr. Garabedian suggested to you that it could take years
> for the statute of limitations in Pennsylvania to be changed, if ever. Is that right?
>
> A       Correct.

0905a-0907a at 57:21-59:1 (Poulos 5/27/2021).

### 6.  Academic Records Requested in Early 2018

110.    On January 30, 2018, Garabedian sent a letter to The Hill School requesting

records related to Poulos.  1324a-1325a (January 30, 2018 letter requesting records (The Hill

School) with authorization, attached as Exhibit "PP"); 1261a at 76:2-20 (Mahoney).

111.    Garabedian identified "that this office represents Kurtis Poulos." and requested

"Poulos' complete educational record including, but not limited to, attendance records, grade

reports, conduct reports and evaluation reports[.]"  1324a-1325a (1/30/2018 letter).

112.    Garabedian has no record of a response from The Hill School to the January 30,

2018 letter.

113.    On February 2, 2018, Garbedian sent letters to the other educational institutions Poulos had attended.  1326a-1333a (compilation of February 2, 2018 record requests, attached as Exhibit "QQ").

114.    On February 15, 2018, Garabedian received records from University of Wisconsin-Milwaukee.  1334a-1369a (records received from University of Wisconsin-Milwaukee, attached as Exhibit "RR").

115.    The records from University of Wisconsin-Milwaukee included Poulos' high school transcript dated April 28, 1998 that was signed by Matthew B. Ralston (plaintiff), among other academic records.  1340a.

**D.  Poulos' Report of Sexual Abuse to The Hill School**

**1.  April 11, 2018 Letter**

116.    On April 11, 2018, Garabedian sent a letter addressed to Zachary G. Lehman, Headmaster of The Hill School.  1812a (SAC ¶ 17); 0845a-0846a (April 11, 2018 letter (D-15), attached as Exhibit "J").

117.    The letter indicated it is "Re: Sexual Abuse Claims of Kurtis Nicholas Poulos" and provided:

> Please be informed that this office represents Kurtis Nicholas Poulos.  This letter is an attempt to settle and compromise claims involving Matthew B. Ralston (hereinafter "Mr. Ralston") and Mr. Ralston's supervisors at The Hill School.  It should not be used as evidence in any court hearing.

0845a (4/11/2018 letter).

118.    The letter provided factual information about Poulos' enrollment dates and when, where, by whom and at what age Poulos was "sexually molested."  0845a-0846a (4/11/2018 letter).

119.    The letter described in a lengthy paragraph the "injuries" Poulos sustained by "being sexually molested" and indicated the letter was "only meant to briefly touch the surface of relevant facts."  0845a-0846a (4/11/2018 letter).

120.    The letter ended with a settlement demand:

Mr. Poulos's demand for settlement is $1,000,000.00.

I await your response.

0846a (4/11/2018 letter).

121.    The letter contained no carbon copies.  0845a-0846a (4/11/2018 letter).

122.    On April 11, 2018, Garabedian sent another letter to The Hill School and again requested "Poulos' complete educational record including, but not limited to, attendance records, grade reports, conduct reports and evaluation reports[.]"  1375a (April 11, 2018 letter requesting records (The Hill School), attached as Exhibit "UU").

123.    Garabedian does not have a record of a response from The Hill School to the second request for records.

**2.  Poulos Confirmed the Information in the April 11, 2018 Letter Was True**

124.    Poulos intended The Hill School to learn the content contained in the April 11, 2018 letter that he was repeatedly sexually molested by Ralston from approximately 1993 when he was 15 years of age until approximately 1995 when he was approximately 17 years of age. 0639a-0640a at 136:5-11, 137:12-23 (Poulos 11/19/2020).

125.    During his deposition in this action, Poulos confirmed, injury by injury, that the injuries identified in the April 11, 2018 letter were injuries he sustained as a result of being sexually molested by Ralston.  0762a-0773a at 468:2-479:10 (Poulos 11/24/2020).

22

126.     Poulos confirmed he shared the information about his injuries with Garabedian. 0773a at 479:11-23 (Poulos 11/24/2020).

127.     Poulos left it to Garabedian to decide how to go about achieving Poulos' objective of recovering money from The Hill School and stopping future abuse.  0895a-0896a at 47:19-48:12 (Poulos 5/27/2021).

128.     Poulos knew that Garabedian was going to write to The Hill School and ask for money to compensate for his injuries but did not know that the demand would be for $1 million. 0895a at 47:12-16 (Poulos 5/27/2021).

129.     At least as of September 20, 2018, Poulos knew that Garabedian had sent a letter to The Hill School about the abuse he sustained.  0983a-0984a at 135:10-15, 136:15-21 (Poulos 5/27/2021).

### 3.  The Hill Retained Counsel

130.     Lehman received the April 11, 2018 letter on April 17, 2018.  1059a-1060a at 13:23-14:2 (Lehman).

131.     Lehman personally opened the letter.  1061a at 15:10-14 (Lehman).

132.     Lehman read the letter, recognized it contained allegations and did not form any opinion about the truth of the content.  1062a at 16:13-20, 1064a at 18:11-16 (Lehman).

133.     Lehman "logged" the letter in The Hill School's "log of any letters related to . . . historical allegations of sexual abuse."  1064a-1065a at 18:22-19:7 (Lehman).

134.     Lehman forwarded the letter via email to the chair of the legal committee (Geoffrey Richards), the vice chair of the legal committee (Michelle Gyves), the school's attorneys (Thomas Rees, Leslie Gomez and Gina Smith), the CFO (Rick Wood), the chairman of

the board (Preston Athey) and vice chairman of the board (Andy Soussloff).  1070a at 24:2-22, 1104a-1105a at 58:2-59:12 (Lehman).

135.    Lehman told the people with whom he shared the letter not to share the letter. 1107a at 61:1-5 (Lehman).

136.    The Hill School requested Rees represent The Hill School in connection with the claims by Poulos on April 17, 2018 when it provided the letter to Rees.  1387a at 47:25-48:4, 1388a at 49:2-9, 1393a-1394a at 72:19-73:7 (Rees).

137.    Rees performed an investigation into the allegations contained in the April 11, 2018 letter.  1394a at 73:3-7 (Rees).

138.    Rees did not reach a conclusion regarding the truth or falsity of the allegations contained in the April 11, 2018 letter.  1398a at 92:18-22 (Rees).

**4.  Lehman Provided the April 11, 2018 Letter to Plaintiff**

139.    Within a few days, Lehman shared the content of the April 11, 2018 letter with plaintiff during a meeting and then emailed the letter to plaintiff.  1061a-1067a at 15-21 (Lehman); 0013a-0015a at 47:1-17, 52:25-54:10 (M. Ralston 7/1/2021).

140.    Lehman was the Headmaster and within plaintiff's employment reporting chain. 0016a at 59:20-60:6 (M. Ralston 7/1/2021).

141.    Ralston had "the impression that [Lehman] didn't believe it was credible." 0015a at 54:5-10; *see also* 0013a at 48:25-49:5 ("it was, my sense, that [Lehman] didn't believe the allegations."), 0013a-0014a at 49:17-52:15 (M. Ralston 7/1/2021); 1201a at 155:4-10 (Lehman confirming that he does not think any differently of plaintiff as a result of either the April 11, 2018 letter or December 26, 2018 letter or know of anyone who does), *see also* 1074a at 28:14-20 (Lehman).

24

142.    Plaintiff read the April 11, 2018 letter in its entirety after he received it via email. 0016a at 61:18-22 (M. Ralston 7/1/2021).

143.    Plaintiff confirmed he believed that the content of the April 11, 2018 letter included "serious child abuse allegations" and that plaintiff should have been immediately fired if The Hill School credited the allegations by Poulos.  0054a at 211:5-14 (M. Ralston 7/1/2021).

144.    Plaintiff has "no idea" why Poulos accused plaintiff of repeatedly sexually molesting Poulos.  0020a at 77:12-20 (M. Ralston 7/1/2021).

145.    Plaintiff understood that Garabedian was writing to Lehman on behalf of a client, Kurtis Poulos.  0019a at 72:2-8 (M. Ralston 7/1/2021).

146.    Plaintiff immediately understood that Poulos was demanding payment of money from The Hill School and not from plaintiff.  0022a at 83:22-84:13 (M. Ralston 7/1/2021).

147.    Plaintiff did not believe and was not concerned that Poulos wanted a million dollars from him.  0022a at 83:22-85:17 (M. Ralston 7/1/2021).

148.    Plaintiff immediately recognized Poulos as a former student of The Hill School "who lived in our dormitory" and "with whom I would have had contact in several capacities." 0019a-0020a at 72:24-74:5 (M. Ralston 7/1/2021).

149.    Plaintiff confirmed he taught Geometry to Poulos.  0020a at 74:6-9 (M. Ralston 7/1/2021); 1598a at 107:2-16 (M. Ralston 9/20/2021).

