**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MATTHEW RALSTON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| MITCHELL GARABEDIAN, ESQUIRE, et al, | : | |
| | : | NO. 2:19-cv-01539 |
| Defendants. | : | |

**MEORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**BY DEFENDANTS, MITCHELL GARABEDIAN, ESQUIRE AND MITCHELL**
**GARABEDIAN, ESQUIRE D/B/A LAW OFFICES OF MITCHELL GARABEDIAN**

**Table of Contents**

I.     Factual Background ...........................................................................................................1

II.    Arguments of Law ............................................................................................................3

    A.   Standard ...............................................................................................................3

    B.   Choice of Law .....................................................................................................5

    C.   Plaintiff's Claim Is Barred by Judicial Privilege ...............................................8

    D.   No Abuse of a Condition Privilege ...................................................................14

    E.   No Publication by Garabedian in Ohio.............................................................20

    F.   No Special Harm from Publication....................................................................21

    G.   There Was No Malice ........................................................................................23

III.   Conclusion .....................................................................................................................25

## Table of Authorities

*A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Building & Construction Trades Council*, 651 N.E.2d 1283 (Ohio 1995)................................................................................6

*Aetna Electroplating Co. v. Jenkins,* 335 Pa. Super. 283 (1984)..........................................8, 15-17

*Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832 (Ohio 2012) ...........................................6-7

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) .......... 3-4

*Austin J. Richards, Inc. v. McClafferty,* 538 A.2d 11 (Pa. Super. 1988) ................................. 15-16

*Barto v. Felix,* 250 Pa. Super. 262 (1977) ...........................................................................9

*Binder v. Triangle Publications, Inc.*, 442 Pa. 319 (1971) ............................................................9

*Bochetto v. Gibson*, 580 Pa. 245 (2004) ...........................................................................6, 8-9

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ..........................4

*Chicarella v. Passant*, 343 Pa. Super. 330 (Pa. Super. 1985).................................................. 14-15

*Cloverleaf Dev., Inc. v. Horizon Financial, F.A.,* 347 Pa. Super. 75 (1983) .................................17

*Commonwealth v. Portnoy,* 566 A.2d 336 (Pa. Commw. 1989), *aff'd,* 531 Pa. 320 (1992) .........17

*Cost v. Cost,* 450 Pa. Super. 685 (1996) ...........................................................................16

*Curbeam v. PrimeCare Medical, Inc.,* 2013 WL 5942345 (E.D. Pa. Nov. 6, 2013).......................4

*Elia v. Erie Ins. Exchange*, 430 Pa. Super. 384 (Pa. Super. 1993) ...........................................6, 14

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)....................................................................... 5-6

*Fitzpatrick v. Milky Way Prods., Inc.,* 537 F. Supp. 165 (E.D. Pa. 1982)................................5, 20

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) .....................23

*Greenberg v. Aetna Ins. Co.*, 427 Pa. 511 (1967).........................................................................8

*Gregg v. Lindsay,* 437 Pa. Super. 206 (1994).............................................................................16

*Guy v. Liederbach,* 459 A.2d 744 (Pa. 1983) ...........................................................................16

*Hart v. O'Malley*, 781 A.2d 1211 (Pa. Super. 2001)..................................................................18

*Hatbob v. Brown,* 575 A.2d 607 (Pa. Super. 1990) ...................................................................16

*Harvey v. Pincus,* 549 F. Supp. 332 (E.D. Pa. 1982)..................................................................17

*Heffernan v. Hunter,* 189 F.3d 405 (3d Cir. 1999) ........................................................12, 14, 17, 20

*Hong v. Pelagatti,* 765 A.2d 1117 (Pa. Super. 2000) ....................................................................19

*Int'l Portfolio, Inc. v. Purplefish, LLC,* 2013 WL 11250216 (Pa. Super. Dec. 24, 2013) .............9

*Jackson v. Columbus,* 883 N.E.2d 1060 (Ohio 2008)......................................................................7

*Keystone Freight Corp. v. Stricker,* 31 A.3d 967 (Pa. Super. 2011) .............................................18

*Klaxon v. Stentor Elec. Mfg Co.,* 313 U.S. 467 (1941)....................................................................5

*Landell v. Lybrand,* 264 Pa. 406 (1919) .......................................................................................16

*Lorain Journal Co. v. Milkovich,* 474 U.S. 953, 106 S.Ct. 322, 88 L.Ed.2d 305 (1985) .............24

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ................4

*Mansmann v. Tuman,* 970 F. Supp. 389 (E.D. Pa. 1997) ................................................................9

*Meiksin v. Howard Hanna Co., Inc.,* 590 A.2d 1303 (Pa. Super. 1991) .......................................18

*Mentzer & Rhey, Inc. v. Ferrari,* 532 A.2d 484 (Pa. Super. 1987)................................................15

*Michaels v. Berliner,* 119 Ohio App.3d 82, 694 N.E.2d 519 (Ohio Ct. App. 1997) .....................6

*Milliner v. Enck,* 709 A.2d 417 (Pa. Super. 1998).....................................................................9, 11

*Mzamane v. Winfrey,* 693 F. Supp. 2d 442 (E.D. Pa. 2010) ..................................................5, 7, 20

*New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ................23

*Nix v. Temple University,* 596 A.2d 1132 (Pa. 1991) ....................................................................17

*Orsatti v. N.J. State Police,* 71 F.3d 480 (3d Cir.1995)..................................................................3

*Pawlowski v. Smorto,* 403 Pa. Super. 71 (1991)........................................................................8-9

*Pedro v. City Fitness, LLC,* No. 15-04964, 2018 U.S. Dist. LEXIS 54164 (E.D. Pa. 2018) ........17

*Perelman v. Perelman,* 125 A.3d 1259 (Pa. Super. 2015)............................................................18

*Peters v. Hahn,* 2013 WL 11253843 (Pa. Super. Oct. 24, 2013).................................................11

*Pollock v. Rashid,* 690 N.E.2d 903 (Ohio Ct. App. 1996)..............................................................7

*Post v. Mendel,* 510 Pa. 213, 507 A.2d 351 (Pa. 1986) ........................................................6, 8-11

*P.J.A. v. H.C.N.,* 156 A.3d 284 (Pa. Super. 2017) ........................................................................18

*Richmond v. McHale*, 2012 PA Super. 1, 35 A.3d 779 (2012) ......................................9

*Rutherford v. Presbyterian-University Hospital,* 612 A.2d 500 (Pa. Super. 1992).......................17

*Savoy v. Univ. Akron*, 15 N.E.3d 430 (Ohio Ct. App. 2014)......................................6, 9

