**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MATTHEW RALSTON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| MITCHELL GARABEDIAN, ESQUIRE, et al, | : | |
| | : | NO. 2:19-cv-01539 |
| Defendants. | : | |

**PRETRIAL MEMORANDUM BY DEFENDANTS, MITCHELL GARABEDIAN, ESQUIRE AND MITCHELL GARABEDIAN, ESQUIRE D/B/A LAW OFFICES OF MITCHELL GARABEDIAN**

**I.      Brief Statement of the Nature of the Action and Jurisdiction**

This is a defamation action by plaintiff, Matthew Ralston, against defendants, Mitchell Garabedian, Mitchell Garabedian, Esquire d/b/a Law Offices of Mitchell Garabedian (collectively "Garabedian") and Kurtis Poulos ("Poulos"), arising from April 11, 2018 and December 26, 2018 letters written to The Hill School by Garabedian, on behalf of his client, Poulos, to report sexual abuse of Poulos by plaintiff while Poulos was a student at The Hill School in the late 1990's.  Plaintiff's claims are based on the contention that the allegations of sexual abuse asserted and described in the letters were defamatory.  After motion practice on the pleadings, claims for defamation against Garabedian (count one) and Poulos (count three) remain.  Plaintiff demanded unquantified monetary damages, costs, delay damages and punitive damages.

The basis for subject matter jurisdiction is diversity of citizenship.  Plaintiff is a citizen of Ohio.  Plaintiff has not lived in Pennsylvania since 2009.  From 2016 to 2019, plaintiff worked from his home in Ohio as a satellite or remote capital giving officer with The Hill School.

1

Plaintiff was assigned to the Midwest region.  Mitchell Garabedian is a citizen of and licensed to practice law in Massachusetts.  Poulos is a citizen of, and domiciled in Wisconsin.

## II.     Counter Statement of Facts

On April 23, 2016, Zachary G. Lehman, the Headmaster of The Hill School, wrote a "Message from the Headmaster" letter to "Hill School Alumni and Parents".  Lehman wrote "that several prominent boarding schools recently have been confronted with very troubling accusations or proven examples of sexual abuse of their students by employees."  Lehman went on to express that The Hill School "does not tolerate conduct that violates the high ethical and behavioral standards" for its community.  On November 20, 2017, Lehman sent another email to The Hill School Alumni with the subject line "Historical Allegations of Sexual Abuse at The Hill."  Lehman explicitly invited people to come forward with claims of abuse and identified himself as an individual to whom reports could be made.

Poulos considered Lehman's November 20, 2017 letter an invitation to report the abuse he experienced while a student at The Hill School.  Poulos retained Garabedian because he wanted the truth to come out and the behavior at The Hill School to stop.  Poulos' objective in retaining Garabedian also always included the recovery of money from The Hill School. Garabedian and Poulos discussed that The Hill School had a "moral obligation" to compensate Poulos for his injuries, even if a lawsuit could not, at that time, be filed against The Hill School. Poulos made arrangements to have a lawyer lined up in the event that the statute of limitations was enlarged in Pennsylvania, as it has been in other jurisdictions.

Poulos and his mother initially spoke to Garabedian on December 12 and 13, 2017. Poulos had the impression that Garabedian believed he was telling the truth about the abuse because Garabedian asked a lot of questions about the details of the sexual abuse, Poulos'

background and did not just take Poulos' word for it.  Garabedian agreed to accept Poulos' case after the December 12 and 13, 2017 discussions and investigation.  At the time he signed the Contingent Fee Agreement, Poulos understood that Garabedian was not going to file a lawsuit because the statute of limitations had passed.  In January and February of 2018, Garabedian sent records requests to educational institutions Poulos had attended, including The Hill School.  Poulos left it to Garabedian to decide how to go about achieving Poulos' objective of recovering money from The Hill School and stopping future abuse.

On April 11, 2018, Garabedian sent a letter addressed to Zachary G. Lehman, Headmaster of The Hill School.  The letter provided factual information about Poulos' enrollment dates and when, where, by whom and at what age Poulos was "sexually molested."  During his deposition in this action, Poulos confirmed, injury by injury, that the injuries identified in the April 11, 2018 letter were injuries he sustained as a result of being sexually molested by Ralston and that he intended The Hill School to learn the content contained in the letter.  Lehman received the April 11, 2018 letter on April 17, 2018.  The Hill School requested Thomas Rees represent The Hill School in connection with the claims by Poulos on April 17, 2018 when it provided the letter to Rees.  The April 11, 2018 was shared with five officials (leaders of the legal committee and board) at The Hill School and its lawyers.

Rees asked that Garabedian communicate directly with Rees regarding the matter.  On December 21, 2018, Garabedian had a telephone discussion with Rees.  Rees requested additional information about Poulos' claims, which Garabedian agreed to provide.  Rees indicated The Hill School would like to interview Poulos.  Garabedian "counter[ed]" with whether The Hill School would agree to mediation if the investigation found Poulos credible and that a condition of mediation would be no confidentiality if a settlement agreement was reached.

Rees understood Garabedian wanted to mediate Poulos' claim and there was a "precondition" to mediation after an investigation that concluded Poulos' claims had merit as of his first telephone discussion with Garabedian on December 21, 2018 but never responded to the request. Discovery in this action revealed that The Hill School did not agree mediation, though the lack of agreement as never communicated to Garabedian.

Garabedian thereafter had telephone discussions with Poulos to confirm more detailed information to include in the letter requested by the School on December 21, 2018 and December 26, 2018.  In response to Mr. Rees' request, on December 26, 2018, Garabedian faxed a letter to Mr. Rees "Re: Sexual Abuse Claim of Kurtis Nicholas Poulos" that included additional information regarding Poulos' claims. During his deposition in this action, Poulos confirmed that every sentence of the December 26, 2018 letter was factually correct – line by line – except for the sentence with the typographical error on page 2.

The first letter (April 11, 2018) was sent in response to The Hill School's public disclosure of "Historical Allegations of Sexual Abuse at The Hill" and solicitation of additional reports of abuse.  The second letter (December 26, 2018) was sent at the request of The Hill School's lawyer for additional information about the sexual abuse survived by Poulos in follow-up to the first letter.  The letters were addressed to the specific recipients identified by The Hill School to make the initial report (Headmaster) and to provide additional requested information (the school's lawyer) and to no one else.