150.    Plaintiff confirmed he had contact with Poulos at The Hill School between 1993 and 1995.  0020a at 75:3-5 (M. Ralston 7/1/2021).

151.    The only part of the April 11, 2018 letter that plaintiff disagreed with was whether he abused Poulos.  *See*  0019a-0020a 72:24-77:11 (M. Ralston 7/1/2021).

152.    Plaintiff confirmed he probably touched Poulos -- "Hand on a shoulder or something."  1615a at 177:21-23 (M. Ralston 9/20/2021).

153.    Plaintiff believes a teacher can touch a student without asking a student.  0031a at 119:24-120:13 ("But I think a teacher casually putting their arm around a student to get them back in line, or touching them on a shoulder to quiet them in an environment where they should be quiet, whether's it's chapel or dining hall during announcements, I don't think that is abusive at all.") (M. Ralston 7/1/2021).

154.    Plaintiff confirmed that he believed intimidation of a child by an adult was abusive and there is never a time when it is appropriate for an adult to intimidate a child.  0030a-0031a at 116:2-117:13, 118:11-119:2 (M. Ralston 7/1/2021).

155.    At the time he read the April 11, 2018 letter, plaintiff was aware that The Hill School had sent the November 20, 2017 letter, which plaintiff understood to be invitation for members of The Hill School community to report allegations of sexual abuse.  0032a-0033a at 125:18-126:19 (M. Ralston 7/1/2021); 1635a-1636a at 257:23-258:5 (M. Ralston 9/20/2021). Plaintiff never considered whether Poulos' report was in response to the November 20, 2017 letter from Lehman inviting reports of allegations of sexual abuse.  0033a at 126:6-13 (M. Ralston 7/1/2021).

156.    Plaintiff did not recognize Garabedian when he read the April 11, 2018 letter. 0016a at 61:23-25 (M. Ralston 7/1/2021).

157.    Within a couple weeks of April 21, 202018, plaintiff googled Garabedian and learned he was the lawyer portrayed in the move Spotlight and represents survivors of childhood sexual abuse.  0016a-0017a at 62:1-63:11, 65:15-22 (M. Ralston 7/1/2021).

158.     Sometime later, plaintiff visited the website for Garabedian's law firm.  0017a-0018a at 65:23-66:8 (M. Ralston 7/1/2021).

159.     After learning about Poulos' allegations from Lehman, plaintiff contacted numerous people and told them about the allegations.  0021a at 79:9-20, 0036a-0038a at 138:2-140:12, 143:1-13, 146:7-12, 147:7-10, 148:11-24, 0042a-0043a at 165:17-167:13 (M. Ralston 7/1/2021); *see also* 0053a at 207:14-17 (plaintiff confirming he has no other information about anyone else who was provided April 11, 2018 letter) (M. Ralston 7/1/2021).

160.     Plaintiff called his wife in Ohio and told her about the allegations by Poulos.  0021a at 79:9-20 (M. Ralston 7/1/2021).

161.     His wife did not believe the allegations.  0022a at 82:24-83:1 (M. Ralston 7/1/2021).

162.     Plaintiff called Rees, the attorney for The Hill School, about the allegations by Poulos.  0022a at 83:2-4 (M. Ralston 7/1/2021).

163.     Rees already knew about the letter but did not believe the allegations.  0023a at 86:9-11, 0036a at 140:24-141:6 (M. Ralston 7/1/2021).

164.     As far as plaintiff knows, the allegations by Poulos did not change Rees' opinion of plaintiff.  0037a at 145:3-16 (M. Ralston 7/1/2021); *see also* 1388a at 50:16-22, 51:15-52:4 (Rees testifying that he did not have an opinion of Ralston at the time he received the April 11, 2018 letter and, as of the present date, still has no opinion of Ralston).

165.     Plaintiff did not associate with Rees socially or other than as The Hill School's lawyer.  0037a at 145:18-21 (M. Ralston 7/1/2021).

166.     Plaintiff printed the letter and brought a copy to his friend Chris Chirieleison.  0036a at 138:2-140:12 (M. Ralston 7/1/2021).

167.     Chirieleison did not know about Poulos' allegations before he learned from plaintiff.  0036a-0037a at 141:21-142:3 (M. Ralston 7/1/2021).

168.     Chirieleison read some of the letter, said "It's bullshit" and did not believe it. 0036a-0037a at 141:7-142:7 (M. Ralston 7/1/2021).

169.     Chirieleison's high opinion of plaintiff did not change and Chirieleison has not stopped associating with plaintiff as a result of learning about Poulos' allegations.  0037a at 143:24-144:18 (M. Ralston 7/1/2021).

170.     Plaintiff told his brother, Mark Ralston, about the letter and allegations.  0037a at 143:1-13 (M. Ralston 7/1/2021).

171.     Plaintiff's brother did not believe the allegations.  0037a at 143:14-19 (M. Ralston 7/1/2021).

172.     Mark Ralston's high opinion of plaintiff did not change and Mark Ralston has not stopped associating with plaintiff as a result of learning about Poulos' allegations.  0037a-0038a at 145:22-146:6 (M. Ralston 7/1/2021).

173.     Plaintiff told his friend, Chris Hopkins, about the letter and allegations.  0038a at 146:7-12, 147:7-10 (M. Ralston 7/1/2021).

174.     Hopkins did not believe the allegations.  0038a at 147:11-16 (M. Ralston 7/1/2021).

175.     Hopkins' high opinion of plaintiff did not change and Hopkins has not stopped associating with plaintiff as a result of learning about Poulos' allegations. 1785a at 93:18-94:8 (deposition of Christopher Hopkins (9/2/2021), attached as Exhibit "ZZZ").

176.     Plaintiff told his supervisor, Geoffrey Neese, about the April 11, 2018 letter and allegations.  0038a at 148:11-24 (M. Ralston 7/1/2021).

177.    Neese did not know about the letter or Poulos' allegations before he learned from plaintiff.  0038a at 148:25-149:1, 0042a at 162:25-163:4 (M. Ralston 7/1/2021).

178.    Neese "did not give any credibility to it."  0042a at 163:5-13 (M. Ralston 7/1/2021).

179.    Neese's high opinion of plaintiff did not change and Neese has not stopped associating with plaintiff as a result of learning about Poulos' allegations.  0042a at 163:14-165:20 (M. Ralston 7/1/2021).

180.    Plaintiff told Bill Yinger, his friend, about the April 11, 2018 letter and allegations.  0042a-0043a at 165:17-167:13 (M. Ralston 7/1/2021).

181.    Yinger did not believe the allegations.  0043a at 169:17-24 (M. Ralston 7/1/2021).

182.    Yinger's high opinion of plaintiff did not change and Yinger has not stopped associating with plaintiff as a result of learning about Poulos' allegations.  0043a-0044a at 169:25-170:14 (M. Ralston 7/1/2021).

**5.  The Hill School Requested Garbedian Communicate With Its Lawyer, Rees**

183.    On April 24, 2018, Rees wrote to Garabedian that his firm represented The Hill School in connection with the April 11, 2018 letter.  1277a (April 24, 2018 letter from Rees, attached as Exhibit "LL"); 1399a at 93:10-94:7 (Rees).

184.    Rees asked that Garabedian communicate directly with Rees regarding the matter. 1277a (14/24/18 letter); 1399a at 93:10-94:7 (Rees).

185.    Information regarding Poulos' claim was reported to the insurers for The Hill School by Wood.  1435a at 239:1-240:22, 1440a at 259:13-260:8 (Rees).

186.    Plaintiff received a notice that the insurer disclaimed coverage.  0056a at 219:18-24 (M. Ralston 7/1/2021); *see also* 1651a (June 26, 2018 email to Rees, attached as Exhibit

"KKK"); 1659a-1665a (June 20, 2018 reservation of rights letter, attached as Exhibit "PPP")

(describing the April 11, 2018 letter as "an attempt to settle and compromise claims"); 1666a-

1672a (February 11, 2019 disclaimer of coverage letter, attached as Exhibit "QQQ").

187.     Plaintiff retained counsel but has not paid any legal fees.  0057a at 222:1-6 (M.

Ralston 7/1/2021); 1581a at 41:6-16, 1634a-1635a 252:10-12, 254:20-23 (Ralston 9/20/2021).

188.     Plaintiff stipulated he "is not seeking damages pertaining to legal fees [and costs]

as a result of the [alleged] defamatory letter."  0058a at 227:16-25 (M. Ralston 7/1/2021).

**6.  Plaintiff Received a Raise and Bonus After the April 2018 Letter**

189.     The Hill School took no adverse employment action against plaintiff in response

to the April 11, 2018 letter.  0054a at 210:23-212:1 (M. Ralston 7/1/2021); 1586a at 59:9-10,

1602a-1603a at 125:20-128:8 (M. Ralston 9/20/2021); 1421a at 183:8-184:8 (Rees).