*Schanne v. Addis*, 632 Pa. 545 (2015) ................................................ 6, 10-12

*Simmons v. Climaco*, 30 Ohio App.3d 225, 507 N.E.2d 465 (Ohio Ct. App. 1986) ..................... 6

*Smith v. Griffiths*, 476 A.2d 22 (Pa. Super. 1984) ........................................ 11, 15-16

*Smith v. Pocono Country Place Property Owners Association, Inc.,* 686 F. Supp. 1053 (M.D.Pa. 1987) ................................................................23

*Sriberg v. Raymond,* 345 N.E. 2d 882 (Mass. 1976) ......................................6

*Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198 (Pa. 1979) ...................................17

*Wayt v. DHSC, L.L.C.*, 122 N.E.3d 92 (Ohio 2018) ......................................7

*Werner v. Plater-Zybertk*, 799 A.2d 776 (Pa. Super. 2002) ......................................18

*Wishkin v. Potter,* 476 F.3d 180 (3d Cir.2007)......................................4

*Woessner v. Air Liquide, Inc.*, 242 F.3d 469 (3d Cir. 2001) ......................................5

*Woods Services, Inc. v. Disability Advocates, Inc.*, No. 18-296, 2018 WL 2134016 (E.D.Pa. May 9, 2018)......................................................5, 20

*Worldwide Marine Trading v. Marine Transport Service*, 527 F. Supp. 581 (E.D. Pa. 1981) .....17

*Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) ...................................3

## Statutes

42 Pa. C.S.A. § 8343.................................................................... 6-7, 21

42 Pa. C.S.A. § 8351....................................................................18

R.C. § 2315 ..............................................................................7

R.C. § 2315.18 ..........................................................................7

## Rules

Fed. R. Civ. P. 56........................................................................3

**Other Authorities**

2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983) ...................................................................................................................................4

Restatement (Second) of Torts § 674 .........................................................................................18

Restatement (Second) of Torts § 586............................................................................ 6, 11-12, 17

Restatement (Second) of Torts § 588............................................................................................11

## I.       Factual Background

This is a defamation action by plaintiff, Matthew Ralston, against defendants, Mitchell Garabedian, Mitchell Garabedian, Esquire d/b/a Law Offices of Mitchell Garabedian (collectively "Garabedian") and Kurtis Poulos, arising from April 11, 2018 and December 26, 2018 letters written to The Hill School by Garabedian, on behalf of his client, Poulos, to report sexual abuse of Poulos by plaintiff while Poulos was a student at The Hill School in the late 1990's.  Plaintiff's claims are based on the contention that the allegations of sexual abuse asserted and described in the letters were defamatory.  After motion practice on the pleadings, claims for defamation against Garabedian (count one) and Poulos (count three) remain.  Plaintiff demanded unquantified monetary damages, costs, delay damages and punitive damages.

Garabedian relies on the Statement of Undisputed Facts filed with the motion for summary judgment for a more complete statement of the record and cites to the Statement of Undisputed Facts ("SOF") herein but provides the following brief factual overview:

The two letters at issue were written by Garabedian in his capacity as Poulos' lawyer to The Hill School to report sexual abuse by Ralston of Poulos when Poulos was a student at The Hill School and to demand monetary relief from The Hill School for Poulos' injuries.  *See, e.g.*, SOF ¶¶ 48-60, 97-102, 116-124, 127-129, 217-220, 224-225.  The first letter was sent in response to The Hill School's public disclosure of "Historical Allegations of Sexual Abuse at The Hill" and solicitation of additional reports of abuse.  SOF ¶¶ 25-47, 51-57. The second letter was sent at the request of The Hill School's lawyer for additional information about the sexual abuse survived by Poulos in follow-up to the first letter.  SOF ¶¶ 183-184, 205-207, 210, 217-220.  The letters were addressed to the specific recipients identified by The Hill School to make

the initial report (Headmaster) and to provide additional requested information (the school's lawyer) and to no one else.  SOF ¶¶ 34, 116, 183-184, 217.

The letters were sent by Garabedian while in the service of a client, Poulos.  SOF ¶¶ 51-55, 59-60, 97-102, 116-121, 124, 127-129, 217-220, 224-225.  Poulos intended to instigate an investigation of plaintiff, sought a remedy from The Hill School and was also contemplating filing a lawsuit when the statute of limitations was adjusted in Pennsylvania.  SOF ¶¶ 48-60, 105-109, 124, 127-128.  Poulos confirmed he provided the factual information included in the letters to Garabedian and the truth of the factual information and allegations of sexual abuse during this proceeding, at length.  SOF ¶¶ 124-125, 221-224.  Similarly, plaintiff confirmed all of the factual information in the letters was true, except that plaintiff denied the allegations of sexual abuse.  SOF ¶¶ 149-151, 236-246.  There is no evidence of malice or personal interest of Garabedian.

The Hill School shared the letters with its lawyers, a discrete number of school officials and plaintiff.  SOF ¶¶ 134-135, 230-231.  Plaintiff then told everyone he knew about the letters and publicly identified Poulos as a sexual abuse survivor without Poulos' consent.  *See, e.g.*, SOF ¶¶ 159-162, 166-182, 257, 307, 314.  The Hill School performed no meaningful investigation, took no adverse employment action against plaintiff in response to the letters and even gave plaintiff a substantial raise and bonus after receipt of the first letter and another raise after the second letter.  SOF ¶¶ 189-197, 259-270, 272-277, 295.

Even though plaintiff believed The Hill School "was just letting the letters go away", plaintiff filed this lawsuit.  SOF ¶¶ 287, 293-295.  The Hill School first placed plaintiff on paid leave and then terminated plaintiff because plaintiff filed this lawsuit against an alumnus, despite being notified by The Hill School that a lawsuit against an alumnus would result in adverse

employment action.  SOF ¶¶ 298-305, 287-291, 314, 318-319.  Plaintiff's own lawyer acknowledged in a writing to The Hill School that the decision to "place [plaintiff] on paid leave and, ultimately, force his departure, is in response to his decision to file a lawsuit against Kurtis Poulos" and The Hill School "kept [plaintiff] on the road generating gifts even after" it received the letters.  SOF ¶ 312.