The letters were sent by Garabedian while in the service of a client, Poulos.  Poulos intended to instigate an investigation of plaintiff, sought a remedy from The Hill School and was also contemplating filing a lawsuit when the statute of limitations was adjusted in Pennsylvania.  Poulos confirmed he provided the factual information included in the letters to

Garabedian and the truth of the factual information and allegations of sexual abuse during this proceeding, at length.  Similarly, plaintiff confirmed all of the factual information in the letters was true, except that plaintiff denied the allegations of sexual abuse.  There is no evidence of malice or personal interest of Garabedian.

The Hill School shared the letters with its lawyers, a discrete number of school officials and plaintiff.  Plaintiff then told everyone he knew about the letters and publicly identified Poulos as a sexual abuse survivor without Poulos' consent.  The Hill School performed no meaningful investigation, took no adverse employment action against plaintiff in response to the letters and even gave plaintiff a substantial raise and bonus after receipt of the first letter and another raise after the second letter.

Even though plaintiff believed The Hill School "was just letting the letters go away", plaintiff filed this lawsuit.  The Hill School first placed plaintiff on paid leave and then terminated plaintiff because plaintiff filed this lawsuit against an alumnus, despite being notified by The Hill School that a lawsuit against an alumnus would result in adverse employment action.  Plaintiff's own lawyer acknowledged in a writing to The Hill School that the decision to "place [plaintiff] on paid leave and, ultimately, force his departure, is in response to his decision to file a lawsuit against Kurtis Poulos" and The Hill School "kept [plaintiff] on the road generating gifts even after" it received the letters.

III.    **Monetary Damages Claimed**

Plaintiff sustained no damages attributable to conduct by Garabedian.  In his initial disclosures, plaintiff alleged he was seeking damages:

> for the loss of reputation, emotional distress (and the physical manifestations therefrom), mental anguish, and humiliation that resulted from the Defendants' conduct.  Plaintiff further seeks damages for other special injuries suffered as a result of Defendants'

conduct including loss of earning capacity, loss of employment, lost earnings, and loss of life's pleasures.  Plaintiff also seeks punitive damages.

Plaintiff has not itemized monetary damages he is claiming.

Plaintiff's employment with The Hill School was terminated because of this lawsuit, not the letters.  Plaintiff's reputation was not harmed.  Plaintiff did not identify any individual whose opinion of him changed or who stopped associated with him as a result of the letters or allegations.  The allegations by Poulos only became public because plaintiff filed this lawsuit and made them public.  Plaintiff did not seek treatment for his "emotional distress" until after he initiated this action.  Plaintiff was not diagnosed with or treated for any medical condition. Plaintiff is unable to distinguish the emotional distress caused by this lawsuit from the emotional distress caused by the allegations.

Plaintiff's Ohio community is limited to plaintiff's wife, a neighbor, plaintiff's wife's brother and wife, and a childhood friend.  The neighbor does not know about the allegations. Plaintiff's wife told her brother, her brother's wife, and plaintiff's childhood friend about the allegations.  Plaintiff's brother-in law, sister-in-law, and childhood friend all maintained their high opinions of plaintiff and have not stopped associating with plaintiff since learning of the allegations.

Plaintiff's Michigan community includes his wife and a variety of friends.  Plaintiff told his Michigan community about the allegations against him.  The individuals in plaintiff's Michigan community all maintain high opinions of plaintiff and have not stopped associating with plaintiff since learning of the allegations.  Plaintiff also told his brothers about the allegations.  Plaintiff's brothers did not change their high opinion of plaintiff and have not stopped associating with plaintiff since learning of the allegations.

Plaintiff considers most people who are alumni of The Hill School part of his / The Hill School community. Plaintiff or his attorney told most of the people in The Hill School Community who learned of the allegations by Poulos about the allegations. Plaintiff did not identify anyone who stopped associating with plaintiff or whose opinion of plaintiff changed due to the allegations. Plaintiff did not identify any person who believed the allegations.

## IV.   Witnesses

Mitchell Garabedian – c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103. Mr. Garabedian will testify regarding his representation of Poulos, the speech / conduct at issue and his experience representing victims of sexual assault in time barred claims against institutions.

Nathan Gaul - c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103. Mr. Gaul will testify regarding his involvement in the representation of Poulos, handwritten notes and oral and written communications and his experience.

> Mr. Gaul lives in the Boston-area and has young children and is concerned about travel given the state of the COVID-19 pandemic. Garabedian intends to request leave of the Court to permit Mr. Gaul to testify via videoconference technology. Plaintiff's counsel agrees.

Daniel Mahoney - c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103. Mr. Mahoney will testify regarding his involvement in the representation of Poulos, handwritten notes and oral and written communications and his experience.

> Mr. Mahoney lives in the Boston-area and has a young child and is concerned about travel given the state of the COVID-19 pandemic. Garabedian intends to request leave of the Court to permit Mr. Mahoney to testify via videoconference technology. Plaintiff's counsel agrees.

Kurtis Poulos – 3239 West Colony Drive, Greenfield, WI 53221. Mr. Poulos will testify regarding his retention of Mr. Garabedian and his allegations against Mr. Ralston.

> Mr. Poulos has expressed to the undersigned and to the Court that he cannot afford to appear in person for trial and intends to request leave to appear via videoconference. Garbedian consents.

Thomas Rees – c/o Kane, Pugh, Knoell, Troy & Kramer LLP, 510 Swede Street, Norristown, PA 19401-4807. Mr. Rees will testify that he represented The Hill School regarding the allegations against Mr. Poulos. Mr. Rees communicated with Mr. Garabedian regarding Mr. Poulos' allegations. Mr. Rees will testify that he requested

additional information from Mr. Garabedian, which was provided in the December 26, 2018 letter.  Mr. Rees will testify that The Hill School did not respond to Mr. Garabedian's request that The Hill School agree to participate in mediation if an investigation found Mr. Poulos' claims credible and that The Hill School would not agree to mediation.  Mr. Rees will testify that he received the December 26, 2018 letter and to whom the letter was distributed.  Mr. Rees participated in a telephone conversation during which Mr. Ralston was warned that he would be placed on administrative leave if he initiated a lawsuit against an alumnus who had asserted allegations of sexual assault against him. Mr. Rees will testify that Mr. Ralston was placed on leave and ultimately terminated as a result of Mr. Ralston's lawsuit against an alumnus who had asserted allegations of sexual assault against him.