190.     Plaintiff was never interviewed by anyone at The Hill School, any of its lawyers

or the police regarding Poulos' allegations in the April 11, 2018 letter.  0053a at 208:22-209:13,

0059a at 230:1-16 (M. Ralston 7/1/2021).

191.     Plaintiff claimed he was willing to be interviewed both to clear his name and to

pursue justice for Poulos.  0082a at 324:20-325:2, *see also* 0082a at 322:13-24 (willing to

cooperate and be interviewed) (M. Ralston 7/1/2021).

192.     Plaintiff received a raise after the April 11, 2018 letter.  1586a at 59:9-10, 1602a-

1603 at125:20-128:8 (M. Ralston 9/20/2021).

193.     On June 18, 2018, plaintiff received a letter from the Assistant Headmaster

informing him of a 5.5% raise in the amount of $4,141.12 effective July 1, 2018.  1458a (July 18,

2018 letter from Sockel regarding raise, attached as Exhibit "FFF"); 1452a-1453a (December 22,

2016 letter regarding raises and bonus plan, attached as Exhibit "DDD").

194.     The July 18, 2018 letter made no reference to the April 11, 2018 letter or the allegations by Poulos, and thanked plaintiff "for all of your creative, diligent, and results-oriented work!"  1458a (7/18/2018 letter); 1602a-1603a at 125:20-126:18 (M. Ralston 9/20/2021).

195.     Plaintiff received a written job evaluation on June 26, 2018 from his supervisor, Geoffrey Neese, which made no mention of the allegations by Poulos or the April 11, 2018 letter.  1454a-1457a (June 28, 2018 job evaluation (D-25), attached as Exhibit "EEE").

196.     Plaintiff self-evaluated and was evaluated by Neese as: "Meets Expectations". 1456a (6/28/2018 evaluation).

197.     On or about July 25, 2018, plaintiff was notified that he also received a $1,000 bonus.  1459a (July 25, 2018 email from Neese regarding bonus, attached as Exhibit "GGG").

**E. Request for Additional Information by The Hill School & Mediation Precondition**

**1. December 19, 2018 Telephone Discussion with Poulos**

198.     On December 12, 2018, Garabedian had a telephone discussion with Poulos' mother regarding the status of the statute of limitations in Pennsylvania, among other issues. 1238a (December 12, 2018 notes, attached as Exhibit "CC"); 1223a at 14:23-25, 17:1-20, 1226a at 27:6-15 (Gaul).

199.     During the telephone discussion, Garabedian told Poulos' mother "there's a movement to amend SOL, project to take at least 9-12 months, but no guarantees[.]"  1238a (12/12/2018 notes); 1223a at 14:23-25, 17:1-20, 1226a at 27:6-15 (Gaul).

200.     Garabedian thereafter requested and scheduled a telephone call with The Hill School's lawyer, Thomas Rees.  1273a-1276a (December 18 and 19, 2018 emails with Rees, attached as Exhibit "KK"); 1403a at 111:16-112:3 (Rees).

31

201.    Garabedian had a telephone discussion with Poulos on December 19, 2018 in advance of the upcoming call with Rees.  0985a at 137:22-25 (Poulos 5/27/2021).

202.    Poulos provided additional factual information to Garabedian regarding his claims during the telephone discussion on December 19, 2018.  0985a-0988a at 137:8-140:19 (Poulos 5/27/2021).

203.    Similar to the communications in December 2017, Poulos was questioned, line by line, with the attorneys' notes from the call and again confirmed the material information was correct and provided to Garabedian.  1038a (December 19, 2018 notes (D-7), attached as Exhibit "S"); 1221a-1223a at 9:17-10:2, 14:1-5, 16:9-15, 1226a at 27:6-15 (Gaul); 0985a-0988a at 137:8-140:21, *see also* 137:15-21 (address street name written down incorrectly) (Poulos 5/27/2021).

204.    Poulos' mother also forwarded emails to Garabedian that reflected she had been investigating The Hill School since at least April 18, 2016 (and before the first letter from The Hill School).  1370a-1373a (December 19, 2018 emails with forwarded emails and article, attached as "SS").

**2. December 21, 2018 Telephone Discussion with The Hill School**

205.    Garabedian and another attorney with his firm, Nathan Gaul, participated in a telephone discussion with Rees on December 21, 2018.  1239a (December 21, 2018 notes, attached as Exhibit "DD"); 1223a at 15:1-3, 1226a at 27:6-15, 29:7-16 (Gaul); 1403a-1404a at 111:22-113:9 (Rees); 1705a at 107:16-108:10 (Garabedian).

206.    Garabedian told Rees: "[T]his was a serious claim[.]"  1403a at 112:18-21 (Rees).

207.     Rees requested additional information about Poulos' claims, which Garabedian

agreed to provide.  1226a-1227a at 29:7-30:11 (Gaul); 1239a (12/21/2018 notes); 1403a-1404a at

112:10-113:8, 1406a at 121:8-18 ("I asked him for more specific allegations concerning the

claim, the allegations of abuse.") (Rees).

208.     Rees indicated The Hill School would like to interview Poulos.  1239a

(12/21/2018 notes);  1404a at 114:1-12 (Rees).

209.     Garabedian "counter[ed]" with whether The Hill School would agree to mediation

if the investigation found Poulos credible and that a condition of mediation would be no

confidentiality if a settlement agreement was reached:

> Q.     I want to use the most accurate terminology.  So "MG's position, if found
> credible, would they attend mediation, no confidentiality," when you wrote "would they
> attend," meaning did he ask them that in the phone call or was it he's not showing up for
> investigation unless and until you agree to mediate this?
> . . . .
> A.     It was a counter to Mr. Rees' suggestion that Mr. Poulos sit down for an
> investigation with outside counsel hired by The Hill School, would The Hill School agree
> to attend a mediation if the investigation found him credible.
>
> Q.     I see. And the counter from Mr. Garabedian was that it was going to be a
> non-confidential mediation?
> . . . .
> A.     No.
>
> Q.     Then what did it mean, "no confidentiality"?
>
> A.     No confidentiality means that if there was a settlement agreement, there
> wouldn't be a confidentiality clause attached to it, there would be no confidentiality as to
> a settlement, if there was one.
>
> Q.     Okay. Then when you wrote, "attorney will take this position to his
> client," what did you mean by that?
>
> A.     I recall that Mr. Rees said that he would bring it back to The Hill School.

1227a-1228a at 32:8-34:2, *see also* 1226a-1227a at 29:7-30:11 (Gaul); 1239a (12/21/2018

notes);  1403a-1404a at 112:23-113:3 (Garabedian "wanted to mediate the claim as long as the

mediation result was not confidential, and that as a precursor to mediation, an investigation was to determine whether or not the claim had some merit.") (Rees); *see also* 1705a at 108:22-109:21 (Garabedian).

210.    Rees said he would "take that back to his client, but wanted some more information about the case.  I recall Mr. Garabedian saying that we'd give him more information about the case."  1226a-1227a at 29:7-30:11 (Gaul); 1239a (12/21/2018 notes).

211.    As of the December 21, 2018 telephone discussion, The Hill School had not conducted an investigation into the claims by Poulos.  1406a at 123:20-124:8 (Rees).

212.    During the December 21, 2018 telephone call, Rees did not agree that The Hill School would perform an investigation into the claims by Poulos.  1406a at 122:2-8 (Rees).

213.    Rees understood that Garabedian wanted to mediate Poulos' claim and that there was a "precondition" to mediation after an investigation that concluded Poulos' claims had merit as of his first telephone discussion with Garabedian on December 21, 2018.  1404a at 113:19-25 (Rees).

**3.  Telephone Discussion With Poulos for Information for Requested Follow-up Letter**

214.    Garabedian thereafter had telephone discussions with Poulos to confirm more detailed information to include in the letter requested by the School on December 21, 2018 and December 26, 2018.  0989a at 141:15-21, 0991a at 143:2-7 (Poulos 5/27/2021).

215.    The additional factual information was recorded in attorneys' notes.  1039a-1040a (December 21 and 26, 2018 notes (D-6), attached as Exhibit "T"); 1223a at 15:4-7, 1226a at 27:6-15, 1228a-1229a at 37:5-8, 38:11-14 (Gaul).

216.     During his deposition, Poulos was again questioned about the attorneys' notes, line by line, to confirm the factual information was correct and was information he communicated to Garabedian.  0989a-0991a at 141:3-143:19 (Poulos 5/27/2021).

**4.  December 26, 2018 Letter Requested by The Hill School**

217.     In response to Mr. Rees' request, on December 26, 2018, Garabedian faxed a letter to Mr. Rees "Re: Sexual Abuse Claim of Kurtis Nicholas Poulos" that included additional information regarding Poulos' claims.  1813a (SAC ¶ 23); 0847a-0848a (December 26, 2018 letter (D-4), attached as Exhibit "K").