Plaintiff caused the publication to his community in Ohio where his reputation is located. SOF ¶¶ 327.  Plaintiff identified no one whose opinion of him changed or stopped associating with him due to the letters or accusations by Poulos.  *See, e.g.*, SOF ¶¶ 132, 164, 169, 172, 175, 179, 182, 326, 331, 334, 354.  Plaintiff identified no one in his community who even believed Poulos' accusations.  *See, e.g.*, SOF ¶¶ 168, 171, 174, 178, 181, 355, 360, 362.  Plaintiff voluntarily stopped teaching in 2009 and has no plans to work for reasons unrelated to the letters. SOF ¶¶ 368-370.  Plaintiff acknowledged his own lawsuit (this action) has caused him emotional distress and cannot distinguish between the alleged emotional distress caused by this lawsuit as compared to the letters.  SOF ¶¶ 371-372.

## II.    Arguments of Law

### A.  Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir.1995)).  A fact is material if proof of its existence or

nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed.1983).  The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor."  *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir.2007).  Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *Anderson,* 477 U.S. at 256–57.  The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).   A summary judgment motion must be supported by admissible evidence.  *Curbeam v. PrimeCare Medical, Inc.,* 2013 WL 5942345 at *5 (E.D. Pa. Nov. 6, 2013).

**B. Choice of Law**

This Court's jurisdiction is based on diversity of citizenship.  A federal court sitting in diversity must apply state substantive law and federal procedural law.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  When state substantive law applies, the federal court sitting in diversity must choose the appropriate state law.  A federal court sitting in diversity must apply the choice of law rules of the forum state.  *Woessner v. Air Liquide, Inc.*, 242 F.3d 469, 472 (3d Cir. 2001) (citing *Klaxon v. Stentor Elec. Mfg Co*., 313 U.S. 467, 496 (1941)).  A choice of law analysis is necessary only if there is a conflict between or among the jurisdictions concerning the applicable law.

This Court has applied the defamation law of the plaintiff's state of domicile based on Pennsylvania's choice of law laws because the plaintiff's "domicile will be the place where most, if not all, of his or her reputational contacts are found."  *Fitzpatrick v. Milky Way Prods., Inc.,* 537 F. Supp. 165, 171-72 (E.D. Pa. 1982).  The plaintiff's domiciliary state "generally has the greatest concern in vindicating plaintiff's good name and providing compensation for harm." *Id.* at 171; *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 476 (E.D. Pa. 2010) (applying the law of plaintiff's state of domicile even though the statements were only published in a foreign forum); *see also Woods Services, Inc. v. Disability Advocates, Inc.*, No. 18-296, 2018 WL 2134016 *4-5 (E.D.Pa. May 9, 2018). For example in *Mzamane v. Winfrey*, this Court applied the law of the plaintiff's domicile (Pennsylvania) where plaintiff was a headmistress of a South African school and alleged defamatory statements were made about her handling of reports of abuse by students, even though the plaintiff maintained a residence in South Africa and the conduct that formed the basis for the statements occurred in South Africa.  *See Mzamane*, 693 F. Supp. 2d at 462-463, 469-475.

While plaintiff's domicile is Ohio, plaintiff appears to rely on his reputation within "The Hill School community" that he treats as a Pennslvania community as the basis for his claims. Pennsylvania and Ohio are not materially different regarding the application of judicial privilege and conditional privilege. Both jurisdictions apply the Restatement of Torts to confer attorneys with an absolute privilege protecting their speech as advocates. *See, e.g.,* Restatement of Torts § 586 (1938) ("An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of[.]"); *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (Pa. 1986); *Bochetto v. Gibson*, 580 Pa. 245, 251 (2004); *Schanne v. Addis*, 632 Pa. 545 (2015); *Simmons v. Climaco*, 30 Ohio App.3d 225, 227-28, 507 N.E.2d 465, 468 (Ohio Ct. App. 1986) (applying *Sriberg v. Raymond,* 345 N.E. 2d 882, 883-84 (Mass. 1976), which applies *Post v. Mendel*); *Michaels v. Berliner*, 119 Ohio App.3d 82, 87-88, 694 N.E.2d 519, 522 (Ohio Ct. App. 1997) (applying *Post v. Mendel*). Both jurisdictions recognize a conditions privilege in a variety of fact-specific circumstances where "[c]ommunications [are] made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged." and involve an interest of the publisher, third-party or public. *See, e.g., Moore v. Vislocky*, 240 Fed. Appx. 457, 463 (3d Cir. 2007) (quoting *Elia v. Erie Ins. Exchange*, 430 Pa. Super. 384, 391 (Pa. Super. 1993)); *A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Building & Construction Trades Council*, 651 N.E.2d 1283, 1289-91 (Ohio 1995).

The elements of defamation in Ohio and Pennsylvania are materially in conflict as far as who carries the burden to prove falsity / truth and the standard of proof for damages. *See, e.g.,* 42 Pa. C.S.A. § 8343(a) (elements of defamation); *Savoy v. Univ. Akron*, 15 N.E.3d 430, 435 (Ohio Ct. App. 2014). In Ohio, "defamation occurs when a publication contains a false

statement "made with some degree of fault, reflecting injuriously on a person's reputation, or

exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person

adversely in his or her trade, business or profession." *Am. Chem. Soc. v. Leadscope, Inc.*, 978

N.E.2d 832, 852 (Ohio 2012) (quoting *Jackson v. Columbus*, 883 N.E.2d 1060 (Ohio 2008)).

> To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Id.* (quoting *Pollock v. Rashid,* 690 N.E.2d 903 (Ohio Ct. App. 1996)).  Noneconomic damages

for defamation claims are also statutorily capped in Ohio.  *See, e.g., Wayt v. DHSC, L.L.C.*, 122

N.E.3d 92 (Ohio 2018) (applying R.C. § 2315.18 to cap damages for defamation); R.C. §

2315(B)(2) (limiting noneconomic damages to the greater of $250,000 or three times the

economic damages).

In Pennsylvania, the plaintiff has the burden to prove seven (7) separate elements that

include: 1) a defamatory communication; (2) publication of the defamatory communication by

the defendant; (3) the communication's application to the plaintiff; (4) an understanding by the

reader or listener of the statement's defamatory meaning; (5) an understanding by the reader or

listener that the statements refer to plaintiff; (6) special harm resulting to the plaintiff from its

publication; and (7) abuse of a conditionally privileged occasion.  42 Pa. C.S.A. § 8343(a).

Where applicable, the defendant then has the burden to prove: (1) the truth of the defamatory

communication; (2) the privileged character of the occasion on which it was published; and/or

(3) the character of the subject matter of defamatory comment as of public concern. 42 Pa.

C.S.A. § 8343(b).  This Court found a conflict of law between South African and Pennsylvania

law in *Mzamane v. Winfrey*, 693 F. Supp. 2d 442 (E.D.Pa. 2010), where the burden to prove truth

/ falsity differed between the jurisdictions.  *Mzamane*, 693 F. Supp. 2d at 473-74.