Mr. Rees has counsel and has confirmed that he is available during the week of January 10, 2022 to testify.

Zachary Lehman – c/o High Swartz, 40 East Airy Street, Norristown, PA 19401.  Mr. Lehman will testify that he sent the April 23, 2016 and November 20, 2017 communications to The Hill School community.  Mr. Lehman will testify that he received the April 11, 2018 letter and to whom the letter was distributed.  Mr. Lehman will testify that Mr. Ralston was placed on leave and ultimately terminated as a result of Mr. Ralston's lawsuit against an alumnus who had asserted allegations of sexual assault against him.  Mr. Lehman will testify that Mr. Ralston is not invited to alumni events because he is not an alumnus of The Hill School.

Mr. Rees represents Mr. Lehman and will provide the undersigned Mr. Lehman's restrictions if any and is anticipated to accept service of a trial subpoena.

Leslie Gomez - c/o Cozen O'Connor, 1650 Market Street, Suite 2800, Philadelphia, PA 19103.  Ms. Gomez will testify that she has an attorney-client relationship with The Hill School and that she owes her allegiance to The Hill School.  Ms. Gomez will testify that she was not an independent investigator.

Ms. Gomez has counsel who has been contacted to accept service of a trial subpoena.

David Dougherty - c/o High Swartz, 40 East Airy Street, Norristown, PA 19401.  Mr. Dougherty will testify that Mr. Rees or Mr. Ralston informed him of the allegations against plaintiff.  Mr. Dougherty will testify that he did not regularly associate with Mr. Ralston or stop associating with Mr. Ralston as a result of the allegations against Mr. Ralston.  Mr. Dougherty will testify he told Mr. Ralston that he could not discuss legal matters related to The Hill School, but did not tell Mr. Ralston that he could not speak with him.

Geoffrey Richards - c/o High Swartz, 40 East Airy Street, Norristown, PA 19401.  Mr. Richards will testify that he learned of the allegations and received the letters from Mr. Lehman or Mr. Rees.  Mr. Richards will testify that he was instructed not to discuss the allegations outside the group of people who were officially informed of the allegations.

Mr. Richards will testify he that participated in a telephone conversation during which Mr. Ralston was warned that he would be placed on administrative leave if he initiated a lawsuit against an alumnus who had asserted allegations of sexual assault against him.

Michelle Gyves - c/o High Swartz, 40 East Airy Street, Norristown, PA 19401.  Ms. Gyves will testify that she learned of the allegations and received the letters from Mr. Lehman or Mr. Rees. Ms. Gyves will testify that she was instructed not to discuss the allegations outside the group of people who were officially informed of the allegations.

Rick Wood - c/o High Swartz, 40 East Airy Street, Norristown, PA 19401.  Mr. Wood will testify that he learned of the allegations and received the letters from Mr. Lehman or Mr. Rees.  Mr. Woods will testify that he was instructed not to discuss the allegations outside the group of people who were officially informed of the allegations.

Preston Athey - c/o High Swartz, 40 East Airy Street, Norristown, PA 19401.  Mr. Athey will testify that he learned of the allegations and received the letters from Mr. Lehman or Mr. Rees.  Mr. Athey will testify that he was instructed not to discuss the allegations outside the group of people who were officially informed of the allegations.

Andy Soussloff - c/o High Swartz, 40 East Airy Street, Norristown, PA 19401.  Mr. Soussloff will testify that he learned of the allegations and received the letters from Mr. Lehman or Mr. Rees.  Mr. Soussloff will testify that he was instructed not to discuss the allegations outside the group of people who were officially informed of the allegations.

Charles Grade, M.D. - 930 E. Knapp Street, Milwaukee, WI 53202.  Dr. Grade will testify that he treated Mr. Poulos and diagnosed Mr. Poulos with PTSD.

Page and line citations have been submitted because Dr. Grade is unavailable.

**Defense Experts**

Robert S. Tintner, Esquire – c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103.  Mr. Tintner will testify consistent with his report dated November 10, 2021.  Mr. Tintner will rebut the opinions offered by Mr. Specter.  Mr. Tintner will testify that Mr. Garabedian had the right to believe his client, to represent his client, and to try to negotiate a resolution for Mr. Poulos as best as he could under the circumstances.  Mr. Tintner will testify that Mr. Garabedian's handling of the sensitive but likely time-barred sexual assault claim was appropriate, professional, and within the bounds of the standard of care.  Mr. Tintner will testify that Mr. Garabedian did not inappropriately supervise the associate attorneys.

Clifford E. Haines, Esquire – c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103.  Mr. Haines will testify consistent with his report dated November 10, 2021.  Mr. Haines will rebut the opinions offered by Mr. Specter and Mr. Schwartzman.  Mr. Haines will testify that it is not unreasonable for an attorney to initially accept his client's rendition of events.  Mr. Haines will testify that the letters from Garabedian's officer were not an improper breach of duty by Mr. Garabedian.  Mr. Haines will testify that Mr. Specter did not offer a standard of care applicable to attorneys

but only the standard pursuant to which Mr. Specter holds himself.  Mr. Haines will testify that Mr. Garabedian did not engage in the improper practice of law when he wrote a letter from Massachusetts to a Pennsylvania institution.

Stephen J. Scherf, CPA/CFF, CFE – c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103.  Mr. Scherf will testify consistent with his report dated November 10, 2021.  Mr. Scherf will rebut the opinions offered by Mr. Verzilli.  Mr. Scherf will testify that Mr. Verzilli assumed, without support or analysis, that Mr. Ralston has a zero earning capacity in the future.  Mr. Scherf will testify that Mr. Verzilli's report is overstated, not reliable, and not stated to the required degree of professional certainty.

Michael J. Smychynsky – c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103.  Mr. Smychynsky will testify consistent with his report dated November 9, 2021. Mr. Smychynsky will testify that Mr. Ralston's vocational options are wide ranging and may include positions which are substantially similar to those he has previously engaged as well as an array of unrelated occupations given his level of education and demonstrated ability to work in skilled work applications.