218.     The December 26, 2018 letter provided:

> As you know, this office represents Kurtis Nicholas Poulos with regard to his sexual abuse claim involving Matthew B. Ralston and Mr. Ralston's supervisors at The Hill School.
>
> During our telephone conversation regarding this matter on December 21, 2018, you requested additional information about Mr. Poulos's sexual abuse claim.  Pursuant to your request, and in further support of Mr. Poulos's claim, Mr. Poulos provides the following information:

0847a (12/26/2018 letter).

219.     The December 26, 2018 letter included explicit detail of what "Mr. Poulos recalls" regarding the sexual abuse and Poulos' contentions of injuries sustained as a result of the sexual abuse.  0847a-0848a (12/26/2018 letter).

220.     The letter ended: "Please advise me as to your client's position with regard to this matter."  0848a (12/26/2018 letter).

**5.  Poulos Confirmed Content of December 26, 2018 Provided to Garabedian**

221.     During his deposition in this action, Poulos confirmed that every sentence of the December 26, 2018 letter was factually correct – line by line – except for the sentence with the typographical error on page 2.  0775a-0783a at 481:7-489:24 (Poulos 11/24/2020).

222.     Poulos confirmed that the phrase "Mr. Ralston putting his mouth on Mr. Ralston's penis" was an error and was referring to "Mr. Ralston putting his mouth on your [i.e., Poulos'] penis", which Poulos confirmed occurred.  0780a-0781a at 486:7-487:4 (Poulos 11/24/2020).

223.     Poulos confirmed that all of the factual information contained in the December 26, 2018 letter was information he communicated to Garabedian and was true.  0783a-0784a at 489:25-490:6 (Poulos 11/24/2020).

224.     Poulos intended the detail about the sexual abuse contained in the December 26, 2018 letter to be communicated to The Hill School.  0641a-0642a at 138:22-140:3, 0648a at 145:7-24 (Poulos 11/19/2020).

225.     Poulos realized that the headmaster and Board of Trustees would be made aware of his allegations eventually.  0648a at 145:7-24(Poulos 11/19/2020).

226.     Poulos learned the second letter was sent close in time to December 26, 2018. 0991a at 143:14-19 (Poulos 5/27/2021).

227.     Poulos does not believe he actually read the December 26, 2018 letter prior to the institution of this lawsuit but thought he may have received it in the mail and just never opened it.  0641a at 138:10-21 (Poulos 11/19/2020).

228.     Poulos did not ask Garabedian for copies of the letters because he was busy moving to a new city, finding a new job, etc.  0896a-0897a at 48:15-49:4 (Poulos 5/27/2021).

229.     "As much as it is important in my life, it wasn't taking precedence over what was going to be an immediate need for me and my . . . previous girlfriend."  0896a-0897a at 48:25-49:4 (Poulos 5/27/2021).

### 6. Rees Provided the December 26, 2018 Letter to Plaintiff

230.    Rees acknowledged receipt of the December 26, 2018 faxed letter on December 26, 2018 via email.  1272a (December 26, 2018 email from Rees, attached as Exhibit "JJ").

231.    Rees provided the December 26, 2018 letter to the same people who had received the April 11, 2018 letter: Lehman, Richards, Gyves, Gomez, Smith, Wood, Athey and Soussloff. 1408a-1409a at 129:12-18, 133:19-134:8 (Rees).

232.    Rees also provided the December 26, 2018 letter to plaintiff on January 2, 2019 via email.  1652a (January 2, 2019 email from Rees to plaintiff, attached as Exhibit "LLL"); 1408a at 130:4-9 (Rees); 0059a at 231:22-24 (M. Ralston 7/1/2021).

233.    Rees called plaintiff on January 2, 2019 to tell plaintiff about the December 26, 2018 letter.  0059a at 230:24-231:17 (M. Ralston 7/1/2021); 1652a (1/2/2019 email).

234.    Nothing Rees said led plaintiff to believe the content of the December 26, 2018 letter changed Rees' opinion that the claims lacked merit.  0060a at 236:19-237:3 ("But we already established that he didn't believe it.") (M. Ralston 7/1/2021).

235.    Plaintiff confirmed that the content of the December 26, 2018 letter contained allegations of "serious child abuse" and that he should have been immediately fired and perhaps jailed if The Hill School credited the allegations.  0054a at 212:6-21 (M. Ralston 7/1/2021).

236.    During his deposition, plaintiff was asked about the content of the December 26, 2018 letter, sentence by sentence.  0075a-0078a at 294:17-307:24 (M. Ralston 7/1/2021).

237.    Plaintiff confirmed he met Poulos his freshman year.  0075a at 294:17-295:6 (M. Ralston 7/1/2021).

238.    Plaintiff could have been Poulos' table master during Poulos' freshman year, but plaintiff does not remember because the assignments changed every six months.  0075a at 295:7-14 (M. Ralston 7/1/2021).

239.    Plaintiff confirmed he was a mathematics teacher and cross country coach, lived in the dormitory with his family, was Poulos' geometry teacher during Poulos' sophomore (or fourth form) year, that classes were held on a rotating basis and Poulos' geometry class could have been the last class of the day.  0075a at 295:15-297:8, 21-23 (M. Ralston 7/1/2021).

240.    Plaintiff agreed that Poulos may have stayed after class but denied that he ever made Poulos stay after class.  0075a-0077a at 297:9-20, 299:9-300:7, 301:15-22, 302:2-23 (M. Ralston 7/1/2021).

241.    Plaintiff admits he was "probably" alone with Poulos in between classes.  0076a at 298:21-299:22, 300:20-301:14 (M. Ralston 7/1/2021).

242.    Plaintiff explained there was about a 10 minute period between the last class of the day and the start of athletic practice.  0076a at 299:9-22 (M. Ralston 7/1/2021).

243.    "[I]t would make perfect sense that I was [alone with Poulos].  I was his teacher. And if he had a question after class, could I come get extra help, would be an example."  0076a at 300:20-301:14 (M. Ralston 7/1/2021).

244.    Plaintiff confirmed that the geometry classroom was at the end of a hallway, like Poulos described in his testimony.  0077a at 303:5-12, 0082a-0083a at 325:13-328:11 (M. Ralston 7/1/2021); 0551a-0552a at 48:25-49:12, 0554a at 51:9-20 (Poulos 11/19/2020).

245.    Plaintiff confirmed Poulos transferred to Marquette University High School for his junior year and returned to The Hill School his senior year, that he and Poulos had very little contact in Poulos' senior year except that they lived in the same dormitory and that plaintiff has

had no contact with Poulos since Poulos graduated from The Hill School.  0078a at 306:20-309:7

(M. Ralston 7/1/2021).

246.    The only part of the December 26, 2018 letter that plaintiff disagreed with was

whether he abused Poulos.  *See, e.g.,* 0077a at 303:13-304:19 (M. Ralston 7/1/2021).

247.    Plaintiff has no idea why Poulos would describe such graphic detail of abuse if it

never happened.  0077a at 304:20-305:7 (M. Ralston 7/1/2021).

248.    Plaintiff considered whether Poulos had been abused and misidentified plaintiff

but never performed any investigation about it.  0077a-0078a at 305:8-306:8 (M. Ralston

7/1/2021).

249.    Plaintiff confirmed Poulos' descriptions of plaintiff (in 1992 to 1997) were

accurate.  0085a-0086a at 337:6-338:10 (M. Ralston 7/1/2021); 1599a at 110:22-25 (M. Ralston

9/20/2021); 0785a at 491:21-24 (Poulos 11/24/2020).

250.    Plaintiff could not identify any other teacher who could be confused with

plaintiff.  1599a at 111:1-7, *see also* 1598a-1599a at 108:17-112:10 (M. Ralston 9/20/2021)

(discussing descriptions of other male teachers).

251.    Plaintiff confirmed there was a study room with cubicles as described by Poulos.

0086a at 338:11-25 (M. Ralston 7/1/2021); 0936a-0938a at 88:16-90:20, 151:8-155:3 (Poulos

5/27/2021).

252.    Plaintiff confirmed he had contact with Poulos about his return to The Hill

School.  0078a-0079a at 309:17-310:18 (M. Ralston 7/1/2021).

253.    Plaintiff also remembered the incident during Poulos' senior year where plaintiff

blocked in Poulos' car, which Poulos described at length to Garabedian and is his testimony in

this case.  0079-0081a at 310-319 (M. Ralston 7/1/2021); 1635a at 256:2-257:4 (being cross-

examined by Poulos) (M. Ralston 9/20/2021); *see, e.g.,* 0573a-0582 at pp. 70-79 (Poulos

11/19/2020); 0785a at 491:6-14, 0800a-0802a at 506:2-508:5 (Poulos 11/24/2020).