7

The appropriate choice of law is likely Ohio because it is plaintiff's domicile.  *See* SOF ¶¶ 2-4.  Pennsylvania has no interest in protecting the reputations of non-citizens or condoning forum shopping for more favorable law or to avoid damages limits.  Plaintiff has also not adduced evidence "The Hill School community" that is comprised of multi-state or multi-national membership should be treated as a Pennsylvania community.  The geographic region plaintiff was assigned as a remote capital giving officer (working from Ohio) was the Midwest. SOF ¶¶ 341, 343-344.

For purposes of this motion and efficiency, Garabedian has applied the law of the forum, Pennsylvania.  Garabaedian has not raised issues on summary judgment with the burden of proof as to falsity / truth and limitations to damages.  Plaintiff's claim fails even under the more permissive Pennsylvania law relating to proof of special harm from publication.

### C. Plaintiff's Claim Is Barred by Judicial Privilege

Garabedian's speech in furtherance of his client's interests was absolutely privileged.  A lawyer's speech while serving his client's interests is provided more protection than his conduct.

> Pursuant to the judicial privilege, a person is entitled to absolute immunity for "communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (Pa. 1986).  This privilege is based on the "public policy which permits all suiters, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate." *Id.*

*Bochetto v. Gibson*, 580 Pa. 245, 251 (2004).  "[A]ll doubt as to whether the alleged defamatory communication was indeed pertinent and material to the relief or redress sought is to be resolved in favor of pertinency and materiality."  *Pawlowski v. Smorto*, 403 Pa. Super. 71, 82 (1991) (citing *Greenberg v. Aetna Ins. Co.*, 427 Pa. 511 (1967)).

Judicial privilege applies to speech by lawyers "in their role as advisors of their clients and as their representatives in the judicial process." *Mansmann v. Tuman*, 970 F. Supp. 389, 397-98 (E.D. Pa. 1997). Judicial privilege applies in and outside a courtroom, to oral and written communications, and to pre-litigation letters threatening claims. *See, e.g., Pawlowski*, 403 Pa. Super. at 81, 83-84 (communications in preliminary conferences, correspondence between counsel in furtherance of the client's interests and negotiations on a client's behalf are privileged); *Richmond v. McHale*, 2012 PA Super. 1, 35 A.3d 779, 785-86 (2012) (discussion among counsel about discovery is privileged); *Post,* 510 Pa. at 223 (communications made prior to the institution of proceedings are privileged if published to persons with a direct interest in the proceeding); *Int'l Portfolio, Inc. v. Purplefish, LLC*, 2013 WL 11250216 *5-6 (Pa. Super. Dec. 24, 2013) (litigation hold letters are privileged). Judicial privilege applies no matter the motive of the communication and cannot be abused. *Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 323 (1971); *Milliner v. Enck*, 709 A.2d 417, 422 n.2 (Pa. Super. 1998).[1] When judicial privilege attaches, it is absolute and impenetrable.

Judicial privilege can only be lost by overpublication. "[O]verpublication may be found where a statement initially privileged . . . is later republished to another audience outside the proceedings." *Pawlowski*, 403 Pa. Super. at 84 n.3. Sending or describing a privileged communication to a party without a direct interest or to the press are not privileged speech. *See, e.g., Post*, 510 Pa. at 223 (letter sent to people with no direct interest in the proceeding was not privileged); *Bochetto*, 580 Pa. at 253-54 (forwarding a complaint to the press was not privileged); *Barto v. Felix*, 250 Pa. Super. 262 (1977) (attorney's comments about the content of brief during press conference were not privileged); *Binder*, 275 A.2d 56 (newspaper article about

---

[1]    *Savoy*, 15 N.Ed.3d at 436 ("Actual malice may overcome a qualified privilege, but not an absolute privilege.")

9

trial was not privileged).  A privileged communication that is not republished by the lawyer is not actionable against the lawyer.

In *Post v. Mendel*, 510 Pa. 213 (1986), an extra-judicial "letter" case, the Pennsylvania Supreme Court explained the criteria to evaluate whether a pre-litigation letter was privileged where the defendant sent a letter accusing opposing counsel of misconduct during the course of litigation.  The letter was sent to the judge, the disciplinary board and the opposing lawyer's client.  *Post*, 510 Pa. at 221-24.  The letter "did not state or argue any legal position, and it did not request any ruling or action by the court . . . [nor did it contain anything that] should even be considered by the court."  *Id.* at 222.  The letter was not "issued in the regular course of preparing for contemplated proceedings" because it was directed to "persons who would have had no direct interest in either of the proceedings which might have ensued."  *Id.* at 223. Publication of the letter to disinterested parties was therefore not privileged.  *Id.* at 224.  The merits of the claims asserted in the letter were not a factor in the Supreme Court's analysis.

More recently, in *Schanne v. Addis*, 632 Pa. 545 (2015), the Pennsylvania Supreme Court considered whether the defendant's disclosure of sexual abuse by a teacher to a friend was privileged speech.  In *Schanne*, the defendant, then a 26-year-old adult, disclosed to a teacher "as a friend" she had a romantic relationship with a teacher when in high school.  *Schanne*, 632 Pa. at 548.  The "friend" reported the conduct to the school, which resulted in an investigation.  *Id.* The defendant was "surprised" her friend reported the disclosure and had "no intention of initiating proceedings or otherwise obtaining a remedy" for the sexual abuse.  *Id.* at 548, 557.

In *Schanne*, the Supreme Court found the speech was "materially distinguishable" from communications "made in a directed effort to initiate proceedings or otherwise obtain relief from school officials for harm stemming from a school employee's alleged misconduct."  *Id.* at 560.

There was no "colorable nexus" to the "privilege's underlying policy pertaining to the unencumbered resolution of claims in a judicial (or quasi-judicial) setting" to immunize the speech. *Id.*   As in *Post*, the merits of a potential sexual abuse claim were not a factor in the Supreme Court's analysis of whether the speech was privileged. *Id.*

In *Schanne*, the Pennsylvania Supreme Court also applied Section 588 of the Restatement (Second) of Torts, titled "Witnesses in Judicial Proceedings," while evaluating the application of judicial privilege to a non-attorney declarant. *Schanne*, 632 Pa. at 555 (quoting Restatement (Second) of Torts § 588 (1977)).  The plaintiff in *Schanne* was an unrepresented witness. *Id.* at 548. *Schanne* did not apply Pennsylvania judicial privilege law applicable to attorneys.