Gladys S. Fenichel, MD – c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103.  Dr. Fenichel will testify consistent with her report dated November 10, 2021.  Dr. Fenichel will rebut the opinions offered by Dr. Ziv.  Dr. Fenichel will testify that the deposition testimony and treatment records do not support Mr. Ralston's claims related to emotional turmoil and distress and physical manifestations.  Dr. Fenichel will testify that the records and examination of Mr. Ralston identify his complaint of anxiety caused by the litigation.  Dr. Fenichel will testify that she disagrees with the opinion that Mr. Ralston has a psychiatric diagnosis of major depressive disorder and that it is her opinion Mr. Ralston does not have any psychiatric condition that prevents him from returning to work.  Dr. Fenichel will testify she questions Dr. Ziv's conclusions about the reliability of Mr. Ralston and the dishonesty of Mr. Poulos.  Dr. Fenichel will testify that the role of the expert is to opine about a diagnosis and factors that could include secondary gain but the ultimate conclusion regarding reliability is not the responsibility of the expert.

Frank A. Fetterolf, M.D. – c/o Swartz Campbell LLC, 1650 Market Street, 38th Floor, Philadelphia, PA 19103.  Dr. Fetterolf will testify consistent with his report dated November 10, 2021.  Dr. Fetterolf will rebut the opinions offered by Dr. Ziv.  Dr. Fetterolf will testify that Mr. Poulos' symptoms are primarily due to acute exacerbations of Post-Traumatic Stress Disorder superimposed on co-morbid chronic Borderline Personality Disorder, and in the past aggravated by Alcohol Use Disorder (now in remission).

Garabedian reserves the right to supplement this list up until and during the time of trial as due process will permit.

V.        **Deposition Admissions / Designations**

The deposition designations for Matthew Ralston are attached hereto as Exhibit "J."  The transcript of Matthew Ralston's July 1, 2021 deposition highlighted with deposition designations is attached hereto as Exhibit "A."  The transcript of Mathew Ralston's September 20, 2021 deposition highlighted with deposition designations is attached hereto as Exhibit "B."

The deposition designations for Kurtis Poulos are attached hereto as Exhibit "M."  The transcript of Kurtis Poulos' November 19, 2020 deposition highlighted with deposition designations is attached hereto as Exhibit "E."  The transcript of Kurtis Poulos' November 20, 2020 deposition highlighted with deposition designations is attached hereto as Exhibit "F."  The transcript of Kurtis Poulos' November 24, 2020 deposition highlighted with deposition designations is attached hereto as Exhibit "G."  The transcript of Kurtis Poulos' April 22, 2021 deposition highlighted with deposition designations is attached hereto as Exhibit "H."  The transcript of Kurtis Poulos' May 27, 2021 deposition highlighted with deposition designations is attached hereto as Exhibit "I."

The deposition designations for Charles Grade are attached hereto as Exhibit "K."  The transcript of Charles Grade's deposition highlighted with deposition designations is attached hereto as Exhibit "C."  The deposition designations for Mary Ellen Poulos are attached hereto as Exhibit "L."  The transcript of Mary Ellen Poulos' deposition highlighted with deposition designations is attached hereto as Exhibit "D."

VI.       **Exhibits**

1.   12/13/2017 M.E. Poulos email forwarding 11/20/2017 email RE Historical Allegations of Sexual Abuse at The Hill (Garabedian 029-32) (D-1)

2.   4/23/16 Hill School letter (D-2)

3.   Emails between M.E. Poulos, K. Poulos re The Interview (D-3)

4.   12/26/18 letter (Garabedian 053-54) (D-4)

5.   12/12/17 attorney notes (GARABEDIAN_FILE0033-39) (D-5)

6.   12/21/18 and 12/26/18 attorney notes (GARABEDIAN_FILE0025-26) (D-6)

7.   12/19/18 attorney notes (GARABEDIAN_FILE0030) (D-7)

8.   1/18/18 email from M.E. Poulos to Garabedian (GARABEDIAN_EMAIL0054) (D-8)

9.   12/12/17 attorney notes (GARABEDIAN_FILE0040) (D-9)

10.  1/29/19 M.E. Poulos email re statute of limitations (GARABEDIAN_FILE0041) (D-10)

11.  12/15/17 email from Poulos re paperwork (GARABEDIAN_FILE0066) (D-11)

12.  Cross Complaint (D-12)

13.  1/17/18 Poulos email re status (GARABEDIAN_EMAIL0043-47) (D-13)

14.  9/20/18 email from K. Poulos re Any news (GARABEDIAN_EMAIL0059) (D-14)

15.  4/11/2018 letter (Hill0219-20) (D-15)

16.  Plaintiff's Response to First Set of Interrogatories (D-16)

17.  11/28/94 academic report re Poulos (HILL0104) (D-17)

18.  3/6/95 academic report re Poulos (HILL0089) (D-18)

19.  5/29/95 academic report re Poulos (HILL078) (D-19)

20.  The Dial pages (D-20)

21.  April 8, 2016 offer letter (HILLDOE0288-0289) (D-21)

22.  4/11/16 Neese email (HILLDOE0287) (D-22)

23.  6/19/17 appointment letter (HILLDOE0262) (D-23)

24.  2016-17 performance evaluation (HILLDOE0273-0276) (D-24)

25.  2017-18 performance evaluation (HILLDOE0267-0270) (D-25)

26.  Email from Rees to Jubb re Current Matter (P48.1) (D-26)

27.  Emails between Rees and Jubb re Hill School Personnel File Review (P48.2-P48.3) (D-27)

28.  September 4, 2015 March medical records (P40.177-P40.184) (D-28)

29.  February 4, 2017 March medical records (P40.165-P40.172) (D-29)

30.  Plaintiff's resume when applied to Hill School (HILLDOE0237-0238) (D-30)

31.  Plaintiff's CV (P7.1-P7.3) (D-31)

32.  Undated text beginning "Pops" (P28.1-P28.2) (D-32)

33.  November 20, 2017 letter from Lehman to alumni regarding review of historical allegations of abuse (D-33)

34. 1/9/19 Rees email to Garabedian re Hill School - Claim of Nicholas Poulos (P47.12-P47.13) (D-34)