    254.    The "car incident" was all plaintiff told Rees that plaintiff remembered about

Poulos when he learned of the April 11, 2018 letter.  1654a (April 29, 2018 email to Rees re car

incident, attached as Exhibit "NNN").

    255.    Plaintiff does not remember any animosity with Poulos.  0076a at 298:10-20 (M.

Ralston 7/1/2021).

    256.    Plaintiff confirmed he provided complimentary reviews of Poulos for Poulos'

performance.  0083a-0085a at 329:10-336:24 (M. Ralston 7/1/2021); 1656a-1658a (compilation

of three course reviews (D-17, D-18, D-19), attached as Exhibit "OOO").

    257.    Plaintiff told his wife, his brother Mark Ralston and Hopkins about the December

26, 2018 letter.  0061a at 238:2-9 (M. Ralston 7/1/2021).

**7.  Plaintiff Received Another Raise After the December 26, 2018 Letter**

    258.    Lehman reviewed the December 26, 2018 letter and did not form an opinion about

the truth of the allegations.  1074a at 28:4-20 (Lehman).

    259.    However, after receiving the December 26, 2018 letter, Lehman asked plaintiff to

"please keep his campus access limited to wherever he was staying and the Office of Institutional

Giving" when he was on campus, which was plaintiff's regular routine while on campus.  1068a-

1069a at 22:11-23:14, 1076a-1078a at 30:16-32:3 (Lehman); 1409a at 134:9-16 (Rees).

    260.    Lehman also told plaintiff not to be alone with students.  0056a at 219:25-220:2

(M. Ralston 7/1/2021).

261.    Plaintiff's job as remote capital giving officer did not require him to have contact with students on The Hill School campus.  1410a at 138:7-10 (Rees); 1578a at 28:14-20 (M. Ralston 9/20/2021).

262.    Plaintiff was not teaching, only had incidental contact with students, and could identify no time prior to Lehman's comment that he had actually been alone with a student since July 2016.  0007a-0008a at 23:9-11, 29:1-9 (M. Ralston 7/1/2021); 1581a at 40:7-15, 1588a at 66:1-67:9 (M. Ralston 9/20/2021).

263.    Despite Lehman's request, plaintiff *increased* his campus access and spent three to four weeks living on campus in January and February 2019, whereas he had only visited campus a handful of times during each prior year.  0007a-0008a at 25:4-27:4, 28:10-15 (M. Ralston 7/1/2021).

264.    The Hill School took no adverse employment action against plaintiff in response to the December 26, 2018 letter.  0054a at 212:2-213:6 (M. Ralston 7/1/2021).

265.    Plaintiff received a 3% raise in the amount of $2,383.02 effective January 1, 2019.  1452a-1453a (12/22/2016 letter).

266.    Plaintiff's base salary as of January 1, 2019 was then $81,817.14 (plus bonuses). 1452a-1453a (12/22/2016 letter).

**8.   The Hill School Begins an Investigation After the December 26, 2018 Letter**

267.    On January 9, 2019, Rees wrote to Garabedian, with a carbon copy to Gomez and Smith, and confirmed the School had received the December 26, 2018 letter.  1041a-1042a (January 9, 2019 email from Rees (D-34), attached as Exhibit "U"); 1410a at 138:13-139:11 (Rees).

268.     Rees also wrote:  "The School has begun an investigation of the facts alleged in this matter."  1041a (1/9/2019 email).

269.     Rees requested that Poulos submit to an interview in Boston by Gomez and Smith who he identified as The Hill School's "outside counsel."  1041a (1/9/2019 email); 1410a at 139:19-140:3 (Rees).

270.     Rees identified Smith and Gomez as The Hill School's outside counsel every time Rees communicated with Garabedian about Smith and Gomez.  1432a at 228:6-10 (Rees).

**9.  Second (Unanswered) Request by Garabedian for Position about Mediation**

271.     On January 28, 2019, Garabedian wrote Rees again reiterating the position communicated during the December 21, 2018 telephone discussion and again asked for The Hill School's position on mediation:

> Pursuant to our telephone conversation on December 21, 2018, please advise me as to your client's position with regard to my recommendation that the parties agree to attend mediation if Mr. Poulos' claim is found credible following an investigation.

> As I informed you during our telephone conversation on December 21, 2018, Mr. Poulos will not agree to confidentiality as a condition to any settlement of his sexual abuse claim.

> Please advise me as to your client's position with regard to this matter.

1043a (January 28, 2019 letter (D-35), attached as Exhibit "V"); 1411a at 144:9-23 (Rees); *see also* 1705a at 107:5-109:17 (Garabedian); 0655a at 152:9-20 (Poulos 11/19/2020) (Poulos confirmed he did not want confidentiality "Because I'm not the only person this must have happened to." and intended to convey that to The Hill School); 0973a-0975a at 125:11-127:7 (Poulos 5/27/2021); 0657a at 154:5-19 (Poulos 11/19/2020) (Poulos confirmed he never "had any intention of going to Boston to meet with either Ms. Smith or Ms. Gomez or anyone as part of investigating the claim").

**10. The Hill School Would Not Agree to Mediation**

272.     Rees wrote Garabedian on January 30, 2019 and February 21, 2019 but did not

answer Garabedian about Garabedian's recommendation to attend mediation.  1044a-1045a

(January 30, 2019 email (D-36), attached as Exhibit "W"); 1046a (February 21, 2019 letter (D-

37), attached as Exhibit "X"); 1413a-1414a at 152:7-153:13 (Rees).

273.     Rees confirmed he never answered Garabedian about mediation, just repeated the

request for Poulos to be interviewed by the lawyers for The Hill School:

> Q.     Mr. Garabedian wrote, Pursuant to our telephone conversation on
> December 21st, 2018, please advise me as to your client's position with regard to my
> recommendation that the parties agree to attend mediation if Mr. Poulos's claim is found
> credible following an investigation.
>
> Did you advise Mr. Garabedian of The Hill School's position regarding
> mediation?
>
> A.· ·   No.
> . . . .
> Q.· ·   Did The Hill School agree to mediation with Mr. Poulos?
>
> A.      No.
> . . . .
> Q.      Did you ever tell Mr. Garabedian that The Hill School would not
> participate in mediation with Mr. Poulos?
>
> A.      No.
> . . . .
> Q.· ·   Well, you proposed that Ms. Smith and Ms. Gomez, the outside lawyers
> for The Hill School, interview Mr. Poulos; isn't that right?
>
> A.· ·   Yes.
>
> Q.· ·   And Mr. Garabedian proposed that he recommended the parties agree to
> mediation if Mr. Poulos's claim is found credible following an investigation, right?
>
> A.· ·   Yes.· The letter speaks for itself.
> . . . .
> Q.      Did you ever tell Mr. Garabedian that the school performed an
> investigation and found Mr. Poulos's claim to be credible?

A.· ·No.

1412a-1413a at 145:2-10, 146:9-11, 146:23-147:1, 147:21-148:4, 149:7-10, *see also* 1431a-1432 at 223:5-226:8 (confirming the sequence of communications and that Garabedian communicated his position about the precondition of agreement to mediation first verbally and then in writing) (Rees).

274.    The Hill School did not agree to mediation with Poulos.  1412a-1413a at 145:2-10, 146:9-11, 146:23-147:1, 147:21-148:4, 149:7-10.

275.    The Hill School has never participated in mediation or some other form of resolution process for a claim barred by the statute of limitations.   1193a-1194a at 147:19-148:3 (Lehman).

276.    Rees acknowledged there were other elements to an investigation by The Hill School into Poulos' claims other than the lawyers for The Hill School interviewing Poulos but that those other elements were not completed:

> Q.· ·    Well, were there other elements other than Ms. Smith and Ms. Gomez
> meeting with Mr. Poulos?
> . . . .
> THE WITNESS:· Yes.
> . . . .
> Q.· ·    Did the school complete the other elements of its investigation into Mr.
> Poulos's claim, other than an interview by Ms. Smith and Ms. Gomez?
>
> A.· ·    No.

1414a at 153:21-24, 154:9-12 (Rees).

277.    On March 26, 2019, Rees wrote Garabedian that The Hill School had "concluded" that Poulos did not want to pursue the matter.  1216a (March 26, 2019 letter (D-38), attached as Exhibit "Z").

278.     The "restrictions" placed on plaintiff's campus access were removed once The

Hill School "suspended" its investigation.  1200a at 154:15-23 (Lehman).

**11. As of April 3, 2019, Poulos Was Waiting for Statute of Limitations to Change**

279.     Poulos and Garabedian had a telephone discussion on April 3, 2019, which was

memorialized with handwritten notes.  1021a (April 3, 2019 notes (Poulos-4), attached as Exhibit

"M"); 1223a at 15:8-9, 1226a at 27:6-15, 1229a-1230a at 41:21-42:2 (Gaul).