Pennsylvania courts apply the Restatement (Second) of Torts § 586, titled "Attorneys at Law," to attorneys acting in the service of a client. *See, e.g., Post v. Mendel*, 507 A.2d 351, 222-23 (1986); *Peters v. Hahn*, 2013 WL 11253843, *5 (Pa. Super. Oct. 24, 2013); *Smith v. Griffiths*, 476 A.2d 22, 24 (Pa. Super. 1984); *Milliner v. Enck*, 709 A.2d 417, 420-21 (Pa. Super. 1998).  Section 586 (Attorneys at Law) and its comments are materially different from Section 588 (Witnesses in Judicial Proceedings) and its comments.  *Compare* Restatement (Second) of Torts § 586 *with* Restatement (Second) of Torts § 588.  Specifically, comment e to Section 586, applicable to attorneys, does not have the "actually contemplated" by "a possible party" language of comment e to Section 588 relied on by the *Schanne* Court.

Comment e to Section 586, relating to attorneys, also must be read in conjunction with comment a that provides judicial privilege applies irrespective of the attorney's purpose:

> The privilege stated in this Section is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients.  Therefore the privilege is absolute.  **It protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity.  These matters are of importance only in determining the amenability of the attorney to the disciplinary**

**power of the court of which he is an officer.**  The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary to the proceeding.  The institution of a judicial proceeding includes all pleadings and affidavits necessary to set the judicial machinery in motion.  The conduct of the litigation includes the examination and cross examination of witnesses, comments upon the evidence and arguments both oral and written upon the evidence, whether made to court or jury.

Restatement (Second) of Torts § 586, cmt. a (emphasis added).

Unlike a non-attorney declarant, an attorney's only function, when acting in the service of a client, is to pursue a proceeding or to "otherwise obtain[] a remedy" for his client.  *See Schanne*, 121 A.3d at 949.  The client, not the attorney, forms the intent, and makes the decision, to pursue a proceeding or other remedy.  The attorney does not seek vindication of his own rights when representing a client but instead is pursuing the rights of the client.  An attorney acts within his role as an advocate unless he has a personal stake beyond receipt of a fee for legal services or mere professional benefit.  *See, e.g., Heffernan v. Hunter,* 189 F.3d 405, 414 (3d Cir. 1999) ("[T]he mere fact that attorneys have 'mixed motives,' such as 'enhancing' their reputation by aggressive representation, does not remove their conduct from the scope of the agency.")

There are no competing public policy considerations when applying judicial privilege to attorney declarants.  Unlike a non-attorney declarant, an attorney must act in conformity with the *Rules of Professional Conduct* and is subject to discipline for non-conformance.  *See Heffernan*, 189 F.3d at 413 ("The offended third party has a remedy under state law through . . . reference to state disciplinary bodies.")  An individual that is the subject of an attorney-advocate's speech has a remedy against the attorney and therefore does not need access to the courts to redress injury to reputation.  *See Schanne*, 121 A.3d at 946-47.

The April 11, 2018 and December 26, 2018 letters were sent by Garabedian while in the service of a client, Poulos.  SOF ¶¶ 51-55, 59-60, 97-102, 116-121, 124, 127-129, 217-220, 224-225. Poulos intended to report Ralston's sexual abuse to The Hill School and to instigate an investigation of Ralston.  SOF ¶¶ 48-60, 105-109, 124, 127-128.  Poulos sought a remedy from The Hill School – to make future abuse stop and monetary compensation for his injuries.  SOF ¶¶ 51-59.  While not a requirement for the attachment of judicial privilege, Poulos was *also* contemplating filing a lawsuit when the statute of limitations was adjusted in Pennsylvania at the time the letters were sent.  SOF ¶¶ 105-109.

There was no overpublication by Garabedian.  The letters were addressed to the specific recipients identified by The Hill School.  SOF ¶¶ 34, 116, 183-184, 217.  The April 11, 2018 letter was addressed to Headmaster Lehman, who was identified in The Hill School's November 20, 2017 letter soliciting reports of abuse.  SOF ¶¶ 34, 116.  Lehman was also in plaintiff's chain of command and the person The Hill School designated to interact with plaintiff relating to the first letter and later employment issues.  SOF ¶ 140, 34, 308.

The Hill School notified Garabedian that it was represented by Rees on April 24, 2018 and to direct further contact to Rees.  SOF ¶¶ 183-184.  Rees then requested the additional factual information included in the December 26, 2018 letter.  SOF ¶ 207.  The December 26, 2018 letter was addressed specifically to Rees, as directed and required because The Hill School was a represented party.  SOF ¶ 217.  Garabedian did not provide the letters to anyone else.  SOF ¶ 207.

Neither Garabedian's alleged motives nor the truth or falsity of the content are considerations for whether judicial privilege attaches.  It is not disputed that the letters were sent by Garabedian while in the service of a client, Poulos, who was seeking a remedy from The Hill

13

School.  There is no evidence of a personal interest or stake of Garabedian to take him outside of his role as advocate for Poulos.  Garabedian's mere professional interest or contingent fee interest do not defeat protections from liability.  *See Heffernan,* 189 F.3d at 414.

Plaintiff's claim for defamation against Garabedian is barred by judicial privilege, as a matter of law.  There is no genuine issue of material fact requiring a trial as to whether plaintiff's claim for defamation is barred by judicial privilege.  Accordingly, Garabedian's motion for summary judgment should be granted and judgment entered in favor of Garabedian.

### D.  No Abuse of a Condition Privilege

Plaintiff's claim also fails because there was no abuse of a conditional privilege by Garabedian.  "[A] publisher of a defamatory statement is not liable if the statement was made subject to a conditional privilege and the privilege was not abused."  *Moore*, 240 Fed. Appx. at 463 (3d Cir. 2007) (quoting *Elia*, 430 Pa. Super. at 391). "Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged."  *Elia*, 430 Pa. Super. at 391 (quoting *Chicarella v. Passant*, 343 Pa. Super. 330, 337 (Pa. Super. 1985)).  Examples of when a conditional privilege applies include when "some interest of the recipient of the matter, or a third party is involved" or "a recognized interest of the public is involved."  *Id.* (quoting *Beckman v. Dunn*, 276 Pa. Super. 527, 536 (Pa. Super. 1980), abrogated on other grounds).  If a conditional privileg applies, then the plaintiff must establish "abuse" of the conditional privilege.  *Id.* at 393.  Abuse occurs when the publication is made with malice, for a purpose other than the purpose of the privilege, made to a person not reasonably believed necessary for the purpose of the privilege or includes defamatory content not reasonably believed necessary to accomplish the purpose of the privilege.  *Id.*

For example in *Chicarella v. Passant*, 343 Pa. Super. 330, 337 (Pa. Super. 1985), the Pennsylvania Superior Court found that publishing information "at the request of a party with an interest in the information" is privileged.  In Chicarella, the plaintiff sued an investigator who prepared a report about the plaintiff at the request of an insurer with whom plaintiff had submitted a claim.  The court recognized the insurance company's interest in paying on legitimate claims and society's interest in distinguishing valid from fabricated claims as "interests" worthy of protection.  *Id.* at 337.