35. 1/28/19 Garabedian letter to Rees re Sexual Abuse Claim of Kurtis Nicholas Poulos (Garabedian 047) (D-35)

36. 1/30/19 Rees email to Garabedian re Hill School - Claim of Kurtis Nicholas Poulos (P47.10-P47.11) (D-36)

37. 2/21/19 Rees letter to Garabedian re The Hill School - Kurtis Nicholas Poulos (P47.27) (D-37)

38. 3/26/19 Rees letter to Garabedian re The Hill School - Kurtis Nicholas Poulos (P47.26) (D-38)

39. 6/24/20 Fox letter to Jubb re *Doe v. Garabedian, et al.* w. docs (P47.1-P47.29) (D-39)

40. Cozen O'Connor Leslie Gomez info (https://www.cozen.com/people/bios/gomez-leslie) (D-40)

41. 4/27/16 Emails between Mary Ellen Poulos and Lehman re A Message from the Headmaster - (HILL0241) (D-41)

42. 1/20/19 Email from Jubb to Rees re Ralston v. Poulos, et al., w. letter re Matthew Ralston - Potential Lawsuit (P48.66-P48.67) (D-42)

43. January 2019 emails between Rees and Jubb re Ralston v. Poulos, et al. (P48.38-P48.39) (D-43)

44. January and February 2019 emails between Jubb and Rees re Ralston v. Poulos, et al (P48.64-P48.65) (D-44)

45. February and March 2019 emails between Rees and Jubb re Hill School/Poulos (P48.18-P48.21) (D-45)

46. Rees webpage bio (https://highswartz.com/attorneys/thomas-d-rees/) (D-46)

47. 10/2/1996 memo from Dougherty re Odds and Ends (Gomez_014)

48. 12/13/1996 letter from advisor to Mary Ellen POulos (Gomez_015)

49. 12/18/2018 email forwarding May 2016 emails re FW: Article on Prep schools (GARABEDIAN_EMAIL0061)

50. 4/17/2016 article (http://www.nytimes.com/2016/04/18/us/prep-schools-wrestle-with-sex-abuse-accusations-against-teachers.html)

51. 12/22/2016 letter from The Hill School (HILLRAL 092-093)

52. 12/12-13/2017 investigation materials (GARABEDIAN_FILE1282-89)

53. 12/13/2017 attorney notes (GARABEDIAN_FILE0031-32)

54. 12/13/2017 letter with Contingent Fee Agreement and releases (GARABEDIAN_FILE0111-12)

55. Fully executed Contingent Fee Agreement (GARABEDIAN_FILE0072)

56.   Releases executed by Poulos (GARABEDIAN_FILE01290-1325)

57.   1/30/2018 letter to The Hill School re Kurtis Poulos (GARABEDIAN_FILE01246-47)

58.   2/2/2018 record requests (GARABEDIAN_FILE01256-1263)

59.   2/15/2018 records received from UWMilwaukee (GARABEDIAN_FILE1897-1932)

60.   3/23/2018 email re change of address (GARABEDIAN_FILE0058)

61.   4/11/2018 letter to The Hill School re records (GARABEDIAN_FILE1245)

62.   4/11/2018 letter to The Hill School re records with record release with "2nd attempt" notation (Gomez_016-17)

63.   4/24/2018 letter from Rees to Garabedian re Hill School-Kurtis Poulos (GARABEDIAN_FILE0107)

64.   4/29/2018 email from Ralston to Rees re FW: notes to School attorney for file (HILLRAL001-2)

65.   6/18/2018 letter from The Hill School (HILLRAL028)

66.   6/20/2018 reservation of rights (P.24.309-315)

67.   6/26/2018 email from Ralston to Rees re checking in (HILLRAL029)

68.   7/25/2018 email from The Hill School to Ralston re Hill Fund bonus - Ralston (HILLRAL096)

69.   12/12/18 attorney notes (GARABEDIAN_FILE0027)

70.   12/18-19/18 emails between Rees and Garabedian re Sexual ABuse Claim of Kurtis Nicholas Poulos (GARABEDIAN_FILE0103-106)

71.   12/21/2018 attorney notes (GARABEDIAN_FILE0028)

72.   12/26/2018 email from Rees to Garabedian re Hill School (GARABEDIAN_FILE0094)

73.   12/28/2018 email from Ralston to Rees re Checking in (Gomez_021)

74.   1/2/2019 email from Rees to Ralston re Letter (HILLRAL050)

75.   12/11/2019 disclaimer of insurance coverage (P24.317-323)

76.   3/14/2019 email from Ralston to Rees re Question  (HILLRAL058)

77.   4/17/2019 email from Philadelphia Magazine to The Hill School re Mitchell Garabedian lawsuit (HILLRAL091)

78.   4/29/2019 letter from Rees to Jubb re Matthew Ralston with memo re Administrative Leave (HILLGAR0019-20)

79.   Draft email to faculty (Lehman-3)

80.   8/27/2019 letter from Beasley to Rees re *Matt Ralston - Proposed Severance* (HILLRAL066-67)

81. 9/23/2019 letter from Rees to Beasley re Matthew Ralston - Proposed Severance (HILLRAL071-72)

82. 10/14/2019 letter from Beasley to Rees re *Matt Ralston - Proposed Severance* (HILLRAL075)

83. 10/18/2019 Email from Rees to Beasley re Ralston (HILLRAL076)