280.     Consistent with the notes, Poulos confirmed Garabedian told him that The Hill

School was giving him the runaround.  0856a at 8:3-14 (Poulos 5/27/2021).

281.     During the same telephone discussion, Garabedian suggested that they wait to see

if the statute of limitations in Pennsylvania changes.  0897a-0898a at 49:19-50:9 (Poulos

5/27/2021).

282.     Poulos explained that New York and other surrounding states had changed the

statute of limitations to allow for victims to assert claims and "grandfathered in" and he was

waiting to see if the same occurred in Pennsylvania.  0898a at 50:1-9 (Poulos 5/27/2021); *see

also* 1270a (January 29, 2019 email re New York statute of limitations, attached as Exhibit

"HH").

283.     Garabedian suggested they give it another year, and Poulos agreed.  0901a at

53:5-14 (Poulos 5/27/2021).

284.     As of April 2019, there was nothing more that could be done as it related to the

claims against The Hill School or Ralston.  0901a at 53:15-19 (Poulos 5/27/2021).

285.     However, Garabedian continued to build Poulos' case by obtaining medical

records (through newly requested releases) and running a criminal background check on Poulos

in mid-April and May 2019.  1739a-1750a (April 15, 2019 criminal background check (Gaul-5),

attached as Exhibit "VVV"); 1752a-1758a (compilation of April 2019 searches, attached as Exhibit "XXX"); 1759a-1761a (compilation of 2019 releases, attached as Exhibit "YYY").

286.    Garabedian spoke to Poulos about the medical records and results of the criminal history search on May 10, 2019.  1751a (May 10, 2019 notes, attached as Exhibit "WWW"); 1232a-1235a at 53:7-23, 54:17-55:17, 57:18-64:22 (Gaul).

### F.  Plaintiff's Employment Was Terminated Because of This Lawsuit

### 1.  Plaintiff Was Warned a Lawsuit Would Adversely Affect His Employment

287.    On February 11, 2019, plaintiff, his counsel in this action, Lane Jubb, Jr., Geoffrey Richards (chair of The Hill School's Legal Committee) and Thomas Rees (The Hill School's outside counsel) participated in a telephone discussion about plaintiff's plan to commence this lawsuit.  1419a at 174:22-176:7 (Rees).

288.    Richards told plaintiff and plaintiff's counsel that the lawsuit was a "bad idea" because it would be "detrimental" to plaintiff, The Hill School and Poulos:

> Q.    Did Mr. Richards explain why the school's position was that a lawsuit by Mr. Ralston against Poulos, Garabedian, and Garabedian's law firm was a bad idea?
>
> A.    Yes.
>
> Q.    What was the explanation or reason provided by Mr. Richards?
>
> A.· ·  Mr. Richards stated that at the present time, namely February 11th, the allegations against Mr. Ralston were not widely known, but that the allegations, if a lawsuit were filed, would become widely known and publicly known, and that that would be detrimental to Mr. Ralston, that it would be detrimental to the school, and that was it.· That's all I can recall.
>
> Q.· ·  What about detrimental to Mr. Poulos?
>
> A.· ·  Yes.
>
> Q.· ·  Did Mr. Richards express that a lawsuit by Mr. Ralston against Mr. Poulos, Mr. Garabedian, and Mr. Garabedian's law firm for defamation arising from Mr. Poulos's claims of sexual abuse by Mr. Ralston would, in addition to being detrimental to

46

Mr. Ralston and The Hill School, also be detrimental to Mr. Poulos, or was there no concern about Mr. Poulos during the February 11th, 2019 telephone discussion?

A.· ·   There was concern about Mr. Poulos and about the situation where an employee, and specifically an employee in the alumni development area of the school, was suing an alumnus of the school and suing the alumnus of the school for allegations that involve very personal and private issues, if you will.

1420a at 177:8-178:15.

289.   Plaintiff was informed that a lawsuit would result in adverse employment action against plaintiff by The Hill School:

Q.   What did Mr. Richards say regarding a lawsuit by Mr. Ralston against Mr. Poulos, Mr. Garabedian, Mr. Garabedian's law firm, having an adverse impact on Mr. Ralston's employment with The Hill School?

A.   To the best of my recollection, Mr. Richards told Mr. Jubb and Mr. Ralston that filing a lawsuit of this sort against an alumnus of the school would result in -- might result in Mr. Ralston's being asked to take a leave of absence from employment at the school.

1420a at 179:15-25 (Rees).

290.   Rees advised plaintiff and Mr. Jubb that, based on his 43 years of experience practicing law, his opinion was that a defamation claim was unlikely to be successful for a variety of reasons, including that the communications were likely privileged communications. 1420a-1421a at 180:12-181:2 (Rees).

291.   Either Richards or Rees, or both of them, also communicated that the litigation would be stressful for plaintiff, distract and divert his attention from his work and that the idea of suing an alumnus was wrong:

Q.   Is there anything else that you communicated to Mr. Jubb and/or Mr. Ralston during the February 11th, 2019 telephone discussion?

A.   Either I or Mr. Richards or both of us communicated that litigation took time, litigation was stressful, litigation distracted and diverted non-litigators from their job.· That was part of our advice for why this was a bad idea.

Q.      Meaning that a lawsuit by Mr. Ralston would take his time and be stressful for Mr. Ralston and distract Mr. Ralston from fulfilling the requirements of his job as a remote capital giving officer?

A.· ·   Yes.

Q.· ·   Anything else that either you or Mr. Richards communicated to Mr. Ralston and/or Mr. Jubb during the February 11th, 2019 telephone discussion?

A.· ·Yes.· We did speak, as I said earlier, and·I may be repeating myself, that the idea of suing an alumnus was wrong and that it was an action that should not take place, because it was a hostile act directed to an alumnus of the school by an employee of the school.

1421a at 181:11-182:9 (Rees).

292.    Plaintiff also had the impression that Richards did not believe the allegations by

Poulos.  1609a-1610a at 151:3-10, 153:20-154:5 (M. Ralston 9/20/2021).

### 2.   Plaintiff Acknowledged The Hill School Was Letting The Letters Go Away

293.    Plaintiff acknowledged The Hill School was taking no action against him about

Poulos' accusations and "was just letting the letters go away":

·Q.      I'll break it up into two.· You had the·impression that the school was just going to --- or was just letting the letters go away?
· · · ·
That's what you --- those are words you used, to just let it go away.

A.      Yeah.· Yes.

Q.      You didn't think the school should just let the letters go away. Correct?

A.      Of course, I don't.
· · · ·
Q.      Right.· You wanted the school to take some action to clear your name as well as its own name, right, rather than to just let the letters go away.

A.      Yes.

Q.      And when the school didn't do that, you then decided to commence a lawsuit.· Is that right?

. . . .

   [PLAINTIFF]:

   Yes.

. . . .

   Q. So, because the school was just letting the letters go away that wasn't sufficient for you.· So, you decided to take legal action.· Is that right?

. . . .

   [PLAINTIFF]:

   Yes.

1596a-1597a at 100:10-101:5, 101:13-102:22 (M. Ralston 9/20/2021).

  294. Plaintiff confirmed he came to to the conclusion that The Hill School was not going to take action over the letters:

   Q. And so, at some point after you said February 2019 telephone call with Mr. Richards, Mr. Rees, and Mr. Jubb, you came to the conclusion that the school was not going to take action and then, you commenced your lawsuit. Is that right?

   A. Yes.

1608a at 149:8-14 (M. Ralston 9/20/2021).

  295. Prior to the filing of the lawsuit, no action had been taken against plaintiff's employment as a result of the accusations by Poulos.  1577a at 23:1-13 (M. Ralston 9/20/2021).

  296. The April 11, 2018 and December 26, 2018 letters are not in plaintiff's personnel file.  1423a at 192:2-4 (Rees).

  297. There is no reference to the allegations by Poulos in plaintiff's personnel file.  1423a at 192:5-7 (Rees).

  **3. Plaintiff Was Placed on Administrative Leave Because of this Lawsuit**

  298. Plaintiff commenced this action on April 10, 2019.  *See* Doc. 1.

299.    The Hill School learned about this lawsuit from a reporter on April 18, 2019 through an email sent in the evening on April 17, 2019.  1424a at 193:16-194:17 (Rees); 1447a (April 17, 2019 email from Philadelphia Magazine, attached as Exhibit "ZZ").

300.    As of April 18, 2019, there had not been adverse employment action against plaintiff.  1424a at 194:18-195:5 (Rees).

301.    The Hill School immediately placed plaintiff on administrative leave with pay effective April 18, 2019 in response to plaintiff filing this lawsuit.  1424a at 195:6-196:7 (Rees); 1442a (April 18, 2019 email from Rees re administrative leave (D-26), attached as Exhibit "WW"); 1443a-1444a (April 29, 2019 letter with memorandum regarding administrative leave, attached as Exhibit "XX").