Plaintiff's claims also depend on the contention Garabedian's legal advice and advocacy for his client, Poulos, did not meet "acceptable professional standards" because of the alleged adverse impact the legal services had on plaintiff.  *See* SAC ¶ 72, n.5; *see also* Docs. 5-6. Claims by non-clients against lawyers arising from the lawyer's advice and advocacy for his client are prohibited. A third party "can have no cause of action against the attorneys because of advice which the attorneys gave their client." *Austin J. Richards, Inc. v. McClafferty,* 538 A.2d 11, 15 (Pa. Super. 1988); *Mentzer & Rhey, Inc. v. Ferrari,* 532 A.2d 484, 486 (Pa. Super. 1987); *Smith v. Griffiths*, 476 A.2d 22, 26 (Pa. Super. 1984) ("attorney owes no duty of care to the adverse party but only to his client").  An attorney owes allegiance only to his client and his client's interests and cannot be liable to a non-client "so long as he was serving that interest." *Aetna Electroplating Co. v. Jenkins,* 335 Pa. Super. 283, 287-88 (1984); *Smith,* 476 A.2d at 26. A lawyer cannot be liable to a non-client based on the impact his advocacy has on a non-client.

A lawyer cannot be liable to a party with whom he has no contract to provide professional services.

> The general rule is that an attorney will be held liable for negligence only to his client. In the absence of special circumstances, he will not be held liable to anyone else.

*Smith,* 476 A.2d at 26; *Austin J. Richards,* 538 A.2d at 277; *Mentzer,* 532 A.2d at 486; *Landell v. Lybrand,* 264 Pa. 406 (1919); *Hatbob v. Brown,* 575 A.2d 607, 613-15 (Pa. Super. 1990). Courts have consistently rejected attempts to relax the privity requirement. *Guy v. Liederbach,* 459 A.2d 744, 750 (Pa. 1983); *Gregg v. Lindsay,* 437 Pa. Super. 206, 209-10 (1994); *Cost v. Cost,* 450 Pa. Super. 685, 691 (1996).

In *Smith v. Griffiths,* 476 A.2d 22 (Pa. Super. 1984), the Pennsylvania Superior Court explained the public interest does not permit the imposition of a duty of care to a third party:

> To impose upon an attorney a duty of care to the adverse party would place the attorney in a position where his own interest would conflict with the interests of his client and prevent him from exerting a maximum effort on behalf of the client. It would place an undue burden on the profession and would diminish the quality of the legal services rendered to and received by the client. Where an attorney represents a client in litigation or during arms length negotiations, the public interest demands that attorneys, in the proper exercise of their functions as such, not be liable to adverse parties for acts performed in good faith and for the honest purpose of protecting the interests of their clients.

*Smith,* 476 A.2d at 26 (citations omitted).

Courts have repeatedly rejected claims for intentional tortious conduct against lawyers arising from the impact the lawyer's legal advice or advocacy had on a non-client. In *Smith v. Griffiths,* the Pennsylvania Superior Court rejected an intentional tort claim based on the contention the lawyer recklessly, erroneously advised his client to enter the former marital home and take property to induce the plaintiff to settle:

> Absent an intent to harm a third person by using a client unjustifiably as an instrument to inflict harm, we will not impose liability upon an attorney for advice which he has given in good faith to a client for the purpose of serving a justifiable and proper interest of the client.

*Smith,* 476 A.2d at 428; *see also Aetna Electroplating,* 335 Pa. Super. at 287-88 (finding no "intentional tort designed maliciously to cause harm to Aetna" where the complained about conduct was "the manner in which counsel represented his client" and the lawyer could

"properly exert maximum effort on behalf of his *client*"); *Cloverleaf Dev., Inc. v. Horizon Financial, F.A.,* 347 Pa. Super. 75, 85-86 (1983) (rejecting an intentional infliction of emotional distress claim because "[e]ven if the advice which [the lawyers] gave their client. . . was incorrect, this fact alone would not give rise to a cause of action").

Courts have repeatedly rejected concerted action claims against lawyers where the lawyer's advice or advocacy were for the benefit of his client.  *See, e.g., Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 212 (Pa. 1979) (dismissing conspiracy claim where the attorney "acted solely to advance the legitimate business interests of his client and to advance his own interests"); *Heffernan v. Hunter,* 189 F.3d 405, 414 (3d Cir. 1999) (finding a "ban on conspiracies in the attorney-client context" because "[t]he right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns" unless there is self-interested activity due to a stake by the lawyer in the transaction other than a mere professional interest); *see also Pedro v. City Fitness, LLC*, No. 15-04964, 2018 U.S. Dist. LEXIS 54164 (E.D. Pa. 2018).

> A lawyer must be able to act decisively on behalf of his client, without fearing that he will provide "the deep pocket" in subsequent litigation. If his advice and activity are wrong or negligent, he is already exposed by virtue of his duty to his client.

*Worldwide Marine Trading v. Marine Transport Service*, 527 F. Supp. 581, 586 (E.D. Pa. 1981) ("There is an important societal interest in protecting the lawyer from third-party lawsuits[.]");

*see also Rutherford v. Presbyterian-University Hospital,* 612 A.2d 500, 508 (Pa. Super. 1992); *Nix v. Temple University,* 596 A.2d 1132, 1137 n.3 (Pa. 1991); *Aetna Electroplating,* 484 A.2d at 137; *Commonwealth v. Portnoy,* 566 A.2d 336, 340-41, n.10 (Pa. Commw. 1989), *aff'd,* 531 Pa. 320 (1992); *Harvey v. Pincus,* 549 F. Supp. 332 (E.D. Pa. 1982).