84. Complaint

85. First Amended Complaint

86. Second Amended Complaint

87. File materials maintained by Garabedian during representation of Poulos (GARABEDIAN_FILE0001-1960)

88. Emails maintained by Garabedian during representation of Poulos (GARABEDIAN_EMAIL0001-129)

89. Ralston's personnel file maintained by The Hill School (HILLDOE0001-308)

90. The Hill School student file regarding Poulos (HILL0001-253)

91. Other document productions by The Hill School with privilege logs (P24.309-P24.325; HILLRAL 001-102; HILLGAR001-20)

92. Privilege log and document production Gomez (Gomez_001-86)

93. Records produced by Charles Grade (P21.1-P21.22)

94. Transcript and recording of the evaluation of Matthew Ralston by Dr. Fenichel

95. Affidavit by Ralston in support of summary judgment

96. November 19, 2020 Deposition transcript of Kurtis Poulos (with video)

97. November 20, 2020 Deposition transcript of Kurtis Poulos (with video)

98. November 24, 2020 Deposition transcript of Kurtis Poulos (with video)

99. April 22, 2021 Deposition transcript of Kurtis Poulos (with video)

100. May 27, 2021 Deposition transcript of Kurtis Poulos (with video)

101. July 1, 2021 Deposition transcript of Matthew Ralston (with video)

102. September 20, 2021 Deposition transcript of Matthew Ralston (with video)

103. June 24, 2021 Deposition transcript of Mitchell Garabedian (with video)

104. December 9, 2020 Deposition transcript of Zachary Brusko (with video)

105. June 7, 2021 Deposition transcript of Charles Grade (with video)

106. September 30, 2021 Deposition transcript of Zachary Lehman (with video)

107. July 22, 2021 Deposition transcript of Mary Ellen Poulos (with video)

108. July 8, 2021 Deposition transcript of of Daniel Mahoney (with video)

109. July 8, 2021 Deposition transcript of Nathan Gaul (with video)

110. September 1, 2021 Deposition transcript of Mary Beth Ralston (with video)

111. September 1, 2021 Deposition transcript of Mark Ralston (with video)

112. September 2, 2021 Deposition transcript of Christopher Hopkins (with video)

113. September 7, 2021 Deposition transcript of Christopher Chirieleison (with video)

114. September 13, 2021 Deposition transcript of William Yinger (with video)

115. October 7, 2021 Deposition transcript of Leslie Gomez (with video)

116. October 11, 2021 Deposition transcript of Thomas Rees (with video)

117. December 14, 2021 Deposition transcript of Ben Wallborn (with video)

118. Expert report of Robert Tintner, Esquire

119. CV of Robert Tintner, Esquire

120. November 30, 2021 Deposition transcript of Robert Tintner (with video)

121. Expert report of Clifford Haines, Esquire

122. CV of Clifford Haines, Esquire

123. December 9, 2021 Deposition transcript of Clifford Haines (with video)

124. Expert report of Gladys Fenichel, M.D.

125. CV of Gladys Fenichel, M.D.

126. Expert report of Frank Fetterolf, M.D.

127. CV of Frank Fetterolf, M.D.

128. December 10, 2021 Deposition transcript of Frank Fetterolf (with video)

129. Expert report of Stephen Scherf, CPA

130. CV of Stephen Scherf, CPA

131. Expert report of Michael Smychynsky, MBA

132. CV of Michael Smychynsky, MBA

133. Expert report of Shanin Specter, Esquire

134. CV of Shanin Specter, Esquire

135. November 18, 2021 Deposition transcript of Shanin Specter (with video)

136. Expert report of James C. Schwartzmann, Esquire

137. CV of James C. Schwartzmann, Esquire

138. Expert report of Andrew Verzilli

139. CV of Andrew Verzilli

140. November 19, 2021 Deposition transcript of Andrew Verzilli (with video)

141. Expert report of Barbara Ziv, M.D. (Evaluation of Poulos)

142. Expert report of Barbara Ziv, M.D. (Evaluation of Ralston)

143. Expert report of Barbara Ziv, M.D. (Appendices A-G)

144. CV of Barbara Ziv, M.D.

145. December 1, 2021 Deposition transcript of Barbara Ziv (with video)

146. Plaintiff's Responses to Garabedian Defendants' First Request for Production of Documents

147. Plaintiffs' Responses to Garabedian Defendants' Second Request for Production of Documents (September 10, 2021)

148. Plaintiffs' Responses to Garabedian Defendants' Expert Interrogatories

149. Plaintiff's Initial Disclosures (May 19, 2020)

150. Plaintiff's Supplemental Disclosures (September 18, 2020)

151. Plaintiff's Supplemental Disclosures (November 25, 2020)

152. Plaintiff's Supplemental Disclosures (December 7, 2020)

153. Plaintiff's discovery requests to Kurtis Poulos and responses

154. Plaintiff's discovery requests to Garabedian and responses

155. Exhibits marked during depositions

156. Any exhibits identified by plaintiff

157. Any exhibits identified by Kurtis Poulos

Garabedian reserves the right to supplement this list up until and during the time of trial as due process will permit.

## VII.    Estimate of Trial Length

Garabedian's presentation will depend on how plaintiff's case proceeds. Plaintiff has identified the entire record as trial exhibits, four experts (with one presenting two evaluations) and many witnesses in initial disclosures. The defense has six counter-experts. Garabedian estimates trial will take 7 to 10 days.

## VIII.   Special Comments / Stipulations

### A.  Position on Non-Jury Disposition

Garabedian consents to proceed non-jury either in person or by video sharing given COVID restraints.

### B.  Motion / Potential Witness / Evidence Issues

Garabedian intends to move for leave to exceed the 5 motion *in limine* limit.  Garbaedian filed one motion relating to the 5 expert reports by plaintiff.  The remaining evidence issues (in particular with no anticipated motion practice by Poulos) combined with the legal issues for *in limine* decision exceed 4 motions grouped by subject area per the Court's preferences.

As identified in the witnesses section:

1) Garabedian intends to move for leave to present Gaul and Mahoney via videoconference.

2) Poulos has expressed an inability to appear for trial in person.  Garabedian has submitted provisional designations in case Poulos is unavailable, but the testimony could likely be reduced or presented more efficiently real-time.

Plaintiff has identified essentially the entire record as trial exhibits with many compiled exhibits and no identification of what components will actually be offered.  Garabedian's initial objections are attached as Exhibit "N."  However, counsel will try to reduce the disputes.

### C.  Legal Issues

#### 1.  Choice of Law

This Court's jurisdiction is based on diversity of citizenship.  A federal court sitting in diversity must apply state substantive law and federal procedural law.  *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  When state substantive law applies, the federal court sitting in diversity must choose the appropriate state law.  A federal court sitting in diversity must apply the choice of law rules of the forum state.  *Woessner v. Air Liquide, Inc.*, 242 F.3d 469, 472 (3d Cir. 2001) (citing *Klaxon v. Stentor Elec. Mfg Co.*, 313 U.S. 467, 496 (1941)).  A choice of law

analysis is necessary only if there is a conflict between or among the jurisdictions concerning the applicable law.