302.    Plaintiff was placed on administrative leave because

He sued an alumnus who had alleged sexual assault, and he was in, he was in a position in our institutional giving office where he was in constant contact with alumni, and we felt that that would be distracting and disruptive in his role.

1194a-1195a at 148:18-149:8 (Lehman); *see also* 0046a at 180:5-18 (M. Ralston 7/1/2021).

303.    Plaintiff would not have been placed on administrative leave if he had not sued an alumnus.  1195a at 149:9-13 (Lehman).

304.    Lehman sent an email to faculty reporting about this lawsuit, though he did not identify plaintiff by name.  1217a (April 2019 email draft by Lehman, attached as Exhibit "AA"); 1074a-1075a at 28:21-29:5 (Lehman).

305.    Lehman told the faculty that "The Hill placed the employee on paid leave immediately upon learning of his initiation of a lawsuit against an alumnus, and to allow the School to consider appropriate next steps in light of this development."  1217a (4/2019 email draft).

306.    While Lehman identified Garabedian, he did not identify Poulos "consistent with The Hill's policy to preserve the confidentiality of alleged victims of sexual abuse[.]"  1217a (4/2019 email draft).

307.    Plaintiff then told his sons about the letters and allegations by Poulos.  0044a-0045a at 173:15-174:10 (M. Ralston 7/1/2021).

### 4. Plaintiff Rejected Severance Because of Confidentiality and Non-Disparagement

308.    In August 2019, Lehman and and the head of human resources at The Hill School called plaintiff regarding amicably separating, even though plaintiff did not believe The Hill School credited the allegations:

> ·Q.    Did Mr. Lehman say anything during the August 2019 telephone communication that, you know, words or substance or that gave you the impression that he believed Mr. Poulos's accusations?
>
> A.    No.
>
> Q.    So, you were disappointed because it was your·impression that the school didn't credit Mr. Poulos's allegations but was still moving to amicably separate or amicably end your employment. Is that right?
>
> A.    Yes.

1595a at 95:10-20 (M. Ralston 9/20/2021).

309.    In August 2019, The Hill School offered plaintiff a severance agreement to negotiate with The Hill School concerning plaintiff's separation from employment.  1425a-1426a at 199:19-201:9 (Rees).

310.    The Hill School wanted to end plaintiff's employment because of the continuation of this lawsuit.  1425a-1426a at 200:20-201:9 (Rees).

311.     The Hill School initially offered plaintiff three months of salary and benefits as severance.  1426a at 202:3-203:13 (Rees).

312.     In the August 27, 2019 letter rejecting the three months severance, plaintiff's counsel acknowledged The Hill School's "policy decision to place [plaintiff] on paid leave and, ultimately, force his departure, is in response to his decision to file a lawsuit against Kurtis Poulos" and The Hill School "kept [plaintiff] on the road generating gifts even after" the letters. 1445a-1446a (August 27, 2019 letter from James Beasley, Jr., attached as Exhibit "YY").

313.     On September 23, 2019, The Hill School increased its offer to payment of salary and benefits through March 31, 2020.  1426a-1427a at 204:1-205:4 (Rees); 1450a-1451a (September 23, 2019 letter from Rees, attached as Exhibit "CCC").

314.     Rees further explained that plaintiff's lawsuit against an alumnus and naming an alleged victim of sexual abuse as incompatible with his duties as capital giving officer:

>        Mr. Ralston sued a Hill alumnus for alleging that Mr. Ralston sexually assaulted him while Mr. Ralston was a teacher and coach and the alumnus attended Hill. This alumnus had originally alleged in a discreet letter to the Headmaster that he was a victim of sexual abuse. Mr. Ralston's decision to name the alleged victim of sexual abuse in his suit is a great disappointment, particularly where Mr. Ralston himself brought suit under a pseudonym. Both these actions by Mr. Ralston towards a Hill alumnus are incompatible with the duties of a Capital Giving Officer.

1450a-1451a (9/23/2019 letter); *see also* 0051a at 199:15-200:9 (plaintiff confirming he was not concerned about sharing Poulos' identity and health information while obscuring his own) (M. Ralston 7/1/2021); 1600a at 116:2-8 (same) (M. Ralston 9/20/2021).

315.     Plaintiff had until October 14, 2019 to accept the Hill School's "final" offer. 1450a-1451a (9/23/2019 letter).

316.    On October 14, 2019, plaintiff accepted the financial terms but rejected the terms requiring confidentiality of the settlement and non-disparagement of The Hill School.  1426a-1427a at 204:1-205:4 (Rees); 1449a (October 14, 2019 letter from James Beasley, Jr., attached as Exhibit "BBB").

317.    No severance agreement was reached because The Hill School required confidentiality and non-disparagement.  1426a-1427a at 204:1-205:4 (Rees); 1448a (October 18, 2019 email from Rees, attached as Exhibit "AAA").

### 5.  Plaintiff's Employment Was Terminated Because of this Lawsuit

318.    Plaintiff's employment was terminated effective October 14, 2019.  1425a at 198:7-15 (Rees); 0006a at 21:23-25, 0012a at 43:7-8 (M. Ralston 7/1/2021).

319.    Plaintiff's employment with The Hill School was terminated because of this lawsuit:

> I said [plaintiff] was terminated because he sued an alumnus, and in his capacity as a capital giving officer he worked with alumni and we felt it would be disruptive and distracting in his role, especially since he had sued and named a victim of alleged sexual assault.

1196a at 150:8-15 (Lehman).

### G.  Plaintiff's Communities

#### 1.  Ohio Community

320.    Plaintiff lives in a condominium complex with numerous units.  0067a at 265:2-17 (M. Ralston 7/1/2021).

321.    Plaintiff socializes with his neighbors in Ohio.  0067a at 265:16-17 (M. Ralston 7/1/2021).

322.    None of plaintiff's neighbors in Ohio know about the allegations by Poulos.  0067a at 265:18-20 (M. Ralston 7/1/2021).

323.     Plaintiff considers his Ohio community to be limited to plaintiff's wife, a neighbor, plaintiff's wife's brother and his wife (plaintiff's sister-in-law), and a childhood friend. 0067a-0068a at 265:25-266:9 (M. Ralston 7/1/2021).

324.     Except for his neighbor, the people in plaintiff's Ohio community know about the allegations by Poulos.  0068a at 266:10-267:7 (M. Ralston 7/1/2021).

325.     Plaintiff's wife told her brother and his wife and plaintiff's childhood friend about the allegations by Poulos.  0068a at 267:8-16 (M. Ralston 7/1/2021).

326.     Plaintiff's brother-in-law, sister-in-law and childhood friend all have high opinions of plaintiff that have not changed since learning about the allegations by Poulos.  0068a at 267:18-269:24 (M. Ralston 7/1/2021).

327.     Plaintiff's brother-in-law, sister-in-law and childhood friend have not stopped associating with plaintiff.  0068a at 267:18-269:24 (M. Ralston 7/1/2021).

## 2.  Michigan Community

328.     Plaintiff considers his Michigan community to include his wife and a variety of friends.  0068a-0069a at 269:25-270:14 (M. Ralston 7/1/2021).

329.     Everyone in plaintiff's Michigan community knows about the allegations by Poulos.  0069a at 270:15-24 (M. Ralston 7/1/2021).

330.     Plaintiff told the individuals in his Michigan community about the allegations by Poulos after he was no longer working.  0069a at 270:15-24 (M. Ralston 7/1/2021).

331.     All individuals in plaintiff's Michigan community have high opinions of plaintiff that have not changed since learning about the allegations by Poulos.  0069a at 271:3-14 (M. Ralston 7/1/2021).

332.     No one in plaintiff's Michigan community has stopped associating with plaintiff. 0069a at 271:15-17 (M. Ralston 7/1/2021).

333.     Plaintiff also told his other brother, John Ralston, about the allegations by Poulos. 0069a at 271:18-272:5.

334.     John Ralston's high opinion of plaintiff has not changed and he has not stopped associating with plaintiff.  0069a at 272:6-23.

### 3. Alumni / The Hill School Community

335.     From 1992 to 2009, plaintiff was employed by The Hill School in Pottstown, PA as a faculty member with the Mathematics Department.  0090a (Ralston Resume); 0005a at 16:13-15 (M. Ralston 7/1/2021).

336.     From 1995 to 2001, plaintiff served as the Academic Dean.  0090a (Ralston Resume).

337.     Plaintiff was the head of the Sixth Form (senior) dormitory from 1996 to 2000. 0090a (Ralston Resume).

338.     Plaintiff was the Head Winter Track coach from 1994 to 1998.  0090a (Ralston Resume).

339.     Plaintiff held numerous other positions with The Hill School including Mathematic Department Chair (2001 to 2004), Adviser to Sixth Form class (1994 to 1995, 2002 to 2009), Head of Third / Fourth (freshman / sophomore) dorm (2004 to 2007), Head Boys' Cross Country Coach (1999 to 2002), Junior Varsity Lacrosse coach (1999 to 2008), Chair of Faculty Work Load Task Force (2003 to 2005), Dorm parent for 9th to 12th grade students for 14 years and Director of Financial Aid (1994 to 1995).  0090a (Ralston Resume).