Even in the limited circumstances where an opposing party can pursue a claim against a lawyer for litigation conduct otherwise covered by judicial privilege, the lawyer enjoys an absolute defense if he relied on his client as his source of facts.[2]  A lawyer is unquestionably permitted to rely on the factual statements by the lawyer's client when procuring, initiating or continuing a legal proceeding.  *See, e.g., Perelman v. Perelman*, 125 A.3d 1259, 1264 (Pa. Super. 2015); *see also* Restatement (Second) of Torts § 674 comment (d); *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 973 (Pa. Super. 2011) (citing *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super. 2001)).  In *Meiksin v. Howard Hanna Co., Inc.*, 590 A.2d 1303 (Pa. Super. 1991, the Pennsylvania Superior Court found a lawyer was not liable even if the client falsified facts:

> If the client falsifies the facts, there may be a liability which attaches to the client, but the lawyer is not liable if, without more, he acts in good faith upon the facts stated by the client.

*Meiksin*, 590 A.2d at 1306.

The *Meiksin* Court explained the social policy behind the reason a lawyer is permitted to rely on the facts provided by his client:

> The [client] had or believed that he had a claim for commissions after having produced a buyer for the apartment building, and he was entitled to be represented by counsel who was able to give undivided loyalty, unafraid of personal liability in the event the suit should fail. . . . Lawyers can safely act upon facts stated by their clients. They do not incur liability to third persons for filing civil proceedings when the evidence of those facts is later found not credible by the court or jury whose duty it is to try the case. Any other rule would impair the quality of the representation which a client is entitled to receive from his lawyer.

*Id.* at 1307.

---

[2]     In Pennsylvania, an opposing party can pursue a claim against a lawyer for abuse of process or wrongful use of civil proceedings under limited circumstances for conduct that would otherwise be covered by judicial privilege absent the carve-out.  *See, e.g., P.J.A. v. H.C.N.*, 156 A.3d 284, 288 (Pa. Super. 2017) (quoting *Werner v. Plater-Zybertk*, 799 A.2d 776, 785 (Pa. Super. 2002)); 42 Pa. C.S.A. § 8351.

The very premise for plaintiff's claims against Garabedian has already been expressly rejected by the Pennsylvania Superior Court.  In *Hong v. Pelagatti*, 765 A.2d 1117, 1122 (Pa. Super. 2000), the court found a lawyer was under no duty "to verify the accuracy of his client's representation[s.]"  The Superior Court decided that "such a requirement would work a chilling effect on the attorney-client relationship."  *Id.*

As expressed in Section II-C, *supra*, the letters were sent by Garabedian while acting in the service of his client, Poulos.  The Hill School solicited reports of historical allegations of sexual abuse in November 20, 2017 in a letter that used an example from the time period Poulos was a student at The Hill School.  SOF ¶¶ 30, 34, 36.  Even without the solicitation, Garabedian's client, Poulos, had an interest in reporting his sexual abuse to the appropriate official at The Hill School (Lehman), which had an interest in addressing reports of misconduct by a current or former employee.

Garabedian was permitted to believe his client, Poulos, and to communicate Poulos' report of sexual abuse and demand for compensation for his injuries based on Poulos' representations.  Poulos confirmed he provided the factual information included in the letters to Garabedian and the truth of the factual information and allegations of sexual abuse during this proceeding, at length.  *See, e.g.*, SOF ¶¶ 124-125, 221-224.  Similarly, plaintiff confirmed all of the factual information in the letters was true, except that plaintiff denies the allegations of sexual abuse.  SOF ¶¶ 149-151, 236-246.

Garabedian was not required to prejudge Poulos' claims.  Regardless, everything that could be corroborated was corroborated.  No evidence was revealed in discovery to disprove Poulos' allegations of sexual abuse.  Proof of Poulos' allegations of sexual abuse is, quite literally, Poulos' word against plaintiff's word.  Garabedian was permitted to advance his client's

19

position based solely on his client's word, even if Garabedian did not believe it.  However, the evidence revealed that Garabedian, a lawyer who is extremely experienced in representing victims of childhood sexual abuse against institutions, found Poulos credible. *See, e.g.*, SOF ¶¶ 61-103.

There is no evidence of malice or personal interest of Garabedian.  Garabedian and plaintiff did not know each other prior to the letters.  *See* SOF ¶ 156.  Garabedian had no personal stake in sending the letters.  Garabedian's professional reputation or fee interest are not a self-interested motive sufficient to defeat privilege.  *See Heffernan,* 189 F.3d at 414. Garabedian wrote two letters (both solicited by The Hill School) on behalf of his client, Poulos, who wanted to instigate an investigation and a remedy that detailed the precise factual information that Poulos provided to Garabedian, which is not malice.  *See* SOF ¶¶ 51-55, 59-60, 97-102, 105. 109, 116-121, 124, 127-129, 217-220, 224-225.

Garabedian's conduct in writing the letters for Poulos was conditionally privileged. There is no evidence of abuse of the conditional privilege.  Plaintiff's claim for defamation against Garabedian also fails on the basis of conditional privilege.  Accordingly, Garabedian's motion for summary judgment should be granted, and judgment entered in favor of Garabedian.

### E.  No Publication by Garabedian in Ohio

The letters at issue were not published in Ohio by Garabedian.  Plaintiff's "domicile will be the place where most, if not all, of his or her reputational contacts are found." *Fitzpatrick,* 537 F. Supp. at 171-72; *Mzamane*, 693 F. Supp. 2d at 476; *Woods Services,* 2018 WL 2134016 *4-5.  Plaintiff's current reputation is in Ohio.

Plaintiff is domiciled in Ohio and worked as a remote capital giving officer from Ohio. SOF ¶¶ 2-4.  Plaintiff's geographical area assigned for his work for The Hill School since July 2016 was the Midwest.  SOF ¶¶ 343-344.  Plaintiff did not identify the various alumni in "The Hill School community" that are the source of his reputation as current or former students who are citizens (or even residents) of Pennsylvania.  *See* SOF ¶¶ 345-347.  Plaintiff did not describe any fundraising he performed in Pennsylvania.  Plaintiff, instead, appears to rely on his reputation prior to 2009 when he was still a teacher at The Hill School as the basis for his claims, rather than his reputation at the time of the letters.

Plaintiff confirmed in his testimony that everyone in his Ohio community who learned about the letters and allegations by Poulos learned about them from plaintiff's wife.  SOF ¶¶ 322-325.  Plaintiff's wife learned about the letters and allegations by Poulos from plaintiff.  SOF ¶ 160.  Plaintiff also confirmed that no one in his Ohio community who learned of the letters and allegations changed their opinion of plaintiff, stopped associating with plaintiff or even believed the allegations.  SOF ¶¶ 326-327.  Garabedian cannot be liable for publication of the letters by plaintiff or where plaintiff's reputation has not been harmed.  Accordingly, Garabedian's motion for summary judgment should be granted and judgment entered in favor of Garabedian.