This Court has applied the defamation law of the plaintiff's state of domicile based on Pennsylvania's choice of law laws because the plaintiff's "domicile will be the place where most, if not all, of his or her reputational contacts are found." *Fitzpatrick v. Milky Way Prods., Inc.*, 537 F. Supp. 165, 171-72 (E.D. Pa. 1982). The plaintiff's domiciliary state "generally has the greatest concern in vindicating plaintiff's good name and providing compensation for harm." *Id.* at 171; *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 476 (E.D. Pa. 2010) (applying the law of plaintiff's state of domicile even though the statements were only published in a foreign forum); *see also Woods Services, Inc. v. Disability Advocates, Inc.*, No. 18-296, 2018 WL 2134016 *4-5 (E.D.Pa. May 9, 2018). For example in *Mzamane v. Winfrey*, this Court applied the law of the plaintiff's domicile (Pennsylvania) where plaintiff was a headmistress of a South African school and alleged defamatory statements were made about her handling of reports of abuse by students, even though the plaintiff maintained a residence in South Africa and the conduct that formed the basis for the statements occurred in South Africa. *See Mzamane*, 693 F. Supp. 2d at 462-463, 469-475.

While plaintiff's domicile is Ohio, plaintiff appears to rely on his reputation within "The Hill School community" that he treats as a Pennsylvania community as the basis for his claims. Pennsylvania and Ohio are not materially different regarding the application of judicial privilege and conditional privilege. Both jurisdictions apply the Restatement of Torts to confer attorneys with an absolute privilege protecting their speech as advocates. *See, e.g.*, Restatement of Torts § 586 (1938); *Post v. Mendel*, 510 Pa. 213, 507 A.2d 351, 355 (Pa. 1986); *Bochetto v. Gibson*, 580 Pa. 245, 251 (2004); *Schanne v. Addis*, 632 Pa. 545 (2015); *Simmons v. Climaco*, 30 Ohio

App.3d 225, 227-28, 507 N.E.2d 465, 468 (Ohio Ct. App. 1986) (applying *Sriberg v. Raymond*, 345 N.E. 2d 882, 883-84 (Mass. 1976), which applies *Post v. Mendel*); *Michaels v. Berliner*, 119 Ohio App.3d 82, 87-88, 694 N.E.2d 519, 522 (Ohio Ct. App. 1997) (applying *Post v. Mendel*). Both jurisdictions recognize a conditions privilege in a variety of fact-specific circumstances where "[c]ommunications [are] made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged." and involve an interest of the publisher, third-party or public.  *See, e.g.*, *Moore v. Vislocky*, 240 Fed. Appx. 457, 463 (3d Cir. 2007) (quoting *Elia v. Erie Ins. Exchange*, 430 Pa. Super. 384, 391 (Pa. Super. 1993)); *A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Building & Construction Trades Council*, 651 N.E.2d 1283, 1289-91 (Ohio 1995).

However, the elements of defamation in Ohio and Pennsylvania are materially in conflict as far as who carries the burden to prove falsity / truth and the standard of proof for damages. *See, e.g.,* 42 Pa. C.S.A. § 8343(a) (elements of defamation); *Savoy v. Univ. Akron*, 15 N.E.3d 430, 435 (Ohio Ct. App. 2014).  In Ohio, "defamation occurs when a publication contains a false statement "made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession."  *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852 (Ohio 2012) (quoting *Jackson v. Columbus*, 883 N.E.2d 1060 (Ohio 2008)).

> To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Id.* (quoting *Pollock v. Rashid,* 690 N.E.2d 903 (Ohio Ct. App. 1996)).  Noneconomic damages for defamation claims are also statutorily capped in Ohio.  *See, e.g., Wayt v. DHSC, L.L.C.*, 122 N.E.3d 92 (Ohio 2018) (applying R.C. § 2315.18 to cap damages for defamation); R.C. §

2315(B)(2) (limiting noneconomic damages to the greater of $250,000 or three times the economic damages).

In Pennsylvania, the plaintiff has the burden to prove seven (7) separate elements that include: 1) a defamatory communication; (2) publication of the defamatory communication by the defendant; (3) the communication's application to the plaintiff; (4) an understanding by the reader or listener of the statement's defamatory meaning; (5) an understanding by the reader or listener that the statements refer to plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.  42 Pa. C.S.A. § 8343(a). Where applicable, the defendant then has the burden to prove: (1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; and/or (3) the character of the subject matter of defamatory comment as of public concern. 42 Pa. C.S.A. § 8343(b).  This Court found a conflict of law between South African and Pennsylvania law in *Mzamane v. Winfrey*, 693 F. Supp. 2d 442 (E.D.Pa. 2010), where the burden to prove truth / falsity differed between the jurisdictions.  *Mzamane*, 693 F. Supp. 2d at 473-74.

The appropriate choice of law is likely Ohio because it is plaintiff's domicile. Pennsylvania has no interest in protecting the reputations of non-citizens or condoning forum shopping for more favorable law or to avoid damages limits.  Plaintiff has also not adduced evidence "The Hill School community" that is comprised of multi-state or multi-national membership should be treated as a Pennsylvania community.  The geographic region plaintiff was assigned as a remote capital giving officer (working from Ohio) was the Midwest.

### 2.   Judicial Privilege Bars Claims

Garabedian's speech in furtherance of his client's interests was absolutely privileged.

*Bochetto v. Gibson*, 580 Pa. 245, 251 (2004). The April 11, 2018 and December 26, 2018 letters were sent by Garabedian while in the service of a client, Poulos. Poulos intended to report Ralston's sexual abuse to The Hill School and to instigate an investigation of Ralston. Poulos sought a remedy from The Hill School – to make future abuse stop and monetary compensation for his injuries. While not a requirement for the attachment of judicial privilege, Poulos was *also* contemplating filing a lawsuit when the statute of limitations was adjusted in Pennsylvania at the time the letters were sent.

There was no overpublication by Garabedian. The letters were addressed to the specific recipients identified by The Hill School. The April 11, 2018 letter was addressed to Headmaster Lehman, who was identified in The Hill School's November 20, 2017 letter soliciting reports of abuse. Lehman was also in plaintiff's chain of command and the person The Hill School designated to interact with plaintiff relating to the first letter and later employment issues.