340.     Plaintiff accepted a position as Headmaster of the Leelanau School in Michigan where he lived and worked from 2009 to 2016.  0091a (Matthew Ralston Resume (D-31), attached as Exhibit "B"); 0003a at 7:5-13 (M. Ralston 7/1/2021).

341.     Plaintiff returned to The Hill School in July 2016 as a remote or satellite Capital Giving Officer.  0090a (Ralston Resume); 1078a at 32:5-14 (Lehman); *see also* 1675a (April 11, 2016 email welcoming plaintiff back (D-22), attached as Exhibit "SSS").

342.     Plaintiff was an at will employee and did not have an employment contract. 1115a at 69:9-12, 1117a at 71:2-9 (Lehman).

343.     From 2016 to 2019, plaintiff worked from his home in Ohio as a satellite or remote capital giving officer with The Hill School.  0006a-0007a at 19:19-20:4, 23:19 (M. Ralston 7/1/2021); 1582a at 44:7-22, 1584a-1585a at 53:2-54:10, 1586a at 58:24-61:15 (M. Ralston 9/20/2021); 1673a-1674a (April 6, 2016 offer letter (D-21), attached as Exhibit "RRR"); 1676a (July 19, 2017 letter re new salary (D-23), attached as Exhibit "TTT"); 1458a (7/18/2018 letter); 1078a at 32:5-14 (Lehman); 1399a at 95:20-96:14 (Rees).

344.     Plaintiff was assigned to the Midwest region.  0006a at 21:5-19 (M. Ralston 7/1/2021).

345.     Plaintiff considers most people who are alumni of The Hill School part of his alumni / The Hill School community.  0071a at 278:16-279:7 (M. Ralston 7/1/2021).

346.     According to plaintiff, "The independent school community is a small community and Plaintiff has no way of knowing who had heard rumors of Defendant's false allegations." 1645a (plaintiff response to interrogatories by Garabedian, attached as Exhibit "JJJ").

347.     Plaintiff only associated with most of his alumni community, The Hill School board of trustees and employees of The Hill School because of his employment as a capital

giving officer.  0071a-0074a at 281:5-13, 284:15-21, 286:1-21, 288:11-21, 289:16-25, 291:6-21
(M. Ralston 7/1/2021).

348.    Plaintiff is not invited to participate in alumni events because he is not an
alumnus.  1203a-1204a at 157:4-158:12 (Lehman).

349.    Lehman does not think any differently of plaintiff as a result of the letters or know
of anyone who does.  1201a at 155:4-10 (Lehman).

350.    Lehman did not have an opinion one way or the other after reading the letters.
1074a at 28:14-20 (Lehman).

351.    Lehman reviewed the December 26, 2018 letter and did not form an opinion about
the truth of the allegations.  1047a at 28:4-17 (Lehman).

352.    Lehman confirmed that he does not think any differently of plaintiff as a result of
either the April 11, 2018 letter or December 26, 2018 letter.  1201a at 155:4-10 (Lehman).

353.    Lehman never had a personal relationship with plaintiff or associated with
plaintiff.  1202a-1203a at 156:6-157:3 (Lehman).

354.    Plaintiff did not identify anyone who stopped associating with plaintiff or whose
opinion of plaintiff changed due to the allegations by Poulos.  1616a-1628a at 180:16-228:7,
1637a at 264:1-265:7, 1613a-1614a at 269:19-270:18 (asking about every single person on the
Board or mentioned by plaintiff in disclosures or discovery) (M. Ralston 9/20/2021).

355.    Plaintiff did not identify any person who believed the allegations by Poulos.  *See,
e.g.*, 1616a-1628a at 180:16-228:7, 1637a at 264:1-265:7, 1613a-1614a at 269:19-270:18 (asking
about every single person on the Board or mentioned by plaintiff in disclosures or discovery) (M.
Ralston 9/20/2021).

356.    There is no evidence that anyone's opinion of plaintiff changed due to the April 11, 2018 and December 26, 2018 letters and/or allegations by Poulos.

357.    There is no evidence that anyone stopped associating with plaintiff due to the April 11, 2018 and December 26, 2018 letters and/or allegations by Poulos.

358.    There is no evidence that anyone who learned of Poulos' accusations through the April 11, 2018 or December 26, 2018 letters believed Poulos' accusations.

### 4.    Other People Plaintiff Has Told About Poulos' Allegations

359.    Plaintiff authorized his attorney to tell Zachary Brusko, a former student and colleague of plaintiff and former classmate of Poulos, about the allegations by Poulos.  0066a at 260:12-261:11 (M. Ralston 7/1/2021).

360.    Brusko's high opinion of plaintiff has not changed and Brusko has not stopped associating with plaintiff.  0066a-0067a at 261:24-262:10 (M. Ralston 7/1/2021).

361.    Plaintiff authorized his attorney to tell James Brobyn, a former student of plaintiff, about the allegations by Poulos.  0067a at 262:11-13, 263:5-23 (M. Ralston 7/1/2021).

362.    Brobyn's high opinion of plaintiff has not changed and Brobyn has not stopped associating with plaintiff.  0067a at 262:11-265:1 (M. Ralston 7/1/2021); *see also* 1637a at 264:1-265:7 (M. Ralston 9/20/2021).

363.    It is unclear whether plaintiff told David Dougherty, the Headmaster when Poulos was a student at The Hill School, about the allegations by Poulos or whether Dougherty learned about the allegations from Rees in connection with Rees' investigation.  *See* 0069a-0070a at 273:19-274:8 (M. Ralston 7/1/2021); 1428a-1429a at 211-214, 1435a at 237:11-238:4 (Rees).

364.    Plaintiff asked Dougherty if he wanted to get together when plaintiff went to visit his ailing mother in March 2019, but Dougherty declined because he and his wife were in their summer home in Ireland.  0074a at 290:22-291:21 (M. Ralston 7/1/2021).

365.    On March 16, 2019, plaintiff emailed Rees and asked permission to tell Dougherty about Poulos' allegations.  1654a (March 16, 2019 email from plaintiff re telling Dougherty, attached as Exhibit "MMM").

366.    Dougherty declined to speak with plaintiff about "any legal proceedings" involving The Hill School.  0069a-0070a at 273:19-274:8 (M. Ralston 7/1/2021).

367.    Plaintiff has not contacted Dougherty since he told plaintiff he could not speak to plaintiff about any legal issues related to The Hill School.  0074a-0075a at 292:10-19, 294:8-16 (M. Ralston 7/1/2021).

**H.    Plaintiff Left Teaching in 2009**

368.    Plaintiff voluntarily left teaching in 2009 when he left The Hill School and became the Headmaster at the Leelanau School.  1614a at 172:23-173:2 (M. Ralston 9/20/2021).

369.    Plaintiff does not plan to work and is not applying for employment.  1613a at 167:12-13, 168:24-25 (M. Ralston 9/20/2021).

370.    Plaintiff identified no reason related to the accusations by Poulos why he cannot obtain employment.  1613a-1614a at 167:15-23, 171:25-172:5 (M. Ralston 9/20/2021).

371.    Plaintiff acknowledged that his own lawsuit (this lawsuit) has caused him emotional distress.  1614a at 171:4-24 (M. Ralston 9/20/2021).

372.    Plaintiff cannot distinguish between the alleged emotional distress caused by this lawsuit as compared to the letters.  1614a at 171:4-24 (M. Ralston 9/20/2021).

373.    Poulos' academic records from The Hill School were only provided in response to subpoenas issued in this action.  1791a- (subpoenas to The Hill School, attached hereto as Exhibit "AAAA").

374.    Poulos testified over several days about every instance of sexual abuse, reluctantly provided explicit detail and answered questions challenging his testimony and/or credibility of his memory.  *See, e.g.,* 0720a-0732a at 217-229 (Poulos 11/19/2020) (overview and first instance of sexual abuse); 0426a-0490a at 372:22-436:22 (Poulos 11/20/2020) (second and subsequent instances of sexual abuse); 0743a-0756a at 449-462, 0762a-0773a at 468:2-479:10 (Poulos 11/24/2020).

Respectfully submitted,

Jeffrey B. McCarron
Candidus K. Dougherty
SWARTZ CAMPBELL LLC
One Liberty Place, 38th Floor
1650 Market Street
Philadelphia, PA  19103
Phone (215) 299-4296
Fax (215) 299-4301
cdougherty@swartzcampbell.com

Dated: November 15, 2021