**F.  No Special Harm from Publication**

Plaintiff cannot prove harm caused by publication, even treating his community as "The Hill School community."  A defamation plaintiff has the burden to prove "[s]pecial harm resulting to the plaintiff from its publication."  42 Pa. C.S.A. § 8343(a)(6).

Plaintiff cannot prove he sustained any harm as a result of the publication of the letters by Garabaedian.  The evidence established that The Hill School took no action against plaintiff as a result of the letters.  *See* SOF ¶¶ 189-197, 259-270, 272-277, 295.  Plaintiff received a raise and a

bonus in July 2018 after the April 11, 2018 letter, with no mention of the allegations in the written job evaluation.  SOF ¶¶ 189-197.  Plaintiff received another raise in January 2019 after the December 26, 2018 letter.  SOF ¶¶ 265-266.  Plaintiff was asked to not be alone with a student after the December 26, 2018 letter, but that was not a requirement of his job or something that plaintiff had even done in his capacity as a remote capital giving officer prior to the request.  SOF ¶¶ 259-262.  Plaintiff then *increased* his presence on campus in January and February 2019 by staying for three or four weeks -- spending more time on the campus than he had done for the prior 2.5 years of his employment combined.  SOF ¶ 263.

Plaintiff was put on leave and then terminated because of this lawsuit, after he (and his counsel) was explicitly warned by The Hill School and its attorney that filing a lawsuit against an alumnus would result in adverse employment action.  SOF ¶¶ 298-305, 287-291, 314, 318-319. In plaintiff's own words, plaintiff filed this lawsuit because The Hill School "was just letting the letters go."  SOF ¶ 293. Plaintiff voluntarily stopped teaching more than a decade ago and does not want or plan to get another job for reasons unrelated to the letters.  SOF ¶¶ 368-370.

The evidence revealed plaintiff was the source of publication to the people in his community and gave the claims publicity by filing this lawsuit.  *See, e.g.*, SOF ¶¶ 159-162, 166-182, 257, 298-299, 307, 314.  Regardless, plaintiff identified no one whose opinion of him changed or who stopped associating with him due to the letters.  *See, e.g.*, SOF ¶¶ 132, 164, 169, 172, 175, 179, 182, 326, 331, 334, 354. Plaintiff identified no one who even believed the allegations by Poulos.  *See, e.g.*, SOF ¶¶ 168, 171, 174, 178, 181, 355, 360, 362.  Anyone that plaintiff told about the allegations or who revealed to plaintiff that they knew about allegations communicated to plaintiff *immediate* disbelief of the allegations.

Plaintiff cannot even prove general upset or mental anguish damages.  Plaintiff admitted that this action, which he filed, has caused him emotional distress.  SOF ¶¶ 371-372. Plaintiff was unable to distinguish between his alleged emotional distress that he caused himself by filing this lawsuit for no reason and any alleged emotional distress attributable to the letters.  SOF ¶¶ 371-372.

Plaintiff has sustained no genuine harm as a result of the letters.  There is no genuine issue of material fact requiring trial relating to plaintiff's alleged harm where plaintiff has admitted in his own testimony that he cannot even differentiate alleged mental anguish caused by his own actions and the letters.  Accordingly, Garabedian's motion for summary judgment should be granted and judgment entered in favor of Garabedian.

### G.  There Was No Malice

Plaintiff is a limited purpose public figure within "The Hill School community."  "[A]n individual who voluntarily injects himself or is drawn into a particular public controversy thereby becomes a public figure for a limited range of issues."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S.Ct. 2997, 3012-13, 41 L.Ed.2d 789 (1974).  If a plaintiff is a limited purpose public figure, then he must prove actual malice, or that the defendant make the defamatory remarks with "knowledge that [the statement] was false or with reckless disregard of whether it was false or not."  *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

An issue of public controversy can be a public concern to a discrete community.  *Smith v. Pocono Country Place Property Owners Association, Inc.,* 686 F. Supp. 1053, 1058 (M.D.Pa. 1987).  For example in *Smith v. Pocono Country Place Property Owners Association, Inc.*, the Middle District of Pennsylvania found that manager of a private residential property

23

development was a limited purpose public figure in connection with "a public dispute of concern

to residents of the local community," even though not of a national or even state-wide

importance.  *Id.* (citing *Lorain Journal Co. v. Milkovich*, 474 U.S. 953, 963, 106 S.Ct. 322, 323,

88 L.Ed.2d 305 (1985) (Brennan, J., dissenting) (explaining in the dissent from a denial of a

petition for certiorari that a controversy relating to a high school wrestling coach was as

important to the local community as nationwide events)).

Plaintiff relied on his reputation within The Hill School as a teacher.  During the years

Poulos was a student, plaintiff was employed by The Hill School he was faculty member with

the Mathematics Department, the Academic Dean, head of the Sixth Form (senior) dormitory,

Head Winter Track coach and Director of Financial Aid.  Plaintiff thereafter held numerous other

positions with The Hill School including Mathematic Department Chair and various coaching

and dormitory positions.  According to the plaintiff, he held a prominent position in The Hill

School community.  His conduct (or misconduct) with a student was and is an issue of public

controversy and concern to The Hill School, if not the public generally.

There is no evidence of actual malice.  Garabedian and plaintiff did not know each other

prior to the letters.  SOF ¶ 156.  While acting in the service of his client, Garabedian wrote two

letters (both solicited by The Hill School) expressing his client's allegations of sexual abuse and

injuries and monetary demand.  SOF ¶¶ 51-55, 59-60, 97-102, 116-121, 124, 127-129, 217-220,

224-225. The content of the letters themselves detailed the precise factual information that

Poulos provided to Garabedian.  *See* SOF ¶¶ 124-125, 221-224.  Garabedian had no personal

stake or interest other than professional in sending the letters in service of his client, Poulos.

Plaintiff is a limited purpose public figure if he insists on relying on his "The Hill School community" as the basis for his claims.  There is genuine issue of material fact requiring trial on the issue of malice.  Accordingly, Garabedian's motion for summary judgment should be granted and judgment entered in favor of Garabedian.

## III.     Conclusion

The motion for summary judgment by defendants, Mitchell Garabedian and Mitchell Garabedian, Esquire d/b/a Law Offices of Mitchell Garabedian, should be granted and judgment entered in favor of defendants, Mitchell Garabedian, Mitchell Garabedian, Esquire d/b/a Law Offices of Mitchell Garabedian, and against plaintiff, Matthew B. Ralston.

Respectfully submitted,

/s/ Candidus K. Dougherty
Jeffrey B. McCarron
Candidus K. Dougherty
Swartz Campbell LLC

Dated: November 15, 2021