The Hill School notified Garabedian that it was represented by Rees on April 24, 2018 and to direct further contact to Rees. Rees then requested the additional factual information included in the December 26, 2018 letter. The December 26, 2018 letter was addressed specifically to Rees, as directed and required because The Hill School was a represented party. Garabedian did not provide the letters to anyone else.

Neither Garabedian's alleged motives nor the truth or falsity of the content are considerations for whether judicial privilege attaches. It is not disputed that the letters were sent by Garabedian while in the service of a client, Poulos, who was seeking a remedy from The Hill School. There is no evidence of a personal interest or stake of Garabedian to take him outside of his role as advocate for Poulos. Garabedian's mere professional interest or contingent fee interest do not defeat protections from liability. *See Heffernan v. Hunter,* 189 F.3d 405, 414 (3d

22

Cir. 1999).  Plaintiff's claim for defamation against Garabedian is barred by judicial privilege, as a matter of law.

### 3.  No Abuse of a Conditional Privilege

Plaintiff's claim also fails because there was no abuse of a conditional privilege by Garabedian.  "[A] publisher of a defamatory statement is not liable if the statement was made subject to a conditional privilege and the privilege was not abused."  *Moore*, 240 Fed. Appx. at 463 (3d Cir. 2007) (quoting *Elia*, 430 Pa. Super. at 391). "Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged."  *Elia*, 430 Pa. Super. at 391 (quoting *Chicarella v. Passant*, 343 Pa. Super. 330, 337 (Pa. Super. 1985)).

The very premise for plaintiff's claims against Garabedian has already been expressly rejected by the Pennsylvania Superior Court.  In *Hong v. Pelagatti*, 765 A.2d 1117, 1122 (Pa. Super. 2000), the court found a lawyer was under no duty "to verify the accuracy of his client's representation[s.]"  The Superior Court decided that "such a requirement would work a chilling effect on the attorney-client relationship."  *Id.*

The letters were sent by Garabedian while acting in the service of his client, Poulos.  The Hill School solicited reports of historical allegations of sexual abuse in November 20, 2017 in a letter that used an example from the time period Poulos was a student at The Hill School.  Even without the solicitation, Garabedian's client, Poulos, had an interest in reporting his sexual abuse to the appropriate official at The Hill School (Lehman), which had an interest in addressing reports of misconduct by a current or former employee.

Garabedian was permitted to believe his client, Poulos, and to communicate Poulos' report of sexual abuse and demand for compensation for his injuries based on Poulos'

representations.  Poulos confirmed he provided the factual information included in the letters to Garabedian and the truth of the factual information and allegations of sexual abuse during this proceeding, at length.  Similarly, plaintiff confirmed all of the factual information in the letters was true, except that plaintiff denies the allegations of sexual abuse.

Garabedian was not required to prejudge Poulos' claims.  Regardless, everything that could be corroborated was corroborated.  No evidence was revealed in discovery to disprove Poulos' allegations of sexual abuse.  Proof of Poulos' allegations of sexual abuse is, quite literally, Poulos' word against plaintiff's word.  Garabedian was permitted to advance his client's position based solely on his client's word, even if Garabedian did not believe it.  However, the evidence revealed that Garabedian, a lawyer who is extremely experienced in representing victims of childhood sexual abuse against institutions, found Poulos credible.

There is no evidence of malice or personal interest of Garabedian.  Garabedian and plaintiff did not know each other prior to the letters.  Garabedian had no personal stake in sending the letters.  Garabedian's professional reputation or fee interest are not a self-interested motive sufficient to defeat privilege.  *See Heffernan,* 189 F.3d at 414.  Garabedian wrote two letters (both solicited by The Hill School) on behalf of his client, Poulos, who wanted to instigate an investigation and a remedy that detailed the precise factual information that Poulos provided to Garabedian, which is not malice.

Garabedian's conduct in writing the letters for Poulos was conditionally privileged. There is no evidence of abuse of the conditional privilege.  Plaintiff's claim for defamation against Garabedian also fails on the basis of conditional privilege.

24

### 4.  Plaintiff Is a Limited Purpose Public Figure

Plaintiff is a limited purpose public figure within "The Hill School community."  "[A]n individual who voluntarily injects himself or is drawn into a particular public controversy thereby becomes a public figure for a limited range of issues."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S.Ct. 2997, 3012-13, 41 L.Ed.2d 789 (1974).  If a plaintiff is a limited purpose public figure, then he must prove actual malice, or that the defendant make the defamatory remarks with "knowledge that [the statement] was false or with reckless disregard of whether it was false or not."  *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964).

An issue of public controversy can be a public concern to a discrete community.  *Smith v. Pocono Country Place Property Owners Association, Inc.,* 686 F. Supp. 1053, 1058 (M.D.Pa. 1987).  For example in *Smith v. Pocono Country Place Property Owners Association, Inc.*, the Middle District of Pennsylvania found that manager of a private residential property development was a limited purpose public figure in connection with "a public dispute of concern to residents of the local community," even though not of a national or even state-wide importance.  *Id.* (citing *Lorain Journal Co. v. Milkovich*, 474 U.S. 953, 963, 106 S.Ct. 322, 323, 88 L.Ed.2d 305 (1985) (Brennan, J., dissenting) (explaining in the dissent from a denial of a petition for certiorari that a controversy relating to a high school wrestling coach was as important to the local community as nationwide events)).

Plaintiff relied on his reputation within The Hill School as a teacher.  During the years Poulos was a student, plaintiff was employed by The Hill School he was faculty member with the Mathematics Department, the Academic Dean, head of the Sixth Form (senior) dormitory, Head Winter Track coach and Director of Financial Aid.  Plaintiff thereafter held numerous other

positions with The Hill School including Mathematic Department Chair and various coaching and dormitory positions.  According to the plaintiff, he held a prominent position in The Hill School community.  His conduct (or misconduct) with a student was and is an issue of public controversy and concern to The Hill School, if not the public generally.

### 5. Claim Fails on Elements

The defamation claim fails on other elements.  However, the application of law to fact depends on the choice of law and plaintiff's status, as identified above, and will be raised in limine.

### D.  Stipulations

Counsel are still working together on stipulations.

Respectfully submitted,

/s/ Candidus K. Dougherty
Jeffrey B. McCarron
Candidus K. Dougherty
Swartz Campbell LLC

Dated: December 21, 2021